**A**

**STATE OF SOUTH CAROLINA** )   **IN THE COURT OF COMMON PLEAS**
                                )
**COUNTY  OF MCCORMICK**         )   **C.A. 2004-CP-** 35-25
                                )
William Gregory Seigler,        )
                                )
                     Plaintiff, )
                                )
                                )
    vs.                         )
                                )
                                )          **COMPLAINT**
William E. Boyd,                )          **(NON-JURY)**
Bill Boyd Realty, Inc.,         )
Buyer's Source, Savannah, LLC,  )
Textron Financial Corporation,  )
Litchfield Financial Corporation, )
Land Finance Company,           )
                                )
                   Defendants.  )

The Plaintiff, complaining of the Defendant, alleges:

## PARTIES

1.     William Gregory Seigler ("Seigler") is a licensed South Carolina attorney, who resides and practices in McCormick County, South Carolina.

2.     William E. Boyd ("Boyd") is a licensed real estate broker, who resides in McCormick County, South Carolina.

3.     Bill Boyd Realty, Inc. ("BBR") is a corporation organized and existing under the laws of the State of South Carolina.  Boyd is both the President and broker in charge of BBR. BBR's principal place of business is located at 503 Town Center, McCormick, South Carolina.

4.     Buyer's Source, Savannah ("BSS") is a corporation organized and existing under the laws of the State of Virginia.

5.     Textron Financial Corporation ("Textron") is a corporation organized and existing under the laws of the State of Virginia.

1

6.    Litchfield Financial Corporation ("Litchfield") is a corporation organized and existing under the laws of the State of Massachusetts.

7.    Land Finance Company ("LFC") is a corporation organized and existing under the laws of the State of Virginia.

## JURISDICTION AND VENUE

8.    This Court has jurisdiction to hear this action pursuant to S.C. Code §§ 14-1-80, 36-2-803, 15-53-20 and Article 5, §11 of the South Carolina Constitution.

9.    Venue is proper in this Court pursuant to S.C. Code §15-7-30 because two (2) of the named Defendants reside in McCormick County, South Carolina.

## FACTS .

10.    At all times material to this dispute, Boyd, in his capacity as President and employee of BBR, worked as a real estate broker and agent on behalf of BSS.  In the summer of 2001, Boyd approached Seigler about providing BSS legal services which were required so that BSS could receive financing from LFC.

11.    BSS sought financing from LFC to fund the purchase of land at a development called the Savannah Lakes Project ("Savannah Lakes").  The project was located in McCormick County, South Carolina.

12.    Seigler agreed to provide the legal services in connection with the financing. Specifically, Seigler was asked to review certain financing documents and opine as to BSS's ability to engage in the transaction contemplated thereby and the validity and enforceability thereof.  LFC provided the form of opinion letter to be used by Seigler, and this form remained largely unchanged.

13.    It was expressly understood by Boyd, acting as BSS's agent, that Seigler's opinions would be limited in scope by the documents provided by BSS and LFC.

14.    By letter dated May 19, 2001, and prior to sending the subject opinion letters, Seigler directly informed both BSS and LFC that his opinions were solely based upon "the documents provided." A copy of that letter is attached hereto as Exhibit A and incorporated herein by reference.

15.    Seigler thereafter provided three (3) opinion letters in relation to BSS's receiving financing from LFC. Copies of those opinion letters are attached hereto as Exhibits B, C & D and incorporated herein by reference.

16.    While varying slightly, the opinion letters essentially contained up to seven (7) opinions, as follows:

   a.  BSS was duly organized and in good standing under Virginia and South Carolina law.

   b.  BSS had authority to enter credit agreements with LFC.

   c.  The loan documents were valid and binding.

   d.  The loan documents created a lien in favor of LFC upon recordation.

   e.  Delivery of loan documents by BSS would not create a lien in favor of a third party.

   f.  The guarantee was legal and validly executed.

   g.  There was no action or suit pending which could adversely affect BSS.

