B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

| | |
|---|---|
| Litchfield Financial Corporation ) | **COMPLAINT** |
| Textron Financial Corporation ) | |
| Land Finance Company ) | |
| ) | |
| *Plaintiffs* ) | |
| ) | |
| v. ) | |
| Buyers Source Real Estate Group ) | Civil Action No. *04CV30076 KPN* |
| Buyers Source Valley Group, LLC ) | |
| Buyers Source Sugarmill, LLC ) | |
| Buyers Source, Savannah Lakes, LLC ) | |
| Thomas H. Brewer ) | |
| Frederick D. Blake ) | |
| Betty M. Brewer ) | |
| Susan Gard ) | |
| Henry Montgomery ) | |
| Lannie Campbell ) | |
| Ronald P. Ferguson ) | |
| Stephen A. Hudgins, Esq. ) | |
| Stephen A. Hudgins, P.C. ) | |
| Hudgins & Stallings, P.C. ) | |
| J. Vance Stallings, Esq. ) | |
| John C. Lumpkin, Esq. ) | |
| John C. Lumpkin, P.C. ) | |
| William Gregory Seigler, Esq. ) | |
| *Defendants* ) | |
| ) | |

## COMPLAINT

1.      Plaintiffs Litchfield Financial Corporation, Textron Financial Corporation

and Land Finance Company, by and through undersigned counsel, bring this action

against Buyers Source Real Estate Group; Buyers Source Sugarmill, LLC; Buyers Source

Savannah Lakes, LLC; Buyers Source Valley Group, LLC; Stephen A. Hudgins, P.C.;

361418

John C. Lumpkin, P.C.; Stallings & Hudgins, P.C.; Frederick D. Blake in both his individual and official capacity; Thomas H. Brewer, in both his individual and official capacity; Betty Brewer; Susan Gard; Henry Montgomery; Ronald P. Ferguson; Lannie Campbell; Stephen A. Hudgins, Esq.; John C. Lumpkin, Esq.; J. Vance Stallings, Esq.; and William Gregory Seigler, Esq., seeking restitution and monetary damages.

    2.    In August 18, 2003, the U.S. Department of Housing and Urban Development ("HUD") filed a complaint against Buyers Source Sugarmill, LLC; Buyers Source Savannah Lakes, LLC; Buyers Source Valley Group, LLC, and others. HUD asserted that the loan practices of these Buyers Source entities and their employees violated the Interstate Land Sales Full Disclosure Act, 15 U.S.C. § 1701 *et seq.* (the "Land Sales Act") and regulations thereunder. Litchfield Financial Corporation, Textron Financial Corporation, and Land Finance Company were not named in the HUD Complaint and did not violate the Land Sales Act. In contrast, the entities, officers, and employees named in the HUD Complaint did violate the Land Sales Act, and in so doing, caused Litchfield Financial Corporation, Textron Financial Corporation, and Land Finance Company financial and reputational harm.

## PARTIES

    3.    Plaintiff Litchfield Financial Corporation ("Litchfield Financial") is a Massachusetts corporation having its principal place of business at 333 East River Drive, Suite 104, Commerce Building, East Hartford, Connecticut. Litchfield Financial is a diversified finance company that provides financing to creditworthy borrowers for assets not typically financed by banks. The company provides such financing by making loans

2

to businesses secured by consumer receivables or other assets and by purchasing consumer loans.

4.     Litchfield Financial is owned by Textron Financial Corporation ("Textron"). Textron is a Delaware corporation having its principal place of business at 40 Westminster Street, Providence, Rhode Island 02940. Textron provides financing to small and mid-sized companies in both traditional commercial finance markets and in specialized niche markets such as resort developments.

5.     Land Finance Company ("LFC") is an affiliate of Textron's and a subsidiary of Litchfield. LFC is a Delaware corporation having its principal place of business at 333 East River Drive, Suite 104, East Hartford, Connecticut 06108. It is a finance company providing cash for consumer land lot notes. LFC's primary customers are land developers and land aggregators, the latter of which buy multiple lots in existing sub-divisions for resale.

