Massachusetts. See supra p. 2; Complaint ¶ 33. With particular regard to Mr. Seigler, the legal opinion letters he prepared that were instrumental in the transactions were provided to Plaintiffs in Massachusetts. Similarly, Plaintiffs' reliance on Mr. Seigler's statements and its subsequent injury took place in Massachusetts. Complaint ¶ 36; Green Dec. ¶¶ 8-9. It is these opinion letters which form the basis for Plaintiffs' charges of legal malpractice and negligent misrepresentation against Mr. Seigler. Complaint ¶¶ 61-66, 78-80.

Defendant's grounds for objecting to venue in this District are unclear. Defendant stresses that the property on which Mr. Seigler opined is located in South Carolina and that other property that were the subject of transactions is located in Ohio and Florida. By his own admissions, it would appear that, at best, this would augur for a motion transferring venue of the action against Mr. Seigler to the federal court in the District of South Carolina. However, such a result, of course, would result in judicial inefficiency. Accordingly, to separate the charges in this action against Mr. Seigler and transfer them to the District of South Carolina is unwarranted. Venue is appropriate and proper in the District of Massachusetts as to all defendants.

## V. CONCLUSION

For the reasons stated above, Plaintiffs LFC, TFC, and Land FC request that this Court deny Defendant William Gregory Seigler's Motion to Dismiss him from the lawsuit. Plaintiffs also request that the Court deny Mr. Seigler's request to stay this action pending resolution of the South Carolina action.

Dated: September 3, 2004

Respectfully submitted,
Counsel for Plaintiffs

LITCHFIELD FINANCIAL COMPANY
TEXTRON FINANCIAL CORPORATION
AND LAND FINANCE COMPANY

By: _____

Jeffrey L. McCormick, Esq. of
Robinson Donovan, P.C.
1500 Main Street, Suite 1600
Springfield, Massachusetts 01115
Phone (413) 732-2301   Fax (413) 785-4658
BBO No. 329740

Counsel for Plaintiffs

Of Counsel:
Christopher F. Dugan
James E. Anklam
Jeremy P. Evans
Paul, Hastings, Janofsky & Walker, LLP
1299 Pennsylvania Avenue, NW, 10th Floor
Washington, DC 20004-2400
202/508-9500
202/508-9700 (fax)

### CERTIFICATE OF SERVICE

I hereby certify that on this day a true copy of the above document was served upon the attorney of record for each party by mail/by hand.

Date: 9/3/04   _____

WDC/284455.9

22

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

| | |
|---|---|
| Litchfield Financial Corporation, *et al.*, )<br>)<br>***Plaintiffs*** )<br>v. )<br>)<br>Buyers Source Real Estate Group, *et al.*, )<br>)<br>***Defendants*** )<br>_____) | No. 04-CV-30076-KPN |

## DECLARATION OF PAUL F. GREEN
## PURSUANT TO 28 U.S.C. § 1746(2)

1. My name is Paul F. Green, and I am over 18 years of age. I make this declaration in support of Plaintiffs' Opposition of Defendant William Gregory Seigler's Motion to Dismiss.

2. I am an officer of Litchfield Financial Corporation, one of the Plaintiffs in this case, and my title is Clerk.

3. In my position, I am responsible for supervising the activities of in-house and outside counsel servicing the land loan portfolio. In 2001, I was responsible for supervising the activities of in-house legal counsel assigned to the Land Finance Division of Litchfield Financial Corporation.

4. This Declaration is based upon my personal knowledge and the information available to me from the files, records, and employees of Plaintiffs.

5. In May 2001, the principal place of business of Plaintiffs Litchfield Finance Company and Land Finance Company was 430 Main Street, Williamstown, MA.

6. Land Finance Company received three letters from Defendant William Gregory Seigler, Esq. at its offices in Williamstown, MA in May 2001. The three letters were dated May 22, 2001. Copies of the three letters are attached hereto.

7. On information and belief, Plaintiffs relied upon the statements contained in Mr. Seigler's letter in Williamstown, MA.

8. Because of Mr. Seigler's statements, Land Finance Company made the decision to purchase consumer loans from, and lend money to, Buyers Source Savannah LLC. This decision was made at the Land Finance Company offices in Williamstown, MA. Thereafter Land Finance Company issued instructions to fund the loans from its offices in Williamstown, MA.

