IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

| | |
|---|---|
| Litchfield Financial Corporation, *et al.*, ) <br> ) <br> ***Plaintiffs*** ) <br> v. ) <br> ) <br> Buyers Source Real Estate Group, *et al.*, ) <br> ) <br> ***Defendants*** ) <br> ) | No. 04-CV-30076-KPN |

**PLAINTIFFS' OPPOSITION TO DEFENDANT
WILLIAM GREGORY SEIGLER'S MOTION TO DISMISS**

This Court has personal jurisdiction over Defendant William Gregory Seigler, the action should not be stayed or dismissed as to Mr. Seigler, and this Court is a proper venue for Plaintiffs' claims against Mr. Seigler.[1]

**REQUEST FOR ORAL ARGUMENT**

Plaintiffs request that this Court grant oral argument on Defendant's Motion.[2]

**I.   FACTS**

   **A.   Underlying Financial Transactions And The Opinion Letters**

The Plaintiffs in this action are Litchfield Financial Corporation ("LFC"), a Massachusetts corporation; Textron Financial Corporation ("TFC"), a Delaware corporation and parent of LFC; and Land Finance Company ("Land FC"), a Delaware corporation, subsidiary of LFC, and affiliate of TFC. During the relevant time period, the principal place of business of

---

[1] In conjunction with this Opposition, Plaintiffs are filing a Motion for Leave to File a Memorandum of Law in Excess of Twenty Pages in Opposition to Defendant Seigler's Motion to Dismiss.

[2] Plaintiffs agree with Defendant's Request for expedited oral argument.

both LFC and Land FC was Massachusetts. Declaration of Paul F. Green ¶ 5 (hereinafter "Green Dec.").

Plaintiffs entered into a series of complex financial transactions, by which they provided financing to the Buyers Source Defendants[3] and to their customers relating to the sales of lots in Florida, South Carolina, and Ohio. Complaint ¶¶ 33-34. An integral step necessary to complete these transactions was the provision of legal opinions by Mr. Seigler to Plaintiffs in Massachusetts. Complaint ¶ 37; Green Dec. ¶ 8.

It is undisputed that Mr. Seigler prepared three separate legal opinion letters in May 2001 relating to loan transactions between Land FC and Defendants Buyers Source Savannah, LLC, Thomas Brewer, Betty Brewer, and Frederick Blake. Complaint ¶¶ 36, 40-41; Green Dec. ¶ 6; Defendant Memorandum of Law (hereinafter "Def. Mem.") at 2 and Exhibit A.[4] Mr. Seigler addressed all three letters to Land FC at 430 Main Street, Williamstown, MA 02167. In the letters, Mr. Seigler stated that Buyers Source land sales activities at Savannah Lakes were in compliance with **all** applicable federal and state laws. Complaint ¶¶ 36, 40-41; Green Dec., Attachments; Def. Mem., Exhibit A. Mr. Seigler intended and expressly authorized Land FC to rely upon his statements. Green Dec., Attachments; Def. Mem., Exhibit A. Plaintiffs did, in fact, rely upon Mr. Seigler's false statements and, but for his statements, they would not have entered into the transaction with Buyers Source Savannah, LLC. Green Dec. ¶ 8. Thereafter,

---

[3] As discussed more fully in Plaintiffs' Complaint, the Buyers Source Defendants are the following defendants to this action: Buyers Source Real Estate Group, Buyers Source Valley Group, LLC, Buyers Source Sugarmill, LLC, Buyers Source, Savannah Lakes, LLC, Thomas H. Brewer, Betty M. Brewer, Susan Gard, Henry Montgomery, Lannie Campbell, and Ronald Ferguson.

[4] Mr. Seigler claims to have provided a fourth letter which in some manner limited the representations of the other three. Plaintiffs have no record of ever receiving this letter, Green Declaration ¶ 7; regardless, the contents of the fourth letter are immaterial for purposes of the Court's analysis of the issues raised in Defendant's Seigler's Motion.

2

Plaintiffs funded the transactions with the Buyers Source Defendants. This reliance and the funding took place in Massachusetts. Green Dec. ¶ 8.

Unfortunately, Mr. Seigler's statements that the Buyers Source Defendants were in compliance with all federal and state laws were false. Complaint ¶¶ 36, 40-41, 61-66, 78-80. In August 2003, the U.S. Department of Housing and Urban Development ("HUD") filed suit against the Buyers Source Defendants, charging them with having violated the federal Interstate Land Sales Full Disclosure Act ("ILSA"), 15 U.S.C. §§ 1701 et seq., and regulations thereunder, 24 C.F.R. §§ 1710.1 et seq. Complaint ¶ 34. By way of example, HUD stated that the Buyers Source entities were required to register with HUD before commencing sales activities, 24 C.F.R. § 1710.3, but that the Buyers Source entities did not file such registration statements. This failure to file could have been readily uncovered by a lawyer delivering opinions concerning compliance with federal law by simply asking the Buyers Source Defendants for a copy of the registration statements that they were required to keep, or by contacting HUD to find out if the statements had been filed. Yet Mr. Seigler's letters make no reference to the failure of Buyers Source, Savannah, to comply with this and other HUD regulations.