17.    Two (2) of Seigler's three (3) letters opined that he had reviewed the documents provided by the parties, and in relation to those documents, BSS's operations were in full compliance with all applicable federal, state, and local laws/regulations. At no time did Seigler warrant that BSS's operations were lawful other than in relation to the documents reviewed.

18.   In relation to the loan documents provided by BSS and LFC, BSS's South Carolina operations were in compliance with all applicable federal, state and local laws/regulations. Seigler's letters did not, and could not, warrant that BSS's South Carolina operations would continue to be lawful in the future.

19.   Some time after Seigler issued the opinion letters, and upon information and belief, BSS began to engage in sales practices which were unlawful. At no time material to this dispute did Seigler have notice of these unlawful practices.

20.   Seigler did not perform any closing on any parcel of land at Savannah Lakes.

21.   In August of 2003, the United States Department of Housing and Urban Development ("HUD") sued, amongst others, BSS, LFC, Litchfield, and Textron. In part, HUD sued those entities for unlawful practices in relation to BSS's South Carolina land sales.

22.   A dispute exists between Seigler, William Boyd, BBR, BSS, LFC, Litchfield, and Textron regarding the agreed upon scope of Seigler's professional representation in relation to the subject opinion letters.

23.   The parties likewise disagree about the legal impact, import, and construction of the opinions contained in the subject opinion letters. Another dispute exists between the parties in relation to the professional duties owed to them by Seigler, as created by the language contained in the subject opinion letters, the surrounding circumstances, and collateral agreements.

24.   Finally, a dispute exists among the parties regarding the extent the parties were entitled to rely upon Seigler's opinions as set forth in the subject opinion letters.

25.   Some or all of the Defendants are demanding payment for damages allegedly sustained due to reliance upon the subject opinion letters.

## FOR A FIRST CAUSE OF ACTION
### (Declaratory Judgment)

26.     The foregoing paragraphs are incorporated herein by reference.

27.     As set forth above, the parties dispute their respective rights, statuses, and legal relations with respect to the proper construction of the subject opinion letters and related transactions.   Accordingly, an actual controversy exists between Seigler and the Defendants regarding each party's respective rights and duties in relation to the subject opinion letters.  Some or all of the Defendants are demanding payment from Seigler to which they are not entitled.

28.     Pursuant to S.C. Code Ann. §15-53-10 *et seq.*, Seigler is entitled to a declaration that:

    a.  Seigler did not represent William E. Boyd at any time.

    b.  Seigler did not represent Bill Boyd Realty, Inc. at any time.

    c.  Seigler offered no opinions that William Boyd was entitled to rely upon.

    d.  The scope of Seigler's representation of BSS was expressly limited by a mutual agreement with Boyd, an agent of BSS.

    e.  Seigler did not owe professional duties to William E. Boyd or Bill Boyd Realty, Inc.

    f.  Based upon William E. Boyd's express statements, Seigler's representation of BSS was limited to supplying opinions relating to and based upon paperwork provided.

    g.  William E. Boyd's express representations limited the scope of Seigler's representation of BSS.

    h.  William E. Boyd's express representations limited the professional duties owed by Seigler to BSS.

i.  Seigler did not represent Textron at any time.

j.  Textron did not have a right to rely on Seigler's opinions.

k.  Seigler did not owe any professional duties to Textron.

l.  Seigler did not represent Litichfield at any time.

m. Litchfield did not have a right to rely on Seigler's opinions.

n.  Seigler did not owe any professional duties to Litchfield.

o.  Seigler's May 19, 2001 letter expressly limited the scope of his representation of BSS and LFC.

p.  The language of Seigler's opinion letters expressly limited their scope to the documents supplied and reviewed.

q.  At the time Seigler provided the subject opinion letters, no documents that he would have, or could have reviewed, would have demonstrated that BSS's South Carolina operations were in violation of state, federal or local law.

r.  At the time Seigler provided the subject opinion letters, BSS's South Carolina operations were in fact lawful.