6.     Litchfield Financial, Textron, and LFC are collectively referred to hereinafter as "Litchfield".

7.     Defendant Buyers Source Real Estate Group ("BSRG") is a Virginia corporation having its principal place of business at 705 Mobjack Place, Newport News, Virginia 23606. Buyers Source makes bulk purchases of residential lots in large, existing retirement and recreational developments. Buyers Source markets the lots to consumers in various states including Ohio, South Carolina, and Florida. As described below, Buyers Source Sugarmill LLC, Buyers Source Savannah Lakes LLC, and Buyers Source

3

Valley Group LLC are limited liability corporations established by BSRG for each development.

8.    Defendant Buyers Source Valley Group, LLC ("BSVG") is a limited liability company organized under the laws of Virginia and having its principal place of business at 5705 Lee Farm Lane, Suite C, Suffolk, Virginia 23435. BSVG was established in March of 1999 to acquire and resell lots at the Apple Valley retirement and recreational development in Howard, Ohio.

9.    Defendant Buyer's Source Sugarmill, LLC ("BSS") is a limited liability company organized under the laws of Virginia and having its principal place of business at 5705 Lee Farm Lane, Suite C, Suffolk, Virginia 23435. BSS was established in December of 1999 to acquire and resell lots at the Sugarmill Woods retirement and recreational development in Homasassa, Florida.

10.    Defendant Buyers Source Savannah, LLC ("BSSL") is a limited liability company organized under the laws of Virginia and having its principal place of business at 5705 Lee Farm Lane, Suite C, Suffolk, Virginia 23435. BSSL was organized in February of 2001 to acquire and resell lots at the Savannah Lakes retirement and recreational development near McCormick, South Carolina.

11.    Defendant Thomas H. Brewer ("Brewer"), who is sued in both his individual and official capacity, is a Virginia resident who, upon information and belief, resides at 1516 Sleepy Lake Parkway, Suffolk, Virginia 23434. Brewer signed as guarantor to Litchfield Financial and in his official capacity as a part owner of BSVG and

4

BSS. Brewer was at all relevant times a key decision maker for BSVG, BSSL, and BSS. He was also a managing member of BSVG, BSS, and BSSL. Brewer managed, controlled, and profited from the operation of these Buyers Source entities. He was also a signatory of various contracts, binding Buyers Source entities to agreements that are the subject of this Complaint.

12.    Defendant Frederick D. Blake ("Blake"), who is sued in both his individual and official capacity, is a Virginia resident who, upon information and belief, resides at 708 Village Green Parkway, Newport News, Virginia 23602. Blake signed as guarantor to Litchfield Financial and in his official capacity as a part owner of BSVG. Blake was at all relevant times a key decision maker for BSVG and BSS. He was a managing member of BSVG, BSS, and BSSL. Blake managed, controlled, and profited from the operation of these entities. Blake was also a signatory of various contracts, binding Buyers Source entities to agreements that are the subject of this Complaint.

13.    Defendant Betty M. Brewer, who is sued in both her individual and official capacity, is a Virginia resident who, upon information and belief, resides at 1516 Sleepy Lake Parkway, Suffolk, Virginia 23434. Brewer signed as guarantor to Litchfield Financial and in her official capacity as a part owner of BSVG.

14.    Defendant Lannie Campbell ("Campbell"), who is sued in his individual capacity, is and at all relevant times in this Complaint was actively involved in the marketing and sale of lots at Apple Valley, Savannah Lakes, and Sugarmill Woods on

5

behalf of Buyers Source without knowledge of Litchfield Financial. Along with others, Campbell managed, controlled, and profited from the operation of BSSL.

15.    Defendant Susan Gard ("Gard"), who is sued in her individual capacity, was at all times relevant to this Complaint, actively involved in the marketing and sale of lots at Apple Valley, Savannah Lakes, and Sugarmill Woods on behalf of Buyers Source. Along with others, Gard managed, controlled, and profited from the operation of these entities.

16.    Defendant Henry Montgomery ("Montgomery"), who is sued in his individual capacity, is and at all relevant times in this Complaint was an employee, member and/or shareholder of BSS, BSSL, and BSVG. Along with others, Montgomery profited from the operation of these entities.

17.    The Buyers Source entities and individuals named as Defendants in this Complaint -- BSRG, BSVG, BSS, BSSL, Brewer, Betty Brewer, Blake, Gard, Montgomery, Campbell, and Ferguson -- are hereinafter collectively referred to as the "Buyers Source Defendants."