9.      Litchfield Financial Corporation is a Massachusetts corporation that has incurred losses in Massachusetts because the value of its assets related to Buyers Source have been impaired.

10.     Land Finance Company has not been able to find a copy of a letter allegedly sent by Mr. Seigler to Land Finance Company and dated May 19, 2001.

Further declarant sayeth naught. I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 2, 2004                    _____
                                                              Name

LAW OFFICES
OF

# WILLIAM GREGORY SEIGLER

ATTORNEY AND COUNSELOR AT LAW

MAILING ADDRESS:
PO Box 1852
McCormick, SC 29835
TEL: (864) 465-9555

PHYSICAL ADDRESS:
119 North Pine Street
McCormick, SC 29835
FAX: (864) 465-9554

May 22, 2001

Land Finance Company
430 Main Street
Williamstown, MA 01267

RE: Loan to Buyers Source, Savannah, L.L.C.

Dear Sir/Madam:

This office is acting as counsel for Buyers Source, Savannah, L.L.C, a Limited Liability Company organized under the laws of the State of Virginia and authorized to do business in the state of South Carolina as a foreign entity("Borrower") and Frederick D. Blake of Newport News, VA, and Thomas H. Brewer and Betty Brewer of Suffolk, VA all individuals ("Guarantors")..

We have been requested to render an opinion in connection with the financial transactions that Land Finance Company ("LFC") proposes to enter into with our clients. For purposes of rendering this opinion, we have reviewed the following documents ("Loan Documents"):

(i) the Loan and Security Agreement with all Exhibits and Schedules thereto by and between the Borrower and LFC (the "Loan Agreement");

(ii) the Revolving Note in the amount of Three Million and 00/100 Dollars ($3,000,000.00) from borrower in favor of LFC;

(iii) The Guarantees of the Guarantors;

(iv)  the servicing Agreement by and among Borrower, LFC; and

(v)   such other records, certificates, instruments, documents, agreement and assurances as we have considered necessary in connection with the opinions hereinafter set forth.

Capitalized terms used herein have the meanings given such terms in the Loan Agreement. The term "State", as used herein, shall mean the State of South Carolina in which the Seller was organized.

In addition, we have reviewed Borrower's resolutions and authorization in connection with this transaction, as well as the official organizational documents, records and minutes of Seller mad available to us by management.

In rendering the opinions expressed below, we have assumed the genuineness of all signatures, other than those of Borrower and Guarantors, the authenticity of all documents submitted to us as originals, and the authenticity of the copies of such originals.

We are licensed to practice in the State of South Carolina. We have made such examination of local, State and federal law as we have deemed relevant for the purposes of this opinion, but have not made an independent review of the laws of any other jurisdiction. Accordingly, we express no opinion as to the laws of any sate or jurisdiction other (a) the State defined above, and (b) the United States of America.

Statements herein as to the enforceability of the Loan Documents are subject to the limitations imposed by bankruptcy laws and general equitable principles and for the purposes of such statements, we have assumed that the laws governing the enforcement of the Loan Documents do not substantively differ from the laws of South Carolina.

On the basis of the foregoing, in reliance thereon, and having regard to legal considerations which we deem relevant, we are of the opinion that:

1.  Borrower is duly organized, validly existing and in good standing under the laws of the state of South Carolina and has the power, authority and all licenses necessary to own and operate its assets and to transact the business as currently conducted (which includes the sale of the properties at the Project and the origination of the Receivables) and/or contemplated, and is duly qualified and in good standing under the laws of each jurisdiction where the conduct of its business or the ownership of its properties and assets requires such qualification and where the failure to be so qualified would have a material adverse effect on the business, assets or financial condition of Borrower.

2. Borrower has the power, authority and legal right to make, deliver, and perform the Credit Agreement, Note, (Mortgage or Deed) and other Loan Documents and all of the transactions contemplated thereby, and has taken all necessary action to authorize the execution, delivery and performance of the Loan Document. The managers of the Seller, who are Frederick D. Blake and Thomas H. Brewer, are duly authorized to execute and deliver the LFC each of the Loan Documents to which the Borrower is a party. No consent of any other party and no consent, license, approval or authorization of, or registration or declaration with, any governmental authority, bureau or agency is required for the execution, delivery and performance by Borrower with the Loan Documents or the consummation of the transactions contemplated thereby.