Plaintiffs were severely injured by Mr. Seigler's false statements. Because of the regulatory deficiencies and fraudulent activities that Mr. Seigler failed to uncover, Plaintiffs' assets have been severely impaired. Green Dec. ¶ 9. Indeed, Plaintiffs were the principal victims of the Buyers Source Defendants fraudulent activities, and their losses amount to millions of dollars. Complaint ¶ 35.

**B.     Plaintiffs' Communications With Mr. Seigler And The Resulting Litigation**

Counsel for Plaintiffs first contacted Mr. Seigler in April 2003 shortly after HUD initiated its investigation into the wrongdoings of the Buyers Source Defendants. Preliminary discussions occurred between Plaintiffs' counsel and the insurer for Mr. Seigler concerning

3

Plaintiffs' claim against Mr. Seigler and the insurer's liability to Mr. Seigler. On February 18, 2004, during the course of these discussions, Mr. Seigler filed a declaratory judgment action in the South Carolina McCormick County Court of Common Pleas against LFC, TFC, Land FC, and certain other defendants. Mr. Seigler took no further action for almost four months. He neither had the lawsuit served on LFC, TFC, or Land FC, nor did he inform them or their counsel that the action had been filed.

Unaware of Mr. Seigler's actions, Plaintiffs filed the instant action in this Court on April 16, 2004. The Complaint includes two counts against Mr. Seigler: Count III for the tort of negligent misrepresentation and Count VI for legal malpractice. Complaint ¶¶ 61-66, 78-80.

On April 22, 2004, within five days of filing the Complaint, Plaintiffs' counsel sent a letter to Mr. Seigler's insurer (copy to Mr. Seigler) enclosing the Complaint and inviting his insurer to continue in discussions relating to the litigation. Plaintiffs' counsel indicated that Plaintiffs would withhold service of the Complaint during the discussions. Mr. Seigler's insurer accepted this offer and there were several conversations between the insurer and Plaintiffs' counsel over the next several weeks. Mr. Outten, Mr. Seigler's South Carolina counsel now admitted <u>pro hac vice</u> in this Court, also participated in one of those conversations. At no point during those discussions did Mr. Seigler's insurer or Mr. Outten ever reveal that Mr. Seigler had filed a declaratory judgment action in South Carolina, nor did Mr. Seigler make any effort to serve and begin prosecuting the lawsuit.

In a conversation on June 7, 2004, Plaintiffs' counsel indicated that discussions regarding resolution of the issues raised in this lawsuit could not continue indefinitely. Immediately thereafter, on June 9, 2004, 112 days after first filed, Mr. Seigler had the South Carolina declaratory judgment action served on Plaintiffs. Mr. Seigler and his insurer elected not to

4

inform Plaintiffs' counsel until after the lawsuit was served. There has been no activity on the South Carolina lawsuit since that time, aside from the filing by LFC, TFC, and Land FC of a Motion to Dismiss the lawsuit.

Plaintiffs served the instant lawsuit on Mr. Seigler shortly after receiving a copy of the South Carolina declaratory judgment action.

## ARGUMENT

### II. THIS COURT HAS PERSONAL JURISDICTION OVER MR. SEIGLER

#### A. Standards For Motion To Dismiss Pursuant To Federal Rule of Civil Procedure 12(b)(2)

In conducting the analysis for a Motion to Dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), a Court "take[s] specific facts affirmatively alleged by the plaintiff as true (whether or not disputed) and construe[s] them in the light most congenial to the plaintiff's jurisdictional claim." Massachusetts Sch. of Law v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998). "[A]ll that is required at this early stage is that plaintiff plead facts sufficient to support jurisdiction." Murphy v. Erwin-Wasey, Inc., 460 F.2d 661, 665 (1st Cir. 1972). The Plaintiff has the burden of demonstrating that jurisdiction exists, id.; however, the Court gives the Plaintiff the "benefit of the doubt" in considering the Motion. Workgroup Tech. Corp. v. MGM Grand Hotel, L.L.C., 246 F. Supp. 2d 102, 108 (D. Mass. 2003).