s.  LFC was not entitled to rely on Seigler's opinions beyond the scope expressly provided by the express language in those letters, the earlier May 19th, 2001 letter, and the representations of BSS's representative, William E. Boyd.

t.  Seigler had no duty to ensure that BSS's operations were lawful beyond reviewing the documentation provided by the parties.

u.  Seigler's opinion letters cannot be construed as a warranty by Seigler that BSS would never, in perpetuity, violate "federal, state and local laws."

v.  Seigler did not breach any professional duties owed to BSS or LFC.

w.  BSS, not Seigler, is responsible for any loss sustained by LFC.

x.  Seigler does not owe Boyd money damages as a result of the subject opinion letters.

y.  Seigler does not owe BBR money damages as a result of the subject opinion letters.

z.  Seigler does not owe BSS money damages as a result of the subject opinion letters.

aa. Seigler does not owe Textron money damages as a result of the subject opinion letters.

bb. Seigler does not owe Litchfield money damages as a result of the subject opinion letters.

cc. Seigler does not owe LFC money damages as a result of the subject opinion letters.

**WHEREFORE**, Seigler prays for judgment:

A.      Declaring the rights, statuses, and legal relations of the parties as set forth in

Paragraph 26; and

B.      For such other further relief as may be equitable and just.

Respectfully submitted,

*Lane W Davis*

Samuel W. Outten (S.C. Bar #4295)
Lane W. Davis (S.C. Bar #68796)
LEATHERWOOD WALKER TODD & MANN, P.C.
300 East McBee Avenue, Suite 500, P.O. Box 87
Greenville, SC 29602-0087
Telephone: (864) 242-6440 Fax: (864) 240-2475
Attorneys for Plaintiff

Dated: February 17th, 2004

8

# EXHIBIT A

LAW OFFICES
OF

# WILLIAM GREGORY SEIGLER

### ATTORNEY AND COUNSELOR AT LAW

| | | |
|---|---|---|
| MAILING ADDRESS: | | PHYSICAL ADDRESS: |
| PO Box 1852 | | 119 North Pine Street |
| McCormick, SC 29835 | | McCormick, SC 29835 |
| TEL: (864) 465-9555 | | FAX: (864) 465-9554 |

May 19, 2001

Buyers Source, Savannah, L.L.C.
5705 Lee Farm Ln.
Suffolk, VA 23435

Re:   Opinion Letters

Dear Sir,

I am in receipt of the Secretary of State's Certificate of Authorization for the State of South Carolina. I have also reviewed the opinions issued by your attorney, John Lumpkin. Based on the Certificate and the documents provided to me by your company I will issue the opinions after further review of the documents. The documents being deeds, mortgages, assignments, and the truth in lending statement. However, please understand that I have been retained solely to issue the opinions based on the documents provided; otherwise I only will issue title opinions as the Garrett Firm was formerly contracted to do.

Thank you for your assistance in this matter.

With kind regards, I am

Very truly yours,

W. Greg Seigler

Enclosures
cc: Land Finance

# EXHIBIT B

LAW OFFICES
OF

# WILLIAM GREGORY SEIGLER

### ATTORNEY AND COUNSELOR AT LAW

----

MAILING ADDRESS:
PO Box 1852
McCormick, SC 29835
TEL: (864) 465-9555

PHYSICAL ADDRESS:
119 North Pine Street
McCormick, SC 29835
FAX: (864) 465-9554

May 22, 2001

Land Finance Company
430 Main Street
Williamstown, MA 01267

RE: Loan to Buyers Source, Savannah, L.L.C.

Dear Sir/Madam:

This office is acting as counsel for Buyers Source, Savannah, L.L.C, a Limited Liability Company organized under the laws of the State of Virginia and authorized to do business in the state of South Carolina as a foreign entity("Borrower") and Frederick D. Blake of Newport News, VA, and Thomas H. Brewer and Betty Brewer of Suffolk, VA all individuals ("Guarantors")..