18.    Defendant Ronald P. Ferguson ("Ferguson"), who is sued in his individual capacity, was at all relevant times in this Complaint was a business advisor for BSSL and BSS. Along with others, Ferguson managed, controlled, and profited from BSSL.

19.    Defendants Stephen Hudgins, Esq. ("Hudgins"), who is sued in his individual capacity, and Stephen A. Hudgins, P.C., were at all relevant times in this

6

Complaint located at 6147 Jefferson Avenue, Newport News, Virginia 23605 and later at

502 Copeland Drive, Hampton, Virginia 23661. Hudgins and his law firm provided

inaccurate representations to Litchfield Financial including, inter alia, that the Buyers

Source entities were in "full compliance with all applicable federal . . . laws and

regulations."

      20.    Defendants John C. Lumpkin, Esq. ("Lumpkin"), who is sued in his

individual capacity, and John C. Lumpkin, P.C., were at all relevant times in this

Complaint located at 119 York Street, Norfolk Virginia 23510. Lumpkin and his law

firm provided inaccurate representations including, inter alia, to Litchfield Financial that

Buyers Source entities were in "full compliance with all applicable federal . . . laws and

regulations."

      21.    Defendant William Gregory Seigler, Esq. ("Seigler"), who is sued in his

individual capacity, was at all relevant times in this Complaint an attorney for Buyers

Source practicing at 119 North Pine Street, McCormick, South Carolina 29835. Seigler

provided inaccurate representations including, inter alia, to Litchfield Financial that

Buyers Source entities were in "full compliance with all applicable federal, state and

local laws and regulations."

      22.    Defendants J. Vance Stallings, Esq. ("Stallings"), who is sued in his

individual capacity, and Hudgins & Stallings, P.C., were at all relevant times in this

Complaint located at 6147 Jefferson Avenue, Newport News, Virginia 23605. Upon

information and belief, Stallings' office is currently located at 753 Thimble Shoals,

7

Newport News, Virginia 23606. Hudgins & Stallings, P.C. and Stallings provided inaccurate representations to Litchfield Financial including, inter alia, that BSVG was in full compliance with "applicable local, state, and federal laws."

23.    Counsel and law firm entities named as Defendants in this Complaint -- Hudgins, Stephen A. Hudgins, P.C., Lumpkin, John C. Lumpkin, P.C., Stallings, Hudgins & Stallings, P.C., and William Gregory Seigler -- are hereinafter collectively referred to as "Counsel Defendants."

### JURISDICTION AND VENUE

24.    Litchfield Financial incorporates the allegations set forth in Paragraphs 1 through 23 above.

25.    This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, because the parties are citizens of different states and the amount in controversy exceeds $75,000.

26.    BSVG, BSS, and BSSL consented to submit to the general jurisdiction of the courts of the Commonwealth of Massachusetts and the U.S. District Court for the District of Massachusetts in any legal action relating to or arising out of executed agreements and to accept service of process. To the best of Litchfield Financial's knowledge, no owner of BSVG, BSS or BSVG is a citizen of Delaware, Massachusetts, Connecticut or Road Island.

8

27.     Thomas Brewer, Fredrick Blake, and Betty Brewer, as guarantors of the agreements between the parties, irrevocably and unconditionally consented to the general jurisdiction of the Commonwealth of Massachusetts and the U.S. District Court for the District of Massachusetts in any legal action relating to or arising out of any of the executed agreements and to accept service of process. Moreover, as guarantors of the agreements between the parties that are the subject of this Complaint, the actions of these defendants in transacting business in the Commonwealth of Massachusetts on behalf of themselves and the Buyers Source entities were such that the possible need to invoke the benefits and protections of this forum's laws were at all times clearly foreseen by them.

28.     This Court has personal jurisdiction over Susan Gard, Henry Montgomery, Thomas Brewer, Fredrick Blake, Betty Brewer, Ronald P. Ferguson and Lannie Campbell. Jurisdiction over these defendants is authorized under the Commonwealth's long-arm statute and comports with the due process requirements of the United States Constitution. Mass. Gen. Laws Ch. 233A § 3 (2003). Susan Gard, Henry Montgomery, Thomas Brewer, Fredrick Blake, Betty Brewer, Ronald P. Ferguson, and Lannie Campbell, through their transaction of business on behalf of Buyers Source in other jurisdictions, have caused tortious injury to Litchfield Financial in the Commonwealth of Massachusetts. But for the actions of Susan Gard, Henry Montgomery, Ronald P. Ferguson and Lannie Campbell, Litchfield Financial would not have suffered the injuries alleged in this Complaint. Exercising jurisdiction over these parties pursuant to Massachusetts long-arm statute comports with constitutional due process and traditional notions of fair play.