3. Each of the Loan Documents to which Borrower is a party, as executed, constitutes the legal, valid and binding obligation of Borrower, enforceable against Borrower in accordance with its respective terms.

4. The Loan Documents create a valid and enforceable lien in and to the Collateral in favor of LFC. Upon possession of the notes and the filing of the mortgages, such security interest in favor of LFC will be perfected first priority security interest.

5. The execution, delivery and performance by Borrower of the Loan Documents and Borrower's performance of its obligations thereunder will not (a) create any Lien in favor of any person other than LFC or (b) violate any provision of any existing law or regulation or any order, writ, judgement, injunction or decree of any court, regulatory body or administrative agency or Borrower's organizational documents or (c) violate, conflict with, result in the breach of or constitute a default under any mortgage, indenture, contract or other agreement to which Borrower is a party or by which Borrower or any of its property or assets may be bound. Borrower and its business and operations are in full compliance with all applicable federal, state and local laws and regulations.

6. The Guarantee has been duly and validly executed and delivered by or on behalf of the Guarantors, and Guarantee constitutes a legal, valid and binding obligation of the Guarantors, enforceable against the Guarantors in accordance with its terms.

7. There is no action, suit, other litigation or administrative or other proceeding of or before any court, tribunal or governmental body or any arbitration or alternate dispute resolution proceeding pending, or to the knowledge of Borrower (or any of Borrower's officers), threatened against Borrower or any properties or assets of Borrower or with respect to the Loan Documents, which, if adversely determined, could have a material effect on the business, assets or financial condition of Borrower or which would draw into question the validity of any of the Loan Documents.

This opinion is for the benefit of and may be relied upon by Land Finance Company and its successors and assigns.

Sincerely,

W. Greg Seigler

LAW OFFICES
OF

# WILLIAM GREGORY SEIGLER

ATTORNEY AND COUNSELOR AT LAW

MAILING ADDRESS:
PO Box 1852
McCormick, SC 29835
TEL: (864) 465-9555

PHYSICAL ADDRESS:
119 North Pine Street
McCormick, SC 29835
FAX: (864) 465-9554

May 22, 2001

Land Finance Company
430 Main Street
Williamstown, MA 01267

RE: Loan to Buyers Source, Savannah, L.L.C.

Dear Sir/Madam:

This office is acting as counsel for Buyers Source, Savannah, L.L.C., a Limited Liability Company organized under the laws of the State of Virginia and authorized to transact business in the state of South Carolina as a foreign entity("Seller") and Frederick D. Blake of Newport News, VA and Thomas H. Brewer and Betty Brewer of Suffolk, VA, all individuals ("Guarantors") in connection with that certain Receivables Purchase Agreement dated as of April 17, 2001 (the "Agreement") by and between Seller and Land Finance Company ("LFC").

We have been requested to render an opinion in connection with this transaction to LFC. For the purpose of rendering this opinion, we have reviewed the following documents:

(i) the Agreement with all Exhibits and Schedules thereto;

(ii) the Guarantees of the Guarantors;

(iii) Such other records, certificates, instruments, documents, agreement and assurances as we have considered necessary in connection with the opinions hereinafter set forth.

Capitalized terms used herein have the meanings given such terms in the Loan Agreement. The term "State", as used herein, shall mean the State of South Carolina in which the Seller was organized to do business as a foreign entity.

In addition, we have reviewed Seller's resolutions and authorization in connection with this transaction, as well as the official organizational documents, records and minutes of Seller made available to us by management.

In rendering the opinions expressed below, we have assumed the genuineness of all signatures, other than those of Seller and Guarantors, the legal capacity of all persons executing all such instruments and documents, the authenticity of all documents submitted to us as originals, and the authenticity of the copies of such originals.

We are licensed to practice in the State of South Carolina as a foreign entity. We have made such examination of local, State and federal law as we have deemed relevant for the purposes of this opinion, but have not made an independent review of the laws of any other jurisdiction. Accordingly, we express no opinion as to the laws of any sate or jurisdiction other (a) the State defined above, and (b) the United States of America.