#### B. Massachusetts Standards For Determining Whether A Court Has Personal Jurisdiction Over Defendant

The determination of whether a court in the Commonwealth has jurisdiction over a nonresident defendant involves a two-part inquiry. First, the Court must determine whether there are sufficient contacts between the defendant and the forum state to satisfy Massachusetts' statutory requirements. See Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995); Comer v. Comer, 295 F. Supp. 2d 201, 206 (2003) (Neiman, M. J.). Second, the Court must decide

5

whether the assertion of jurisdiction is consistent with the requirements of the Due Process Clause of the Fourteenth Amendment. Sawtelle, 70 F.3d at 1387; Comer 295 F. Supp. 2d at 206.

### 1. Massachusetts Long-Arm Statute

In relevant part, the Massachusetts Long-Arm Statute provides that:

> A court may exercise personal jurisdiction over a person ... arising from the person's
>
> (a)   transacting any business in this commonwealth;
>
> ...
>
> (c)   causing tortious injury by an act or omission in this commonwealth;

Mass. Gen. L. ch. 223A, §§ 3(a), (c) (2004).

#### a. Mr. Seigler's False Statements In Massachusetts Satisfy Section 3(c)

More than 30 years ago, the First Circuit held that "[w]here a defendant knowingly sends into a state a false statement, intending that it should there be relied upon to the injury of a resident of that state, he has, for jurisdictional purposes, acted within that state." Murphy, 460 F.2d at 664. Murphy thus made it clear that for purposes of a Section 3(c) tort claim of misrepresentation, the tortious act occurs in the place where the plaintiff receives and relies upon the communication. Id.

Since Murphy was decided, this principle has been repeatedly reaffirmed by the First Circuit, in this Court, and in the courts of the Commonwealth. See, e.g., Ealing Corp. v. Harrods, Ltd., 790 F.2d 978, 982 (1st Cir. 1986) (sending of a single telex, which allegedly demonstrated tortious conduct, from outside Massachusetts by foreign defendant to plaintiff in Massachusetts established jurisdiction under Section 3(c)); JMTR Enters., L.L.C. v. Duchin, 42 F. Supp. 2d 87, 97 (D. Mass. 1999) ("A fraudulent misrepresentation made in the state by a foreign defendant or her agent via mail, telephone, or other means of communication constitutes

an act that confers jurisdiction under section 3(c)."); Salvador v. Meese, 641 F. Supp. 1409, 1414 (D. Mass. 1986) (alleged tortious oral communication delivered by defendant at meeting in Boston sufficient for jurisdiction under Section 3(c)); Burtner v. Burnham, 13 Mass. App. Ct. 158, 163-64, 430 N.E.2d 1233, 1236-37 (1982) (defendant's alleged misrepresentations by mail and telephone from New Hampshire to plaintiff in Massachusetts regarding acreage of property established jurisdiction under Section 3(c)). Accordingly, a plaintiff can meet the requirements of Section 3(c) of the Massachusetts Long-Arm Statute by pleading sufficient facts to demonstrate that a false statement was sent by the defendant into Massachusetts and received and relied upon within the Commonwealth.

Plaintiffs' Complaint and the Green Declaration include specific factual allegations against Mr. Seigler identical to those found to support Section 3(c) jurisdiction in Murphy and similar to facts in later cases applying Murphy. Count III of the Complaint alleges that Mr. Seigler committed the tort of negligent misrepresentation when he delivered legal opinion letters to Land FC in Massachusetts falsely stating the Buyers Source Defendants were in compliance with all applicable state and federal regulations. Complaint ¶¶ 61-66. As Mr. Seigler's three separate legal opinion letters expressly acknowledge, he understood that his statements would be relied upon by Plaintiff Land FC in Massachusetts. Green Dec., Attachments; Def. Mem., Exhibit A ("This opinion is for the benefit of and may be relied upon by Land Finance Company and its successors and assigns.") Defendant addressed all three legal opinion letters to Plaintiff Land FC in Massachusetts. Green Dec. ¶ 6; Def. Mem., Exhibit A. Each letter was received by Plaintiffs in Massachusetts, relied upon by Plaintiffs in Massachusetts, and resulted in injury in Massachusetts. Green Declaration ¶¶ 6-9, Attachments; Complaint ¶¶ 36, 40-41, 61-66.

Accordingly, Plaintiffs' Complaint and the Green Declaration contain precisely the type of allegations and evidence that satisfy the jurisdictional requirements of Section 3(c).

Defendant's cursory treatment of Section 3(c) in his Memorandum ignores much of the controlling case law. Def. Mem. at 6-7. In an apparent attempt to place distance between the legal opinion letters he drafted and Massachusetts, Defendant claims in his Memorandum that, "[he] has never sent correspondence to the Commonwealth of Massachusetts ...." Def. Mem. at 6-7. But the support on which Defendant relies for this assertion, his own Affidavit, states nothing of the kind. There is no language in the Affidavit claiming that Defendant did not send the three legal opinion letters to Plaintiffs in Massachusetts. Indeed, Defendant clearly intended that the letters be received by Plaintiffs in Massachusetts because he addressed each letter to Land FC at a Massachusetts address.