We have been requested to render an opinion in connection with the financial transactions that Land Finance Company ("LFC") proposes to enter into with our clients. For purposes of rendering this opinion, we have reviewed the following documents ("Loan Documents"):

    (i)      the Loan and Security Agreement with all Exhibits and Schedules thereto by and between the Borrower and LFC (the "Loan Agreement");

    (ii)     the Revolving Note in the amount of Three Million and 00/100 Dollars ($3,000,000.00) from borrower in favor of LFC;

    (iii)    The Guarantees of the Guarantors;

(iv)    the servicing Agreement by and among Borrower, LFC; and

(v)    such other records, certificates, instruments, documents, agreement and assurances as we have considered necessary in connection with the opinions hereinafter set forth.

Capitalized terms used herein have the meanings given such terms in the Loan Agreement. The term "State", as used herein, shall mean the State of South Carolina in which the Seller was organized.

In addition, we have reviewed Borrower's resolutions and authorization in connection with this transaction, as well as the official organizational documents, records and minutes of Seller mad available to us by management.

In rendering the opinions expressed below, we have assumed the genuineness of all signatures, other than those of Borrower and Guarantors, the authenticity of all documents submitted to us as originals, and the authenticity of the copies of such originals.

We are licensed to practice in the State of South Carolina. We have made such examination of local, State and federal law as we have deemed relevant for the purposes of this opinion, but have not made an independent review of the laws of any other jurisdiction. Accordingly, we express no opinion as to the laws of any sate or jurisdiction other (a) the State defined above, and (b) the United States of America.

Statements herein as to the enforceability of the Loan Documents are subject to the limitations imposed by bankruptcy laws and general equitable principles and for the purposes of such statements, we have assumed that the laws governing the enforcement of the Loan Documents do not substantively differ from the laws of South Carolina.

On the basis of the foregoing, in reliance thereon, and having regard to legal considerations which we deem relevant, we are of the opinion that:

1.    Borrower is duly organized, validly existing and in good standing under the laws of the state of South Carolina and has the power, authority and all licenses necessary to own and operate its assets and to transact the business as currently conducted (which includes the sale of the properties at the Project and the origination of the Receivables) and/or contemplated, and is duly qualified and in good standing under the laws of each jurisdiction where the conduct of its business or the ownership of its properties and assets requires such qualification and where the failure to be so qualified would have a material adverse effect on the business, assets or financial condition of Borrower.

2. Borrower has the power, authority and legal right to make, deliver, and perform the Credit Agreement, Note, (Mortgage or Deed) and other Loan Documents and all of the transactions contemplated thereby, and has taken all necessary action to authorize the execution, delivery and performance of the Loan Document. The managers of the Seller, who are Frederick D. Blake and Thomas H. Brewer, are duly authorized to execute and deliver the LFC each of the Loan Documents to which the Borrower is a party. No consent of any other party and no consent, license, approval or authorization of, or registration or declaration with, any governmental authority, bureau or agency is required for the execution, delivery and performance by Borrower with the Loan Documents or the consummation of the transactions contemplated thereby.

3. Each of the Loan Documents to which Borrower is a party, as executed, constitutes the legal, valid and binding obligation of Borrower, enforceable against Borrower in accordance with its respective terms.

4. The Loan Documents create a valid and enforceable lien in and to the Collateral in favor of LFC. Upon possession of the notes and the filing of the mortgages, such security interest in favor of LFC will be perfected first priority security interest.

5. The execution, delivery and performance by Borrower of the Loan Documents and Borrower's performance of its obligations thereunder will not (a) create any Lien in favor of any person other than LFC or (b) violate any provision of any existing law or regulation or any order, writ, judgement, injunction or decree of any court, regulatory body or administrative agency or Borrower's organizational documents or (c) violate, conflict with, result in the breach of or constitute a default under any mortgage, indenture, contract or other agreement to which Borrower is a party or by which Borrower or any of its property or assets may be bound. Borrower and its business and operations are in full compliance with all applicable federal, state and local laws and regulations.