9

29.     This Court has personal jurisdiction over Stephen A. Hudgins, Esq.
Stephen A. Hudgins, P.C., John C. Lumpkin, Esq., John C. Lumpkin P.C., J. Vance
Stallings, Esq., Hudgins & Stallings, P.C., and William Gregory Seigler, Esq. Stephen A.
Hudgins, Esq. Stephen A. Hudgins, P.C., John C. Lumpkin, Esq., John C. Lumpkin P.C.,
J. Vance Stallings, Esq., Stallings & Hudgins, P.C., and William Gregory Seigler, Esq.
because each negligently delivered incorrect legal opinions to Litchfield Financial in
Massachusetts, constituting the commission of a tortious act in the Commonwealth.
Jurisdiction over these defendants is authorized under the Commonwealth's long-arm
statute and comports with the due process requirements of the United States Constitution.
Mass. Gen. Laws Ch. 233A § 3 (2003). In addition, Stephen A. Hudgins, Stephen A.
Hudgins, P.C., John C. Lumpkin, Esq., John C. Lumpkin, P.C., J. Vance Stallings, Esq.,
Stallings & Hudgins, P.C., and William Gregory Seigler, Esq. through their transaction of
business on behalf of Buyers Source in other jurisdictions have caused tortious injury in
the Commonwealth of Massachusetts. But for the actions of Stephen A. Hudgins,
Stephen A. Hudgins, P.C., John C. Lumpkin, Esq., John C. Lumpkin, P.C., J. Vance
Stallings, Esq., Stallings & Hudgins, P.C., and William Gregory Seigler, Esq., Litchfield
Financial would not have suffered the injuries alleged in this Complaint. Exercising
jurisdiction over these parties pursuant to Massachusetts long-arm statute comports with
Constitutional due process and traditional notions of fair play.

30.     Venue is proper pursuant to 28 U.S.C. § 1391(a)-(b), because this is the
judicial district wherein a substantial part of the events or omissions giving rise to the
claim occurred. In addition, the parties to the agreements that are the subject of this

10

action consented as part of the terms and conditions of those agreements to venue in the courts of the Commonwealth of Massachusetts and United States District Court for the District of Massachusetts for any disputes arising therefrom, and waived any objections they might have to venue.

31.    The agreements that are the subject of this Complaint provide that there will not be trial by jury.

## FACTUAL BACKGROUND

32.    Litchfield Financial incorporates the allegations set forth in Paragraphs 1 through 31 above.

33.    During 1999, Textron bought Litchfield Financial. Between 1999 and 2001, Litchfield Financial and Buyers Source engaged in three types of finance arrangements -- Purchase Facilities, Revolving Lines of Credit, and Acquisition loans. The two primary types of agreements between Litchfield Financial and Buyers Source were Purchase Facilities and Revolving Lines of Credit. Under the Purchase Facility agreements between Litchfield Financial and Buyers Source, Litchfield Financial bought consumer loans that Buyers Source had originated, subject to put backs for delinquencies, breaches in representations, and breaches in warranties. Under the Revolving Lines of Credit, Buyers Source collaterally assigned consumer loans that Buyers Source had originated to Litchfield Financial as collateral for lines of credit issued by Litchfield Financial to Buyers Source.

34.    Buyers Source Defendants made representations and warranties in all agreements entered into with Litchfield Financial that Buyers Source entities and employees had and would comply in all material respects with all federal and state laws, rules, regulations, and orders applicable to them with respect to the Buyers Source entities' status and activities as developers. However, HUD alleges in its August 2003 complaint that the Buyers Source Defendants violated the Land Sales Act. These violations were committed without the knowledge or participation of Litchfield.