Statements herein as to the enforceability of the Loan Documents are subject to the limitations imposed by bankruptcy laws and general equitable principles and for the purposes of such statements, we have assumed that the laws governing the enforcement of the Loan Documents do not substantively differ from the laws of South Carolina.

On the basis of the foregoing, in reliance thereon, and having regard to legal considerations which we deem relevant, we are of the opinion that:

1. Seller is duly organized, validly existing and in good standing under the laws of the state of South Carolina and has the power, authority and all licenses necessary to own and operate its assets and to transact the business as currently conducted (which includes the sale of the properties at the Project and the origination of the Receivables) and/or contemplated, and is duly qualified and in good standing under the laws of each jurisdiction where the conduct of its business or the ownership of its properties and assets requires such qualification and where the failure to be so qualified would have a material adverse effect on the business, assets or financial condition of Seller.

2. Seller has the power, authority and legal right to make, deliver execute, and perform its obligations under the Loan Documents and all of the transactions contemplated thereby, and has taken all necessary action to authorize the execution, delivery and performance of the Loan Document. The managers of the Seller, who are Frederick D. Blake and Thomas H. Brewer, are duly authorized to execute and deliver the LFC each of the Loan Documents to which the Borrower is a party. No consent of any other party and no consent, license, approval or

authorization of, or registration or declaration with, any governmental authority, bureau or agency is required for the execution, delivery and performance by Seller of, or compliance by Seller with, the Loan Documents or the consummation of the transactions contemplated thereby.

3. Each of the Loan Documents to which Seller is a party, as executed, constitutes the legal, valid and binding obligation of Seller, enforceable against Seller in accordance with its respective terms.

4. The execution, delivery and performance by Seller of the Loan Documents and Seller's performance of its obligations thereunder will not (a) create any Lien in favor of any person other than LFC or (b) violate any provision of any existing law or regulation or any order, writ, judgment, injunction or decree of any court, regulatory body or administrative agency or Seller's organizational documents or (c) violate, conflict with, result in the breach of or constitute a default under any mortgage, indenture, contract or other agreement to which Seller is a party or by which Seller or any of its property or assets may be bound. Seller and its business and operations are in full compliance with all applicable federal, sate and local laws and regulations.

5. Upon endorsement of a Note by Seller to the order of LFC by a manager of Seller and delivery of the same to LFC, all right, title and interest in and to the Note shall have been duly and validly assigned to LFC, free and clear of all liens or encumbrances of any kind. Upon delivery of a Mortgage to LFC and recordation of the related Assignment in the appropriate recording office, the Mortgage shall have been duly and validly assigned to LFC, as the purchaser and owner of the receivables pursuant to the Agreement, does not and will not incur or assume any liabilities, duties or obligations to the obligors of the Receivables.

6. The Guarantee has been duly and validly executed and delivered by or on behalf of the Guarantors, and Guarantee constitutes a legal, valid and binding obligation of the Guarantors, enforceable against the Guarantors in accordance with its terms.

7. There is no action, suit, other litigation or administrative or other proceeding of or before any court, tribunal or governmental body or any arbitration or alternate dispute resolution proceeding pending, or to the knowledge of Seller (or any of Seller's officers), threatened against Borrower or any properties or assets of Seller or with respect to the Loan Documents, which, if adversely determined, could have a material effect on the business, assets or financial condition of Borrower or which would draw into question the validity of any of the Loan Documents.

This opinion is for the benefit of and may be relied upon by Land Finance Company and its successors and assigns.

Sincerely,

W. Greg Seigler

LAW OFFICES
OF

# WILLIAM GREGORY SEIGLER

ATTORNEY AND COUNSELOR AT LAW

MAILING ADDRESS:
PO Box 1852
McCormick, SC 29835
TEL: (864) 465-9555

PHYSICAL ADDRESS:
119 North Pine Street
McCormick, SC 29835
FAX: (864) 465-9554

May 22, 2001

Land Finance Company
430 Main Street
Williamstown, MA 01267

RE: Loan to Buyers Source, Savannah, L.L.C.

Dear Sir/Madam:

This office is acting as counsel for Buyers Source, Savannah, L.L.C, a Limited Liability Company organized under the laws of the State of Virginia and authorized to transact business in the state of South Carolina as a foreign entity ("Borrower") and Frederick D. Blake of Newport News, VA and Thomas H. Brewer and Betty Brewer of Suffolk, VA, all individuals ("Guarantors").