Accordingly, Plaintiffs have established sufficient facts to permit this Court to assert jurisdiction over Mr. Seigler pursuant to Section 3(c) of the Massachusetts Long-Arm Statute.

### b.     Mr. Seigler's False Statements Also Satisfy Section 3(a)

Plaintiffs can also establish jurisdiction pursuant to Section 3(a) of the Massachusetts Long-Arm Statute. Section 3(a) of the Long-Arm Statute permits the exercise of specific jurisdiction over a nonresident defendant if the claim "arises from" the defendant's "transacting any business" in Massachusetts.

Courts construe the reach of Section 3(a) broadly. Bond Leather Co. v. Q.T. Shoe Mfg. Co, 764 F.2d 928, 931 (1st Cir. 1985); JMTR Enters., 42 F. Supp. 2d at 94. The defendant need not be present in Massachusetts in order to be deemed to have transacted business under the statute. Workgroup Tech. Corp., 246 F. Supp. 2d at 109-10. The transacting business requirement does not relate solely to commercial activity; rather the "language is general and applies to any purposeful acts by an individual, whether personal, private or commercial." Ross

8

v. Ross, 371 Mass. 439, 441, 358 N.E.2d 437, 439 (1976); see also Ealing Corp., 790 F.2d at 982.

The First Circuit has repeatedly concluded that the "transacting business" provision under Section 3(a) is met by a limited number of forum contacts indeed, in one case, a single contact. See, e.g., Bond, 764 F.2d at 932 (First Circuit holding that out-of-state defendant's mailing four letters and receiving at least one telephone call from plaintiff in Massachusetts in the course of negotiating a guaranty satisfied the transacting business requirement); Ealing Corp., 790 F.2d at 983 ("Here, the cause of action arose from the sending of a telex to plaintiff in Massachusetts. We hold that the 'transacting any business' requirement of § 3(a) has been met."); Hahn v. Vermont Law Sch., 698 F.2d 48, 50 (1st Cir. 1983) (holding that the actions of out-of-state defendant in mailing to plaintiff in Massachusetts application information and an acceptance letter sufficed to constitute transacting business).

Similarly, courts have interpreted the "arising from" language of Section 3(a) broadly, Tatro v. Manor Care, Inc., 416 Mass. 763, 771, 625 N.E.2d 549, 553-54, and in favor of asserting personal jurisdiction. JMTR Enters., 42 F. Supp. 2d at 96. The courts employ a "but for" causation test where the question becomes whether the defendant's contacts with Massachusetts constituted "the first step in a train of events" that caused the injury. Lyle Richards Int'l v. Ashworth, Inc., 132 F.3d 111, 113 (1st Cir. 1997) (quoting Tatro, 416 Mass. at 770, 625 N.E.2d at 553).

Mr. Seigler's actions fit squarely within this case law. Mr. Seigler's sending of three separate letters to Land FC in its Massachusetts office constituted "purposeful acts" directed at Massachusetts. Ross, 371 Mass. at 441, 358 N.E.2d at 439; Ealing Corp. 790 F.2d at 982-83. His acts, therefore, meet the "transacting business" test.

9

Plaintiffs' claim also clearly and directly "arises out of" Mr. Seigler's specific contacts with Massachusetts. Mr. Seigler's letters were a necessary part of the financial transactions that were taking place between Plaintiffs and the Buyers Source Defendants. See supra p. 8 (quoting Defendant's letters); Green Dec. ¶ 8; Def. Mem., Exhibit A. Mr. Siegler provided these letters to Plaintiffs, and Plaintiffs there relied upon the false statements in the letters, funded the transactions, and suffered losses. Accordingly, Plaintiffs' injuries and its claims against Mr. Seigler are the direct consequence of the false statements in his contacts with Massachusetts, and the claims would not have arisen "but for" Mr. Seigler providing the letters to Plaintiffs in Massachusetts. Complaint ¶ 36; see Bond, 764 F.2d at 932.

Defendant's assertions in his Memorandum and Affidavit that the legal services he provided were performed in South Carolina and related to property in South Carolina are irrelevant for purposes of the jurisdictional analysis. See Tatro, 416 Mass. at 767, 625 N.E.2d at 551 (in personal injury case, the Supreme Judicial Court of Massachusetts concluded that the hotel transacted business in Massachusetts based on activities and solicitations directed to the forum, although the cause of action arose from the plaintiff's injury in defendant's hotel in California). Instead, the focus is the conduct that the Defendant directed toward Massachusetts -- in this case the sending of the three legal opinion letters to Massachusetts to support a transaction occurring in Massachusetts. Defendant's assertion that he "never entered into a contract to be performed in the Commonwealth of Massachusetts" is equally irrelevant for the same reason. Def. Mem. at 6; Affidavit of Mr. Seigler ¶ 7. It is not necessary to enter into a contract to be performed in Massachusetts for purposes of the Section 3(a) analysis.