6. The Guarantee has been duly and validly executed and delivered by or on behalf of the Guarantors, and Guarantee constitutes a legal, valid and binding obligation of the Guarantors, enforceable against the Guarantors in accordance with its terms.

7. There is no action, suit, other litigation or administrative or other proceeding of or before any court, tribunal or governmental body or any arbitration or alternate dispute resolution proceeding pending, or to the knowledge of Borrower (or any of Borrower's officers), threatened against Borrower or any properties or assets of Borrower or with respect to the Loan Documents, which, if adversely determined, could have a material effect on the business, assets or financial condition of Borrower or which would draw into question the validity of any of the Loan Documents.

This opinion is for the benefit of and may be relied upon by Land Finance Company and its successors and assigns.

Sincerely,

W. Greg Seigler

# EXHIBIT C

LAW OFFICES
OF

# WILLIAM GREGORY SEIGLER

### ATTORNEY AND COUNSELOR AT LAW

———————————

MAILING ADDRESS:
PO Box 1852
McCormick, SC 29835
TEL: (864) 465-9555

PHYSICAL ADDRESS:
119 North Pine Street
McCormick, SC 29835
FAX: (864) 465-9554

. . . . .

May 22, 2001

Land Finance Company
430 Main Street
Williamstown, MA 01267

RE: Loan to Buyers Source, Savannah, L.L.C.

Dear Sir/Madam:

This office is acting as counsel for Buyers Source, Savannah, L.L.C, a Limited Liability Company organized under the laws of the State of Virginia and authorized to transact business in the state of South Carolina as a foreign entity ("Borrower") and Frederick D. Blake of Newport News, VA and Thomas H. Brewer and Betty Brewer of Suffolk, VA , all individuals ("Guarantors").

We have been requested to render an opinion in connection with the financial transaction that Land Finance Company ("LFC") proposes to enter into with our clients. For purposes of rendering this opinion, we have reviewed the following documents ("Loan Documents"):

  (i)     the Secured Revolving Credit Agreement date April 17, 2001 with all exhibits and Schedules thereto by and between the borrower and LFC (the "Credit Agreement");

  (ii)    the Revolving Note in the amount of Five Hundred Thousand and 00/100 Dollars ($500,000.00) from borrower in favor of LFC (the "Note")

  (iii)   the Guarantees of the Guarantors;

(iv)    Such other records, certificates, instruments, documents, agreement and assurances as we have considered necessary in connection with the opinions hereinafter set forth.

Capitalized terms used herein have the meanings given such terms in the Loan Agreement. The term "State", as used herein, shall mean the State of South Carolina in which the Borrower is authorized to transact business in the State of South Carolina as a foreign entity.

In addition, we have reviewed Borrower's resolutions and authorization in connection with this transaction, as well as the official organizational documents, records and minutes of Borrower made available to us by management.

In rendering the opinions expressed below, we have assumed the genuineness of all signatures, other than those of Borrower and Guarantors, the authenticity of all documents submitted to us as originals, and the authenticity of the copies of such originals.

We are licensed to practice in the State of South Carolina as a foreign entity. We have made such examination of local, State and federal law as we have deemed relevant for the purposes of this opinion, but have not made an independent review of the laws of any other jurisdiction. Accordingly, we express no opinion as to the laws of any sate or jurisdiction other (a) the State defined above, and (b) the United States of America.

Statements herein as to the enforceability of the Loan Documents are subject to the limitations imposed by bankruptcy laws and general equitable principles and for the purposes of such statements, we have assumed that the laws governing the enforcement of the Loan Documents do not substantively differ from the laws of South Carolina.