35.    Litchfield Financial was the principal victim of the Buyers Source Defendants' fraudulent scheme. The Buyers Source Defendants conspired to and fraudulently induced Litchfield Financial to enter into contractual agreements with them, where Litchfield Financial would purchase or acquire loans for properties sold in Florida at Sugarmill Woods, in South Carolina at Savannah Lakes, and in Ohio at Apple Valley. Buyers Source Defendants made material misrepresentations to Litchfield Financial about the compliance of the Buyers Source entities and employees with federal, state, and local law and the legality and propriety of Buyers Source entities' and employees' operations in Florida, South Carolina, and Ohio. These material misrepresentations included false statements that the Buyers Source sales personnel were properly licensed and conducted business ethically. In so doing, Defendants breached each and every agreement entered into with Litchfield.

36.    The Counsel Defendants, Stephen A. Hudgins, Esq., Stephen A. Hudgins, P.C., John C. Lumpkin, Esq., and John C. Lumpkin, P.C., J. Vance Stallings, Esq.,

Stallings & Hudgins, P.C., and William Gregory Siegler, Esq. also negligently misled Litchfield. Stephen A. Hudgins, Esq., Stephen A. Hudgins, P.C. John C. Lumpkin, Esq., John C. Lumpkin, P.C., J. Vance Stallings, Esq., Stallings & Hudgins, P.C., and William Gregory Seigler provided Litchfield Financial with legal opinions that negligently and incorrectly stated that the Buyers Source entities were in compliance with all applicable federal rules and regulations, including the Land Sales Act. Had the Counsel Defendants performed a proper legal analysis before delivering their objective opinions, they would have discovered the failure of the Buyers Source entities to comply with federal law and regulations, including the Land Sales Act and regulations thereunder. Litchfield Financial relied upon these opinions, and these opinions induced Litchfield Financial to enter into Purchase Facility, Revolving Credit, and other agreements with Buyers Source Defendants. The issuance of said legal opinions constitutes malpractice.

37.     The legal opinions rendered by Stephen A. Hudgins, Esq., Stephen A. Hudgins, P.C., J. Vance Stallings, Esq., Hudgins & Stallings, P.C., John C. Lumpkin, Esq., and John C. Lumpkin, P.C. ("the legal opinions") are an integral part of the Revolving Credit agreements. Litchfield Financial would not have entered into any of these agreements without having been issued the positive assessments regarding the Buyers Source Defendants' compliance with federal and state laws identified in Counsel Defendants' legal opinions. The legal opinions were exhibits to and incorporated in the Revolving Credit agreements between the parties. These Counsel Defendants knew that the legal opinions were to be incorporated into the Revolving Credit agreements, and would be relied upon by Litchfield. As such, these Counsel Defendants owed Litchfield

Financial a duty of care based on Litchfield's foreseeable reliance on their opinions in the execution of the transactions that are the subject of this Complaint.

38.    For example, in entering into the June 2000 Receivables Line of Credit agreement with BSVG, which is a part of a Revolving Credit Agreement executed on the same date, Litchfield Financial relied upon key statements set forth in the June 22, 2000 legal opinion of Stephen A. Hudgins, Esq. of Stephens A. Hudgins, P.C.  The opinion states, in pertinent part, "We are of the opinion that: [BSVG] and its business and operations are in full compliance with all applicable federal, state, and local laws and regulations."

39.    The legal opinions rendered by Stephen A. Hudgins, Esq., Stephen A. Hudgins, P.C., John C. Lumpkin, Esq., and John C. Lumpkin, P.C. are also an integral part of the Purchase Facility agreements.  These Counsel Defendants knew that their legal opinions were to be incorporated into the Purchase Facility agreements.  Litchfield Financial would not have entered into these agreements without having been issued the positive assessments of the Buyers Source Defendants' compliance with federal and state laws set forth in the legal opinions.  The legal opinions were exhibits to and incorporated in the Purchase Facility Agreements between the parties.  These Counsel Defendants owed Litchfield Financial a duty of care based on Litchfield's foreseeable reliance on their opinions in the execution of the transactions that are the subject of this Complaint.