We have been requested to render an opinion in connection with the financial transaction that Land Finance Company ("LFC") proposes to enter into with our clients. For purposes of rendering this opinion, we have reviewed the following documents ("Loan Documents"):

(i) the Secured Revolving Credit Agreement date April 17, 2001 with all exhibits and Schedules thereto by and between the borrower and LFC (the "Credit Agreement");

(ii) the Revolving Note in the amount of Five Hundred Thousand and 00/100 Dollars ($500,000.00) from borrower in favor of LFC (the "Note")

(iii) the Guarantees of the Guarantors;

(iv) Such other records, certificates, instruments, documents, agreement and assurances as we have considered necessary in connection with the opinions hereinafter set forth.

Capitalized terms used herein have the meanings given such terms in the Loan Agreement. The term "State", as used herein, shall mean the State of South Carolina in which the Borrower is authorized to transact business in the State of South Carolina as a foreign entity.

In addition, we have reviewed Borrower's resolutions and authorization in connection with this transaction, as well as the official organizational documents, records and minutes of Borrower made available to us by management.

In rendering the opinions expressed below, we have assumed the genuineness of all signatures, other than those of Borrower and Guarantors, the authenticity of all documents submitted to us as originals, and the authenticity of the copies of such originals.

We are licensed to practice in the State of South Carolina as a foreign entity. We have made such examination of local, State and federal law as we have deemed relevant for the purposes of this opinion, but have not made an independent review of the laws of any other jurisdiction. Accordingly, we express no opinion as to the laws of any sate or jurisdiction other (a) the State defined above, and (b) the United States of America.

Statements herein as to the enforceability of the Loan Documents are subject to the limitations imposed by bankruptcy laws and general equitable principles and for the purposes of such statements, we have assumed that the laws governing the enforcement of the Loan Documents do not substantively differ from the laws of South Carolina.

On the basis of the foregoing, in reliance thereon, and having regard to legal considerations which we deem relevant, we are of the opinion that:

1. Borrower is duly organized, validly existing and in good standing under the laws of the state of South Carolina and has the power, authority and all licenses necessary to own and operate its assets and to transact the business as currently conducted (which includes the sale of the properties at the Project and the origination of the Receivables) and/or contemplated, and is duly qualified and in good standing under the laws of each jurisdiction where the conduct of its business or the ownership of its properties and assets requires such qualification and where the failure to be so qualified would have a material adverse effect on the business, assets or financial condition of Borrower.

2. Borrower has the power, authority and legal right to make, deliver, and perform the Credit Agreement, Note, (Mortgage or Deed) and other Loan Documents and all of the transactions contemplated thereby, and has taken all necessary action to

authorize the execution, delivery and performance of the Loan Document. The managers of the Seller, who are Frederick D. Blake and Thomas H. Brewer, are duly authorized to execute and deliver the LFC each of the Loan Documents to which the Borrower is a party. No consent of any other party and no consent, license, approval or authorization of, or registration or declaration with, any governmental authority, bureau or agency is required for the execution, delivery and performance by Seller of, or compliance by Seller with, the Loan Documents or the consummation of the transactions contemplated thereby.

3. Each of the Loan Documents to which Borrower is a party, as executed, constitutes the legal, valid and binding obligation of Borrower, enforceable against Borrower in accordance with its respective terms.

4. The Guarantee has been duly and validly executed and delivered by or on behalf of the Guarantors, and Guarantee constitutes a legal, valid and binding obligation of the Guarantors, enforceable against the Guarantors in accordance with its terms.

5. There is no action, suit, other litigation or administrative or other proceeding of or before any court, tribunal or governmental body or any arbitration or alternate dispute resolution proceeding pending, or to the knowledge of Borrower (or any of Borrower's officers), threatened against Borrower or any properties or assets of Borrower or with respect to the Loan Documents, which, if adversely determined, could have a material effect on the business, assets or financial condition of Borrower or which would draw into question the validity of any of the Loan Documents.

This opinion is for the benefit of and may be relied upon by Land Finance Company and its successors and assigns.

Sincerely,

W. Greg Seigler