Accordingly, Plaintiffs have established an additional basis for asserting jurisdiction pursuant to Section 3(a).

Lawyers are not exempt from the holdings discussed above. Defendant's citation to Comer where this Court concluded that attorneys serving a complaint in Massachusetts did not fall within the purview of Section 3(a) or 3(d) is inapposite. Comer, 295 F. Supp. 2d at 208. Here of course, Mr. Seigler's contacts included the delivery of three substantive legal opinion letters into the Commonwealth, and, unlike Comer, Plaintiffs' claims arise directly out of those contacts.[5]

### 2. Due Process Clause Of The Fourteenth Amendment

Once the Court has established that it has jurisdiction pursuant to the Massachusetts Long-Arm Statute, it must still determine that jurisdiction is permissible within the restraints imposed by the Due Process Clause of the Fourteenth Amendment. Sawtelle, 70 F.3d at 1387; Comer, 295 F. Supp. at 206. In conducting this due process analysis, the First Circuit employs a three-part test, looking to "relatedness, purposeful availment (sometimes called 'minimum contacts') and reasonableness." See Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 144 (1st Cir. 1995); Comer, 295 F. Supp. at 206.

#### a. Relatedness

The relatedness test requires that the plaintiff's claim must directly arise out of, or relate to, the defendant's activities in Massachusetts. JMTR Enters., 42 F. Supp. 2d at 98. It is a "flexible, relaxed standard." Sawtelle, 70 F.3d at 1389. As discussed above, Plaintiffs' claims against Mr. Seigler for the torts of negligent misrepresentation and malpractice arise directly from the false statements he sent to Plaintiffs in Massachusetts, and thus are directly related to

---

[5] Defendant cites to Fern v. Immergut, 55 Mass. App. Ct. 577, 773 N.E.2d 972 (2002), in his Section 3(d) analysis. However, the Fern court addressed only whether jurisdiction arose pursuant to Section 3(a). The court concluded that the legal opinion letters, received in New York, had only a peripheral relationship to the jurisdictional contacts. Id. at 582; 773 N.E.2d at 977. Again, Mr. Seigler's jurisdictional contacts with Massachusetts form the basis of Plaintiffs' causes of action against him.

11

Mr. Seigler's contacts with Massachusetts. See supra pp. 3-4; Complaint ¶¶ 61-66. The fact that the transactions between Plaintiffs and the Buyers Source Defendants related to property developments in states outside Massachusetts is irrelevant. It is the three false statements that Mr. Seigler prepared and directed to Massachusetts that "relate" to the Counts against him in Plaintiffs' Complaint.[6]

### b.     Purposeful Availment

The second part of the due process test requires that the Defendant's contacts with the Commonwealth demonstrate a "purposeful availment of the privilege of conducting activities" in Massachusetts. Sawtelle, 70 F.3d at 1389 (internal citations omitted). The First Circuit has concluded that the sending into Massachusetts of a false statement to be relied upon by a citizen constitutes a purposeful availment sufficient to bring the defendant within the constitutional standard. Murphy, 460 F.2d at 664 (citing Hanson v. Denckla, 357 U.S. 235, 253 (1958)).[7] "Moreover, there is no constitutional problem in basing jurisdiction upon a single, isolated tort committed by a foreign defendant in Massachusetts against a Massachusetts resident." JMTR Enters., 42 F. Supp. 2d at 98 (citing Ealing, 790 F.2d at 983); see also Good Hope Indus., Inc. v. Ryder Scott Co., 378 Mass. 1, 11, 389 N.E.2d 76, 82 (1979) (the focus is on the purpose of the contact and "[w]hat is significant, on the other hand, is that the defendant's contacts with the forum were deliberate and not fortuitous").

---

[6] Defendant's reliance on Sawtelle is inapposite because there the First Circuit concluded that the defendant's contacts with the forum state, New Hampshire, were not relevant to the plaintiff's claim of legal malpractice. See 70 F.3d at 1389. Here of course, the Defendant's contacts with the forum state, the sending of the three letters, directly relates to Plaintiffs' claim.

[7] "The element of intent also persuades us that there can be no constitutional objection to Massachusetts asserting jurisdiction over the out-of-state sender of a fraudulent misrepresentation, for such a sender has thereby 'purposefully [availed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" Murphy, 460 F.2d at 664 (citing Hanson, 375 U.S. at 253 (brackets original)).