On the basis of the foregoing, in reliance thereon, and having regard to legal considerations which we deem relevant, we are of the opinion that:

1.    Borrower is duly organized, validly existing and in good standing under the laws of the state of South Carolina and has the power, authority and all licenses necessary to own and operate its assets and to transact the business as currently conducted (which includes the sale of the properties at the Project and the origination of the Receivables) and/or contemplated, and is duly qualified and in good standing under the laws of each jurisdiction where the conduct of its business or the ownership of its properties and assets requires such qualification and where the failure to be so qualified would have a material adverse effect on the business, assets or financial condition of Borrower.

2.    Borrower has the power, authority and legal right to make, deliver, and perform the Credit Agreement, Note, (Mortgage or Deed) and other Loan Documents and all of the transactions contemplated thereby, and has taken all necessary action to

authorize the execution, delivery and performance of the Loan Document. The managers of the Seller, who are Frederick D. Blake and Thomas H. Brewer, are duly authorized to execute and deliver the LFC each of the Loan Documents to which the Borrower is a party. No consent of any other party and no consent, license, approval or authorization of, or registration or declaration with, any governmental authority, bureau or agency is required for the execution, delivery and performance by Seller of, or compliance by Seller with, the Loan Documents or the consummation of the transactions contemplated thereby.

3.    Each of the Loan Documents to which Borrower is a party, as executed, constitutes the legal, valid and binding obligation of Borrower, enforceable against Borrower in accordance with its respective terms.

4.    The Guarantee has been duly and validly executed and delivered by or on behalf of the Guarantors, and Guarantee constitutes a legal, valid and binding obligation of the Guarantors, enforceable against the Guarantors in accordance with its terms.

5.    There is no action, suit, other litigation or administrative or other proceeding of or before any court, tribunal or governmental body or any arbitration or alternate dispute resolution proceeding pending, or to the knowledge of Borrower (or any of Borrower's officers), threatened against Borrower or any properties or assets of Borrower or with respect to the Loan Documents, which, if adversely determined, could have a material effect on the business, assets or financial condition of Borrower or which would draw into question the validity of any of the Loan Documents.

This opinion is for the benefit of and may be relied upon by Land Finance Company and its successors and assigns.

Sincerely,

W. Greg Seigler

# EXHIBIT D

LAW OFFICES
OF

# WILLIAM GREGORY SEIGLER

ATTORNEY AND COUNSELOR AT LAW

_____

MAILING ADDRESS:
PO Box 1852
McCormick, SC 29835
TEL: (864) 465-9555

PHYSICAL ADDRESS:
119 North Pine Street
McCormick, SC 29835
FAX: (864) 465-9554

May 22, 2001

Land Finance Company
430 Main Street
Williamstown, MA 01267

RE: Loan to Buyers Source, Savannah, L.L.C.

Dear Sir/Madam:

This office is acting as counsel for Buyers Source, Savannah, L.L.C., a Limited Liability Company organized under the laws of the State of Virginia and authorized to transact business in the state of South Carolina as a foreign entity("Seller") and Frederick D. Blake of Newport News, VA and Thomas H. Brewer and Betty Brewer of Suffolk, VA, all individuals ("Guarantors") in connection with that certain Receivables Purchase Agreement dated as of April 17, 2001 (the "Agreement") by and between Seller and Land Finance Company ("LFC").

We have been requested to render an opinion in connection with this transaction to LFC. For the purpose of rendering this opinion, we have reviewed the following documents:

(i)     the Agreement with all Exhibits and Schedules thereto;

(ii)    the Guarantees of the Guarantors;

(iii)   Such other records, certificates, instruments, documents, agreement and assurances as we have considered necessary in connection with the opinions hereinafter set forth.

Capitalized terms used herein have the meanings given such terms in the Loan Agreement. The term "State", as used herein, shall mean the State of South Carolina in which the Seller was organized to do business as a foreign entity.

In addition, we have reviewed Seller's resolutions and authorization in connection with this transaction, as well as the official organizational documents, records and minutes of Seller made available to us by management.

In rendering the opinions expressed below, we have assumed the genuineness of all signatures, other than those of Seller and Guarantors, the legal capacity of all persons executing all such instruments and documents, the authenticity of all documents submitted to us as originals, and the authenticity of the copies of such originals.