40.    For example, in entering into the May 10, 2001 Purchase Facility agreement with BSVG, Litchfield Financial relied upon key statements in the legal

14

opinion of John C. Lumpkin, Esq. and John C. Lumpkin, P.C. dated May 10, 2001. The opinion states, in pertinent part, that "[BSS] and its business and operations are in full compliance with all applicable federal, state and local laws and regulations." The legal opinions rendered by William Gregory Seigler, Esq., J. Vance Stallings, Esq., and Hudgins & Stallings, P.C. are an integral part of the Receivable Purchase Agreements entered into between BSSL, BSVG, and Litchfield, specifically LFC. Litchfield Financial would not have entered into these agreements without having been issued the positive assessments of Buyers Sources' compliance with federal, state and local law set forth in these legal opinions. The legal opinions were exhibits to and incorporated in the agreements between the parties. Siegler, Stallings, and Hudgins & Stallings, P.C. knew that their legal opinions were to be incorporated into the Receivable Purchase Agreements owed Litchfield Financial a duty of care based on Litchfield's foreseeable reliance on the Siegler, Stallings, and Hudgins & Stallings, P.C. opinions in the execution of the transactions that are the subject of this Complaint.

41.    For example, in entering into the April 17, 2001 Receivable Purchase Agreement with BSSL, Litchfield Financial relied upon key statements in the legal opinion of William Gregory Seigler, Esq.  The opinion states, in pertinent part, that "[BSSL] and its business and operations are in full compliance with all applicable federal, state and local laws and regulations."

42.    Upon information and belief, Litchfield's entering the May 1999 Receivable Purchase Agreement with BSVG was contingent upon Litchfield's receipt of

an acceptable legal opinion by counsel stating that BSVG was in full compliance with all applicable federal state, and local laws. The legal opinion, dated June 10, 1999, was rendered by Hudgins & Stallings, P.C., and stated, among other things, that "[BSVG] has complied with all applicable local, state and federal laws."

## CAUSES OF ACTION

### COUNT I

**BREACH OF CONTRACT**
Representations, Warranties, Covenants & Take Back Provisions
(Thomas Brewer, Betty Brewer, BSVG, BSS, and BBSL)

43.     Litchfield Financial incorporates the allegations set forth in Paragraphs 1 through 42 above.

44.     Litchfield Financial entered into valid and binding agreements with Defendants, BSVG, BSS, BSSL, Betty Brewer, Brewer, and Blake including Purchase Facility Agreements and Revolving Credit Agreements.

45.     By making misrepresentations to Litchfield Financial and engaging in activities in violation of the Land Sales Act and applicable state laws in Ohio, Florida and South Carolina, the Buyers Source Defendants breached multiple provisions of the Purchase Facility Agreements, Revolving Credit Agreements, and all related agreements entered into with Litchfield. The provisions of these agreements breached by the Buyers Source Defendants include representations, warranties, covenants and take back provisions.

46.    As a consequence of the Buyers Source Defendants' breaches Litchfield Financial has suffered pecuniary damages and reputational harm.

## COUNT II

### FRAUD
(Buyers Source Defendants)

47.    Litchfield Financial incorporates the allegations set forth in Paragraphs 1 through 46 above.

48.    The Buyers Source Defendants knowingly, intentionally, and continually made misrepresentations to Litchfield Financial in order to induce Litchfield Financial to fund projects in Ohio, Florida, and South Carolina between the period of January 1999 and February 2002.

49.    The Buyers Source Defendants made false representations and took actions that misled Litchfield Financial into believing that the business practices of the Buyers Source entities and employers relating to the development projects in Ohio, Florida, and South Carolina were in full and complete compliance with federal law including the Land Sales Act.

50.    The Buyers Source Defendants made false representations and took actions that misled Litchfield Financial into believing that business practices of the Buyers Source entities and employees relating to the development projects in Ohio, Florida, and South Carolina were in full and complete compliance with applicable state laws governing developers.

17

51.    A Purchase Facility Agreement was executed on April 17, 2001 between BSSL and LFC and signed by Blake, Brewer, and Betty Brewer on behalf of BSSL. The Agreement explicitly states that to "induce" LFC executives to execute the agreement BSSL represents that it is "in full compliance with all applicable federal, state and local laws and regulations." This representation was false.

52.    In addition, similar false statements were made orally by Blake, Brewer, Betty Brewer and others to representatives of LFC in association with the execution of and during the course of negotiations of the April 17, 2000 Agreement.