12

In this case, of course, Plaintiffs have alleged that Defendant deliberately addressed and delivered three legal opinion letters to Plaintiffs in Massachusetts, thereby purposefully availing himself of the privilege of conducting business in Massachusetts.

### c.     Reasonableness

The final factor of the due process test is the reasonableness component, which is based on the holdings in International Shoe Co. v. Washington, 326 U.S. 310 (1945), and its progeny that the assertion of jurisdiction must "not offend traditional notions of fair play and substantial justice." Comer, 295 F. Supp. 2d at 207 (citing Int'l Shoe, 326 U.S. at 316 (internal quotation marks omitted)). However, this reasonableness factor is less important where, as here, the relatedness and purposefulness tests are clearly satisfied. See Ticketmaster-New York Inc. v. Alioto, 26 F.3d 201, 210 (1994).

In conducting the reasonableness analysis, courts in this Circuit look to the "gestalt factors": "(1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies." Sawtelle, 70 F.3d at 1394 (citing Burger King v. Rudzewicz, 471 U.S. 462, 477 (1985)). Defendant fails to offer any analysis as to why Plaintiffs' claim does not meet the reasonableness test.

The proper reasonableness test with regard to Mr. Seigler condenses to this basic proposition: is it reasonable for an attorney to appear before a court in a forum when he (1) delivered false statements in three separate legal opinion letters to Plaintiffs in that forum, (2) acknowledged in those letters that the opinions relate to transactions involving Plaintiffs in that forum, (3) acknowledged in the letters that Plaintiffs would rely upon them, and (4) Plaintiffs

have been damaged by the false statements in the forum? Stated in such simple terms, it must surely be reasonable for Defendant to appear before this Court.

This conclusion is only confirmed when the "gestalt" factors are individually analyzed. The first factor, the potential burden to the out-of-state defendant, "becomes meaningful only where a party can demonstrate a 'special or unusual burden.'" Sawtelle, 70 F.3d at 1395 (quoting Pritzker v. Yari, 42 F.3d 53, 64 (1st Cir. 1994)). Mr. Seigler has failed to meet this test, relying only on the geographic distance between Massachusetts and South Carolina and citing no special or unusual burden.

Plaintiffs easily meet the second factor. The U.S. Supreme Court has held that "[a] State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." Burger King, 471 U.S. at 473. Plaintiffs have suffered injury as a result of the submission of false statements to Plaintiffs within the Commonwealth by Mr. Seigler, an out-of-state defendant. Green Dec., ¶ 8. Massachusetts court thus has a clear interest in providing a forum for its citizens to litigate this wrong.

As to the third factor, Plaintiffs' interest, they have an indisputable interest in avoiding piecemeal litigation and prosecuting the comprehensive action they have filed here. This complaint names all the actors relevant to this dispute who interacted with Plaintiffs relating to the transactions between Plaintiffs and the Buyers Source Defendants. It is this comprehensive action that best satisfies Plaintiffs' interest in obtaining convenient and effective relief. See Foster-Miller, 46 F.3d at 151 (1995) ("courts considering jurisdictional issues generally should 'accord plaintiff's choice of forum a degree of deference in respect to the issue of its own convenience . . .'") (quoting Ticketmaster, 26 F.3d at 211 (ellipsis in original)).

In addition, the comprehensiveness of this action meets the fourth "gestalt" factor by advancing the judicial system's interest in obtaining the most effective resolution of the controversy. Finally, as discussed above, courts have repeatedly held that is reasonable to assert jurisdiction over a defendant who sent communications to Massachusetts. See Murphy, 460 F.2d at 664; Ealing Corp., 790 F.2d at 983; JMTR Enters., 52 F. Supp. 2d at 98.

For all the foregoing reasons, Plaintiffs have established that this Court has personal jurisdiction over Mr. Seigler and that there is no constitutional impairment preventing him from appearing before this Court.

## III. DEFENDANT FAILS TO DEMONSTRATE ANY EXTRAORDINARY CIRCUMSTANCES TO JUSTIFY ABSTENTION

Mr. Seigler next argues that this Court should abstain from hearing this lawsuit because of the declaratory judgment action he filed in South Carolina.

"Abstention from the exercise of federal jurisdiction is the exception, not the rule." Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 813 (1976). There must be "some **extraordinary circumstances** for a federal court to shrink from the 'virtually unflagging obligation of the federal courts to exercise the jurisdiction given them.'" Currie v. Group Ins. Comm'n, 290 F.3d 1, 10 (1st Cir. 2002) (emphasis added) (quoting Colorado River, 424 U.S. at 817). This places a heavy burden on the party requesting abstention to prove "extraordinary" circumstances. See, e.g., Villa Marina Yacht Sales, Inc. v. Hatteras Yachts, 915 F.2d 7, 13 (1st Cir. 1990) (vacating a District Court's decision to dismiss a lawsuit on abstention grounds because the First Circuit concluded that the District Court had failed in its responsibility to conclude that the circumstances were truly extraordinary).