We are licensed to practice in the State of South Carolina as a foreign entity. We have made such examination of local, State and federal law as we have deemed relevant for the purposes of this opinion, but have not made an independent review of the laws of any other jurisdiction. Accordingly, we express no opinion as to the laws of any sate or jurisdiction other (a) the State defined above, and (b) the United States of America.

Statements herein as to the enforceability of the Loan Documents are subject to the limitations imposed by bankruptcy laws and general equitable principles and for the purposes of such statements, we have assumed that the laws governing the enforcement of the Loan Documents do not substantively differ from the laws of South Carolina.

On the basis of the foregoing, in reliance thereon, and having regard to legal considerations which we deem relevant, we are of the opinion that:

1. Seller is duly organized, validly existing and in good standing under the laws of the state of South Carolina and has the power, authority and all licenses necessary to own and operate its assets and to transact the business as currently conducted (which includes the sale of the properties at the Project and the origination of the Receivables) and/or contemplated, and is duly qualified and in good standing under the laws of each jurisdiction where the conduct of its business or the ownership of its properties and assets requires such qualification and where the failure to be so qualified would have a material adverse effect on the business, assets or financial condition of Seller.

2. Seller has the power, authority and legal right to make, deliver execute, and perform its obligations under the Loan Documents and all of the transactions contemplated thereby, and has taken all necessary action to authorize the execution, delivery and performance of the Loan Document. The managers of the Seller, who are Frederick D. Blake and Thomas H. Brewer, are duly authorized to execute and deliver the LFC each of the Loan Documents to which the Borrower is a party. No consent of any other party and no consent, license, approval or

authorization of, or registration or declaration with, any governmental authority, bureau or agency is required for the execution, delivery and performance by Seller of, or compliance by Seller with, the Loan Documents or the consummation of the transactions contemplated thereby.

3.      Each of the Loan Documents to which Seller is a party, as executed, constitutes the legal, valid and binding obligation of Seller, enforceable against Seller in accordance with its respective terms.

4.      The execution, delivery and performance by Seller of the Loan Documents and Seller's performance of its obligations thereunder will not (a) create any Lien in favor of any person other than LFC or (b) violate any provision of any existing law or regulation or any order, writ, judgment, injunction or decree of any court, regulatory body or administrative agency or Seller's organizational documents or (c) violate, conflict with, result in the breach of or constitute a default under any mortgage, indenture, contract or other agreement to which Seller is a party or by which Seller or any of its property or assets may be bound. Seller and its business and operations are in full compliance with all applicable federal, sate and local laws and regulations.

5.      Upon endorsement of a Note by Seller to the order of LFC by a manager of Seller and delivery of the same to LFC, all right, title and interest in and to the Note shall have been duly and validly assigned to LFC, free and clear of all liens or encumbrances of any kind. Upon delivery of a Mortgage to LFC and recordation of the related Assignment in the appropriate recording office, the Mortgage shall have been duly and validly assigned to LFC, as the purchaser and owner of the receivables pursuant to the Agreement, does not and will not incur or assume any liabilities, duties or obligations to the obligors of the Receivables.

6.      The Guarantee has been duly and validly executed and delivered by or on behalf of the Guarantors, and Guarantee constitutes a legal, valid and binding obligation of the Guarantors, enforceable against the Guarantors in accordance with its terms.

7.      There is no action, suit, other litigation or administrative or other proceeding of or before any court, tribunal or governmental body or any arbitration or alternate dispute resolution proceeding pending, or to the knowledge of Seller (or any of Seller's officers), threatened against Borrower or any properties or assets of Seller or with respect to the Loan Documents, which, if adversely determined, could have a material effect on the business, assets or financial condition of Borrower or which would draw into question the validity of any of the Loan Documents.

This opinion is for the benefit of and may be relied upon by Land Finance Company and its successors and assigns.

Sincerely,

W. Greg Seigler