53.    A Loan and Security Agreement was executed between LFC and BSVG on June 13, 2000, and signed by Blake, Brewer, and Betty Brewer on behalf of the BSVG. The Agreement explicitly states that in order to induce LFC to enter into the agreement with BSVG, BSVG represents and warrants that it will comply "in all material respects with all laws, regulations and orders applicable" to BSVG, its business or properties. This statement was false. The June 13, 2000 Agreement also states that the prevailing party to litigation is entitled to recover attorneys' fees and costs in addition to any other relief awarded.

54.    In addition, similar false statements were made orally by Blake, Brewer, Betty Brewer, and others to representatives of LFC in association with the execution of and during the course of the negotiation of the June 13, 2000 Agreement.

18

55.     On May 10, 1999, LFC and BSVG entered into a Receivables Purchase Agreement, signed by Blake on behalf of BSVG. The Agreement explicitly states that to "induce" LFC to enter into the agreement BSVG represents and warrants that it is "in full compliance with all applicable federal, state and local laws and regulations." This statement was false.

56.     In addition, similar false statements were orally made by Blake and others to representatives of LFC in association with the execution of and during the course of the negotiation of the May 10, 1999 Agreement.

57.     The above-referenced agreements are only a few examples of agreements entered into or renewed by Litchfield Financial based on both oral and written misrepresentations made by the Buyers Source Defendants.

58.     Litchfield Financial will show that other intentionally untruthful representations made to Litchfield Financial by the Buyers Source Defendants were fraudulent at the time that they were made and that the Buyers Source Defendants knew that they were fraudulent at the time they were made. Litchfield Financial reasonably relied upon all the false representations made by Buyers Source Defendants at the time they were made.

59.     The Buyers Source Defendants intended to defraud and purposefully concealed from Litchfield Financial the fact that they were engaging in fraudulent sales tactics in violation of federal law including the Land Sales Act, federal regulations

19

therunder, and applicable state laws so that Litchfield Financial would conduct business with the Buyers Source Defendants and maintain business relations. The Buyers Source Defendants went to great lengths to conceal their unlawful actions from Litchfield.

60.     As a consequence of the Buyers Source Defendants' fraudulent misrepresentations, Litchfield Financial suffered pecuniary damages and reputational harm.

## COUNT III

### NEGLIGENT MISREPRESENTATION
(Buyers Source Defendants and Counsel Defendants)

61.     Litchfield Financial incorporates the allegations set forth in Paragraphs 1 through 60 above.

62.     In the course of conducting business with Litchfield, the Buyers Source Defendants and the Counsel Defendants negligently supplied false information to Litchfield Financial about the lawfulness of the actions taken by the Buyers Source entities' and employees' business practices.

63.     The Buyers Source Defendants and the Counsel Defendants knew or had reason to know that the false information they provided to Litchfield Financial and to customers of the Buyers Source entities would be relied upon by Litchfield Financial for guidance in making decisions to enter into and maintain business transactions with the Buyers Source Defendants and with Buyers Source Defendants' clients and customers.

20

64.    The false information provided to Litchfield Financial and to customers of the Buyers Source entities about the legality of the actions taken by the Buyers Source entities and employees has caused pecuniary loss and reputational harm to Litchfield Financial and to customers of the Buyers Source entities.

65.    Litchfield Financial justifiably replied upon the false information provided by the Defendants at the time the information was provided.

66.    The Buyers Source Defendants and the Counsel Defendants failed to exercise reasonable care or competence in obtaining or communicating the false information to Litchfield.

## COUNT IV

### FRAUD IN THE INDUCEMENT
(Buyers Source Defendants)

67.    Litchfield Financial incorporates the allegations set forth in Paragraphs 1 through 66 above.

68.    The Buyers Source Defendants knowingly and intentionally made material misrepresentations to Litchfield Financial in order to induce Litchfield Financial to finance the Buyer Source entities' projects and activities in Florida, Ohio, and South Carolina. The Buyers Source Defendants also made material misrepresentations to Litchfield Financial regarding the financial condition of certain guarantors of those projects and the qualifications and legality of the sales practices employed by certain sales personnel including Lannie Campbell and Henry Montgomery.