In a series of decisions following from Colorado River, courts have developed a number of factors that a court may consider in deciding whether to refrain from hearing an action before

15

it. These include: (1) whether either court has assumed jurisdiction over a res; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether state or federal law controls; (6) the adequacy of the state forum to protect the parties' interests; (7) the vexatious or contrived nature of the federal claim; and (8) respect for the principles underlying removal jurisdiction. See KPS & Assocs. v. Designs by FMC, Inc., 318 F.3d 1, 10-11 (1st Cir. 2003).[8] "This list is by no means exhaustive, nor is any one factor necessarily determinative." Id. at 10. Rather the Court must make a careful judgment "'taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise.'" Id. (quoting Colorado River, 424 U.S. at 818-19).

None of the factors addressed in Mr. Seigler's Motion presents the type of extraordinary circumstance that would justify this Court's declining to exercise jurisdiction in this case.

### A. This Forum Is Not Inconvenient

Defendant's first argument is that the District of Massachusetts is an inconvenient forum for him. Mr. Seigler alleges that that all the "facts which give rise to the instant litigation occurred in South Carolina" and that "[a]ll transactions and dealings between the parties occurred in South Carolina." Def. Mem. at 12. These statements are simply inaccurate. As Plaintiffs have alleged and as Mr. Seigler's opinion letters demonstrate, the focus of the transactions was Massachusetts, not South Carolina. Mr. Seigler delivered the legal opinion letters to Plaintiffs within this District and understood that his opinions related to transactions to be finalized in Massachusetts. Consistent with Mr. Seigler's letters, see supra p.7 (quoting letters), Plaintiffs relied upon the legal opinion letters and suffered injury as a result within

---

[8] These factors are drawn primarily from Colorado River, 424 U.S. at 813 and Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25-26 (1983).

Massachusetts. Green Dec. ¶¶ 7-9. In addition, the distance between South Carolina and Massachusetts is not so great as to present the type of extraordinary circumstances which would allow this Court to decline jurisdiction.

### B. The Presence Of Dual Proceedings In This Action Does Not Create An Extraordinary Circumstance

Mr. Seigler next argues that dismissal of this action as to him would avoid piecemeal litigation against him because of the South Carolina declaratory judgment action. The argument has no merit.

First, it was Mr. Seigler who created the possibility of piecemeal litigation by filing a declaratory judgment action in response to Plaintiffs' claims against him. As discussed below, such vexatious and reactive litigation is entitled to no deference.

Second, of the two cases, the case before this Court is comprehensive, because it includes all the actors relevant to this dispute. This is not true for the South Carolina action, even as to the claims between Plaintiffs and Mr. Seigler. For example, Mr. Seigler places emphasis in his Memorandum on the limitations in his May 19, 2001 letter (which Plaintiffs never received, see Green Dec. ¶ 10). The May 19th letter makes reference to Mr. Seigler's reliance on Mr. Lumpkin and raises the possibility that Mr. Lumpkin may bear some liability relating to Mr. Seigler's actions. Mr. Lumpkin is a Defendant before this Court, but Mr. Seigler did not name him in his South Carolina declaratory judgment action.

Finally, regardless of the outcome of the South Carolina declaratory judgment action, its existence simply does not provide a basis for judicial abstention in this case. As the First Circuit has held, "[d]ismissal is not warranted simply because related issues otherwise would be decided by different courts, or even because two courts otherwise would be deciding the same issues." Villa Marina, 915 F.2d at 16. Rather, a court should consider that dismissal be limited to those

17

exceptional circumstances required under the Colorado River test. KPS & Assocs., 318 F.3d at 10-11 (citing Gonzalez v. Cruz, 926 F.2d 1, 4 (1st Cir. 1991), and Burns v. Watler, 931 F.2d 140, 146 (1st Cir. 1991)). The mere fact that both actions raise similar issues with regard to Plaintiffs and Mr. Seigler does not create such an extraordinary circumstance.