21

69.    The Buyers Source Defendants made knowingly and intentionally material misrepresentations to Litchfield Financial in order to induce Litchfield Financial to enter into the Purchase Facility Agreements (and all associated agreements) and the Revolving Credit Agreements (and all associated agreements). Unbeknownst to Litchfield, the Buyers Source Defendants continued to make material misrepresentations to Litchfield Financial after the execution of these agreements in order to receive further funding from Litchfield Financial for their fraudulent schemes and so that Frederick Blake, Betty Brewer, Thomas Brewer, Lannie Campbell, Henry Montgomery and Ronald P. Ferguson could become unjustly enriched.

70.    Litchfield Financial reasonably relied on the false statements and representations made by the Buyer Source Defendants in both entering into the Purchase Facility Agreements (and all associated agreements) and the Revolving Credit Agreements (and all associated agreements) and in continuing to operate under the terms and conditions of those agreements.

71.    Litchfield's reasonable reliance on the false and deceitful statements made by the Buyers Source Defendants has caused financial losses and reputational harm to Litchfield.

22

## COUNT V

### UNJUST ENRICHMENT
(Buyers Source Defendants)

72.    Litchfield Financial incorporates and realleges the allegations set forth in Paragraphs 1 through 71 above.

73.    Without Litchfield's knowledge, the Buyers Source Defendants violated the Land Sales Act and defrauded purchasers of land in Ohio, Florida, and South Carolina for whom Litchfield Financial acted as lender. Customers of the Buyers Source entities have suffered financial harm.

74.    Litchfield Financial has been forced to make financial settlements with customers of the Buyers Source entities for the wrongs committed solely by the Buyers Source Defendants.

75.    The Buyers Source Defendants' wrongful conduct was motivated by monetary gain.

76.    The Buyers Source Defendants were unjustly enriched by and through their business relationship with Litchfield, even in such instances when the relationship was indirect.

77.    Litchfield Financial should be afforded the equitable remedy of financial restitution. Any and all profit made by the Buyers Source Defendants based on their business dealings with Litchfield Financial should be returned to Litchfield Financial – including (1) the sum total of all money spent by Litchfield Financial to make the

23

customers of the Buyers Source entities whole; (2) the unpaid amount of all money lent to the Buyers Source Defendants; and, (3) the outstanding balances on all loans executed by the customers of the Buyers Source entities.

## COUNT VI

### LEGAL MALPRACTICE
(Counsel Defendants)

78.     Litchfield Financial incorporates the allegations set forth in Paragraphs 1 through 77 above.

79.     The Counsel Defendants delivered faulty legal opinions to Litchfield Financial concerning Litchfield's transactions with BSVG, BSS, and BSSL. Litchfield Financial reasonably relied upon those legal opinions in entering into transactions with BSVG, BSS, and BSSL.

80.     The faulty legal opinions constituted legal malpractice and the Counsel Defendants are liable to Litchfield Financial for all direct and indirect harms resulting therefrom.

## PRAYER FOR RELIEF

WHEREFORE, Litchfield Financial prays that, upon final adjudication of the merits, the Court will:

A.     Order full and complete restitution to Litchfield Financial by Defendants in the amount of all monies spent to pay damages or to compensate customers of the Buyers Source entities, an amount in excess of $5,000,000.

24

B.    Order full repayment to Litchfield Financial of all money lent to the Buyers Source Defendants under the breached Agreements.

C.    Order full payment to Litchfield Financial by the Buyers Source Defendants of the sum total amount of the outstanding balances on all unpaid loans executed agreements between Litchfield Financial and the Buyers Source entities.

D.    Order Defendants to pay for all attorneys' fees as provided in the agreements that are the subject of this suit and costs associated with this lawsuit.

E.    Order Defendants to pay for all damages incurred by Litchfield.

F.    Order such other legal and equitable relief as appropriate.

Dated: April 16, 2004                    Respectfully submitted,
                                          Counsel for Plaintiffs

                                          LITCHFIELD FINANCIAL COMPANY
                                          TEXTRON FINANCIAL CORPORATION
                                          AND LAND FINANCE COMPANY

                                          By
                                          Jeffrey L. McCormick, Esq., of
                                          Robinson Donovan, P.C.
                                          1500 Main Street, Suite 1600
                                          Springfield, Massachusetts 01115
                                          Phone (413) 732-2301  Fax (413) 785-4658
                                          BBO No. 329740

25