### C. The First Filed Rule Is Not Relevant When The State Court Plaintiff Took No Steps In Prosecuting the Action And The State Court Action Is "Vexatious and Contrived"

Courts in this Circuit do not defer to a previously filed state action where the state plaintiff makes little effort to prosecute the action. See Elmendorf Grafica, Inc. v. D.S. Am. (East), Inc., 48 F.3d 46, 51 (1st Cir. 1995) ("This [is] not a case where the parallel state action was strongly underway, making it perhaps reasonable, depending on the facts, to await the outcome in the state case before proceeding in the federal court."). As discussed above, Defendant filed his declaratory judgment action in South Carolina in February 2004, and then did nothing for almost four months until he learned that Plaintiffs were about to serve the instant lawsuit. By contrast, Plaintiffs have diligently proceeded with this lawsuit since filing it. This included informing Mr. Seigler and his insurer immediately following the filing of the lawsuit and engaging in discussions with Mr. Seigler's insurer regarding the lawsuit. Again, at no time during those almost two months of discussions did Mr. Seigler or his insurer ever intimate that Mr. Seigler had filed a lawsuit. Mr. Seigler should obtain no benefit from filing a declaratory judgment action with which he has dilatorily proceeded, that affirmatively creates the prospect of piecemeal litigation, and that is not sufficiently far advanced that might justify judicial abstention by this Court.[9]

---

[9] The situation is far different from that in Fuller Co. v. Ramon I. Gil, Inc., 782 F.2d 306, 310 (1st Cir. 1986), where the court placed great emphasis on the fact that the state court proceeding had been underway for almost four years before the federal declaratory judgment action was

(continued...)

In addition, Mr. Seigler's rushing to file a state declaratory judgment action in anticipation of a complaint seeking coercive relief against him presents the inverse of the KPS & Assocs. "vexatious and contrived" litigation factor. Here, it is Mr. Seigler who has initiated a "vexatious or contrived" state court suit. If the situation had been that a federal declaratory judgment action had been filed in anticipation of a state court action for coercive relief, then this Court would have discretion to dismiss the declaratory action. Wilton v. Seven Falls Co., 515 U.S. 277 (1995). This principle – deference to a coercive claim seeking monetary relief, in contrast to a vexatious and reactive declaratory action – provides further ground for this Court to refrain from abstaining in light of the South Carolina declaratory judgment action.

### D. This Court Has A Substantial Interest In Adjudicating The Issues Presented.

Finally, Mr. Seigler combines two of the KPS & Assocs. factors, arguing that South Carolina law is at issue and that the state court will adequately protect Plaintiffs' interests. However, it appears that Massachusetts law, not South Carolina law, is the substantive law that will govern this dispute. Indeed, in two of the cases discussed above dealing with misrepresentations made in Massachusetts, the courts concluded that Massachusetts law applied. Murphy, 460 F.2d at 664; Bond, 764 F.2d at 935-36.

Furthermore, Mr. Seigler is inaccurate when he states that the South Carolina action will protect Plaintiffs' interests and is an adequate forum for resolving the dispute between himself and Plaintiffs. As already noted, Mr. Seigler's references to the role of Mr. Lumpkin suggest that he may rightfully be a party to any litigation between Plaintiffs and Mr. Seigler. Mr. Lumpkin is a defendant in this action, but is not a party in the South Carolina declaratory

---

(...continued)
filed. See also Liberty Mut. Ins. Co. v. Foremost-McKesson, Inc., 751 F.2d 475, 477 (1st Cir. 1985) (declining to exercise jurisdiction in part because the California state court action was the more "comprehensive" case).

judgment action. And Plaintiffs are best protected by a single action that comprehensively adjudicates all their claims against all defendants in a consistent manner.

For all the foregoing reasons, Mr. Seigler has failed to demonstrate that this case involves an "extraordinary circumstance" sufficient to require federal court abstention.[10] Accordingly, this Court must deny Mr. Seigler's motion and adjudicate this action.

## IV. VENUE IN THE DISTRICT OF MASSACHUSETTS IS PROPER

Where a civil action is brought based on diversity of citizenship, the action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(a)(2) (2004). The First Circuit has noted that under 1391(a)(2) it is possible for venue to be proper in any number of districts. See Uffner v. La Reunion Francaise, S.A., 244 F.3d 38, 42 (1st Cir. 2001). A court "need not determine which district was the site of the most substantial events or omissions." F.A.I. Elects. Corp. v. Chambers, 944 F. Supp. 77, 80 (D. Mass. 1996). Rather, courts in the First Circuit look "to the entire sequence of events underlying the claim." Uffner, 244 F.3d at 42. Indeed, it has been noted within this District that the venue analysis under 1391(a)(2) is similar to the personal jurisdiction analysis in Massachusetts. Rooney v. Walt Disney World Co., No. 02-12422-GAO, 2003 U.S. Dist. LEXIS 22226, at **17-18 (D. Mass. Nov. 25, 2003) ("Having already concluded that personal jurisdiction is proper because Rooney's claim arises from the defendants' activities in Massachusetts, I also conclude that venue is proper.").

As discussed previously in this Opposition and set forth in Plaintiffs' Complaint, the financial transactions that form the basis of this action occurred at the Plaintiffs' offices in

---

[10] The remaining two KPS & Assocs. factors are not relevant for purposes of this action. There is no res at issue in the case nor is the matter before the court on removal jurisdiction.

20