UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

Litchfield Financial Corporation, Textron
Financial Corporation, Land Finance
Company,
                Plaintiffs,

                                      04-CV-30076-KPN

v.

Buyers Source Real Estate Group, Buyers
Source Valley Group, LLC, Buyers Source
Sugarmill, LLC, Buyers Source, Savannah
Lakes, LLC, Thomas H. Brewer, Frederick D.
Blake, Betty M. Brewer, Susan Gard, Henry
Montgomery, Lannie Campbell, Ronald P.
Ferguson, Stephen A. Hudgins, Esquire,
Stephen A. Hudgins, PC, Hudgins &
Stallings, PC, J. Vance Stallings, Esquire,
John C. Lumpkin, Esquire, John C. Lumpkin,
PC, William Gregory Seigler, Esquire
                Defendants.

## AMENDMENT TO FACTS AND LIMITED REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT WILLIAM GREGORY SEIGLER'S MOTION TO DISMISS

The defendant, William Gregory Seigler, respectfully moves this Court to amend the facts as stated in his Motion to Dismiss or in the Alternative to Stay ("Motion to Dismiss") and to further state the following in Reply to Plaintiffs' Opposition to Defendant William Gregory Seigler's Motion to Dismiss ("Plaintiffs' Opposition").[1]

## I.    Defendant Wishes to Amend the Recitation of the Facts in His Motion to Dismiss.

On page 6 of Defendant William Gregory Seigler's Motion to Dismiss, defendant mistakenly stated that "Mr. Seigler has never sent correspondence to the Commonwealth of

---

[1]    In light of the correction to the Motion to Dismiss that defendant seeks to make in Section I below, defendant's Reply is limited to addressing Section II(B) of plaintiffs' Opposition, where plaintiffs allege that this Court has personal jurisdiction under M.G.L. c. 223A, Sections 3(a) and (c) based upon Mr. Seigler sending three letters to plaintiffs in Massachusetts.

Massachusetts" and cited to the Affidavit of William Gregory Seigler filed contemporaneously with his Motion to Dismiss. The Affidavit of Mr. Seigler did not include that contention and, upon information and belief, the statement was erroneous.[2] See September 23, 2004 Affidavit of William Gregory Seigler, attached as Exhibit A, ¶¶2-4.

The defendant seeks to amend his Motion to Dismiss to delete the last sentence on page 6 and to substitute the following: "The fact that Mr. Seigler sent correspondence to Massachusetts is irrelevant. See, e.g., Fern v. Immergut, 55 Mass.App.Ct. 577, 582 n.9, 773 N.E.2d 972, 976 (2002). Cf. American Freedom Train, 747 F.2d at 1074; BHC Interim Funding, LP v. Bracewell & Patterson, LLP, 2003 WL 21467544 (S.D.N.Y. 2003)."[3]

## II.    This Court Lacks Personal Jurisdiction over Defendant Seigler whether or not he sent Letters to Massachusetts.

Mr. Seigler sending letters to Massachusetts should not influence this Court's decision on whether it lacks personal jurisdiction over this defendant on the facts alleged. See Defendant's Motion to Dismiss, pgs. 3-11. Although plaintiffs allege in their Opposition that this Court has personal jurisdiction over Mr. Seigler under either Section 3(a) or Section 3(c) of the Massachusetts Long-Arm Statute based upon their receipt of certain letters and reliance thereupon, plaintiffs have failed to meet *their* burden of establishing that Mr. Seigler either

---

[2]    The error evidently resulted from an innocent misunderstanding between Mr. Seigler and Mr. Seigler's local South Carolina counsel, and was certainly not an intentional misrepresentation. See September 23, 2004 Affidavit of William Gregory Seigler, attached hereto as Exhibit A, ¶5. Notwithstanding arguments bearing on the absence of such correspondence, letters Mr. Seigler appears to have sent to Land Finance Company in Massachusetts *were attached to his Motion to Dismiss.* See tabs B, C, and D to Exhibit A of Defendant's Motion to Dismiss.

[3]    The defendant further acknowledges that whereas on a number of occasions in his Motion to Dismiss, it was stated that he had no contacts with the forum state, see Motion to Dismiss, pgs. 9-12, to the extent that those statements could be interpreted to imply that Mr. Seigler did not correspond with persons or firms in Massachusetts, that inference likewise would be incorrect.

transacted business in Massachusetts or caused tortious injury in Massachusetts, and that plaintiffs' claims arose from Mr. Seigler transacting business or causing tortious injury in Massachusetts. M.G.L. c. 223A, §§3(a) and (c). Plaintiffs likewise have also failed to establish that the exercise of personal jurisdiction over Mr. Seigler would comport with Due Process.

## 1.    <u>Plaintiffs have not established that jurisdiction is proper under Section 3(c).</u>

In support of their argument that this Court has jurisdiction under Section 3(c), plaintiffs cite to <u>Murphy v. Erwing-Wasey, Inc.</u>, 460 F.2d 661 (1st Cir. 1972) and its progeny, including <u>Ealing Corp. v. Harrods, Ltd.</u>, 790 F.2d 978 (1st Cir. 1986), <u>JMTR Enters., L.L.C. v. Duchin</u>, 42 F.Supp.2d 87 (D.Mass. 1999) and <u>Burtner v. Burnham</u>, 13 Mass.App.Ct. 158, 430 N.E.2d 1233 (1982). Plaintiffs' reliance on those cases is mistaken. Personal jurisdiction in <u>Murphy</u>, <u>JMTR Enterprises</u> and <u>Ealing</u>, was not premised on the communication alone, but on the fact that the non-resident defendant had knowingly engaged in tortious activity purposely directed at the state and intended to cause injury there. <u>Murphy</u>, 460 F.2d at 664 (holding that the sending of a *fraudulent* statement to Massachusetts was sufficient to establish jurisdiction under Section 3(c) where plaintiff alleged that defendant intentionally deceived him); <u>Ealing</u>, 790 F.2d at 979, 981-82 (holding that non resident defendant had caused tortious injury under Section 3(c) where defendant sent a fraudulent telex to the Massachusetts plaintiff in connection with a marketing venture between the parties); <u>JMTR Enterprises</u>, 42 F.Supp.2d at 97 (holding that jurisdiction was proper under Section 3(c) where plaintiff alleged, and defendant did not dispute, that defendant's communications with the plaintiff in Massachusetts were fraudulent, thus establishing a "tortious injury").

Furthermore, the <u>Murphy</u> court clearly indicated that its finding of personal jurisdiction was based on the alleged knowing and fraudulent misrepresentation of the defendant who intended to cause injury in Massachusetts. <u>Murphy</u>, 460 F.2d at 664.[4] It was the "intent" to commit fraud and cause injury in Massachusetts upon which the Court based its holding that the defendant had caused tortious injury in Massachusetts. <u>Id.</u> <u>See also</u> <u>Ticketmaster-New York, Inc. v. Alioto</u>, 26 F.3d 201, 205 (1st Cir. 1994) ("... Murphy can be distinguished on the ground that it was decided in the context of fraudulent misrepresentation ...."). "The underlying premise of the <u>Murphy</u> opinion seems to be that negligent and intentional acts should be treated differently when interpreting statutory jurisdictional language. The <u>Murphy</u> court apparently agrees that jurisdiction would not lie had the act with which the court was concerned been negligent...." <u>Margoles v. Johns</u>, 483 F.2d 1212, 1219-20 (D.C.Cir. 1973) (criticizing <u>Murphy</u>).

In the present case, plaintiffs have alleged legal malpractice and *negligent* misrepresentation against Mr. Seigler, but there is no claim that Mr. Seigler's alleged activities were knowing, intentional and fraudulent. Therefore, plaintiffs' reliance on <u>Murphy</u> and its progeny to establish personal jurisdiction over Mr. Seigler under Section 3(c) is misplaced, because the application of jurisdiction in those cases is premised upon the alleged knowing, intentional and fraudulent acts of the defendants in Massachusetts. This Court should instead hold that plaintiffs have failed to establish that Mr. Seigler "caus[ed] tortious injury" within the Commonwealth under Section 3(c). <u>See</u>, <u>e.g.</u>, <u>Fern v. Immergut</u>, 55 Mass.App.Ct. 577, 582 n.9,

---

[4]      In holding that the mailing of a knowingly and intentional fraudulent misrepresentation into Massachusetts established jurisdiction under Section 3(c), the <u>Murphy</u> court discussed a Second Circuit case where "the court pointed out that while sending a defective tool to a dealer ... merely creates the condition from which damage might later arise, sending a libel into a state is indistinguishable from 'the frequently hypothesized but rarely encountered gunman firing across a state line." <u>Murphy</u>, 460 F.2d at 664 (citations omitted). The <u>Murphy</u> court went on to state that "[w]e believe that the same is true [here]." <u>Id.</u>

773 N.E.2d 972, 976 (2002) (stating, where plaintiff sought indemnification and contribution from a New York law firm for a previously settled claim in connection with a draft opinion letter issued by the New York firm, that plaintiff made no claim of jurisdiction under M.G.L. c. 223A, Section 3(c) "because it cannot be claimed ... that [defendant law firm]'s alleged malpractice [related to the opinion letters] occurred in this Commonwealth."). See also generally BHC Interim Funding, LP v. Bracewell & Patterson, LLP, 2003 WL 21467544 (S.D.N.Y. 2003).


## 2.    Plaintiffs have not established jurisdiction under Section 3(a).

Plaintiffs also attempt to establish personal jurisdiction under Section 3(a) of the Massachusetts Long-Arm Statute.[5]  However, plaintiffs have failed to establish the two prong test, i.e., that Mr. Seigler transacted business in Massachusetts, and that plaintiffs' claims against Mr. Seigler "ar[ose] from [Mr. Seigler's] transacting any business" in Massachusetts. M.G.L. c. 223A, §3(a).


Even taken in the light most favorable to plaintiffs, their claims do not arise from the sending of letters to Massachusetts, but from Mr. Seigler's alleged legal malpractice which, if any, was committed in South Carolina. See, e.g., Sawtelle v. Farrell, 70 F.3d 1381, 1389-91 (1st

---

[5]    In support of their argument under Section 3(a), plaintiffs cite to a number of cases, all of which are either easily distinguishable, inapposite or which actually support defendant's position. See, e.g., Bond Leather Co. v. Q.T. Shoe Mfg. Co., 764 F.2d 928 (1st Cir. 1985) (holding that although the defendant had transacted business in Massachusetts, personal jurisdiction could not be exercised without offending traditional notions of fair play and substantial justice); Hahn v. Vermont Law Sch., 698 F.2d 48, 51 (1st Cir. 1983) (holding that "transacting any business" standard met where out of state law school sent application for admission and notice of acceptance to plaintiff in Massachusetts); Tatro v. Manor Care, Inc., 416 Mass. 763, 625 N.E.2d 549, 551-52 (1994) (holding that a California corporation transacted business in Massachusetts by systematically advertising its hotel in Massachusetts); Ross v. Ross, 371 Mass. 439, 441-42, 358 N.E.2d 437, 439 (1976) (holding that personal jurisdiction under Section 3(a) was proper where non resident defendant's act of petitioning a Massachusetts Probate Court for modification of a divorce decree "plainly involves intentional activities 'invoking the benefits and protections of [Massachusetts'] laws.'"). See also Ealing, 790 F.2d 978; Workgroup Technology Corp. v. MGM Grand Hotel, LLC, 246 F.Supp.2d 102 (D.Mass. 2003); JMTR Enterprises, 42 F.Supp.2d 87.

Cir. 1995); Fern, 55 Mass.App.Ct. at 582, n.9.  Plaintiffs have not established, and cannot, that

Mr. Seigler transacted business in Massachusetts.  See Lyle Richards Int.'l v. Ashworth, Inc., 132

F.3d 111 (1st Cir. 1997) (holding that the defendant corporation *did not have* sufficient contacts

with Massachusetts to support jurisdiction in connection with a breach of contract claim, *even

though* defendant periodically forwarded purchase orders to plaintiff in Massachusetts,

communicated with plaintiff in Massachusetts two or three times a week regarding the ongoing

contract performance and placed orders with suppliers which were instructed to bill plaintiff

directly).  See also BHC, 2003 WL 21467544 (holding, in case where New York lender brought

suit against Texas law firm and others for their alleged role in fraudulent loan transaction

involving the law firm's client, that there was no personal jurisdiction over the Texas law firm

where it had, among other matters, sent an opinion letter to New York, the content of which was

fraudulent, participated in the negotiations and drafting of the loan agreements, and

communicated with New York counsel).


"Often, the 'transacting business' test is importantly informed by ascertaining whether the

nonresident party initiated or solicited the business transaction in Massachusetts."  Lyle, 132 F.3d

at 113.  That is certainly not the case here.  In connection with issuing the opinion letters,

defendant did not solicit any business in Massachusetts.  Mr. Seigler, a practioner who resides

and works in South Carolina, was approached by a local South Carolina realtor about providing

legal services to Buyers Source, Savannah, LLC ("Buyers Source"), a Virginia corporation.  Mr.

Seigler provided opinion letters as to the ability of Buyers Source to engage in certain

transactions related to properties in South Carolina.  It should go without saying that plaintiffs'

reliance on Mr. Seigler's opinion letters is not determinative of whether Mr. Seigler in fact

transacted business in Massachusetts. Plaintiffs were not clients of Mr. Seigler, nor did plaintiffs contract with him for the performance of services.[6] Mr. Seigler was not working within the borders of the Commonwealth of Massachusetts, the properties at issue are located in South Carolina and any alleged legal malpractice or negligent misrepresentation could only have taken place in South Carolina.

3. **Plaintiffs have not established that the exercise of personal jurisdiction over Mr. Seigler would comport with the Due Process Clause of the Fourteenth Amendment.**

As plaintiffs correctly point out, in determining whether the exercise of jurisdiction comports with the Due Process Clause of the Fourteenth Amendment, three factors must be established: (1) relatedness, i.e., whether the claim arises out of or is related to the defendant's conduct within Massachusetts; (2) purposeful availment, i.e., whether defendant's contact with the forum state represents a purposeful availment of the privilege of conducting activities in Massachusetts, thereby invoking the benefits and protections of the state's laws and making defendant's involuntary presence before the state's courts foreseeable; and (3) whether it would be fair and reasonable to compel the defendant to defend himself in Massachusetts. See Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 144, 149 (1st Cir. 1995).

---

[6] It is worth noting that the cases cited by plaintiffs overwhelmingly involve contractual or potential contractual relationships between the parties, obviously not the situation here. See, e.g., Lyle, 132 F.3d 111; Ealing, 790 F.2d 978 (holding, where the parties had entered into agreements governing a marketing venture, that personal jurisdiction under Section 3(a) was proper where there were numerous telex communications, telephone calls and overnight letters between the parties, plaintiff had to obtain approval from defendant for certain aspects of the operation, such as obtaining a post office box, telephone number, setting up facilities, handling customer inquiries, orders and payments on behalf of defendant, and an agent of defendant's visited Massachusetts regarding the venture); Workgroup Technology Corp. v. MGM Grand Hotel, LLC, 246 F.Supp.2d 102 (D.Mass. 2003) (holding that defendant hotel had transacted business in Massachusetts where plaintiff and defendant had contracted for plaintiff's annual conference to take place at defendant's hotel and in doing so, the parties negotiated the terms of the agreement over a three month period, telephoned and e-mailed each other, and faxed the proposed contract and fully executed contract to Massachusetts); JMTR Enterprises, 42 F.Supp.2d 87 (holding in breach of contract action that personal jurisdiction was proper under Section 3(a) where defendant either directly or through an agent, via telephone, mail, electronic mail, and facsimile had sent numerous communications to the plaintiff in Massachusetts and defendant's agent had met with plaintiffs' attorneys in Massachusetts).

### a.    Relatedness.

Plaintiffs have not established any of the required elements. Plaintiffs' claims do not arise directly from the mailing of the letters, but from the alleged malpractice that occurred in South Carolina. Sawtelle, 70 F.3d at 1389-90. In Sawtelle, the Court rejected plaintiffs' argument that the relatedness requirement was satisfied because the defendant attorneys directed negligent settlement advice into the forum state by way of letter and telephone calls to plaintiffs. The Court stated that "[i]t may be true that the defendants' alleged malpractice was not consummated until they communicated their misconceived advice to plaintiffs in [the forum state] by telephone and mail and the plaintiffs' relied on the advice to their detriment. Ultimately, however, the gravamen of the [plaintiffs'] claim is that they suffered in [the forum state] the 'effects' of the defendants' negligence committed elsewhere." Id. at 1390. The same is true here. "The communications sent into [Massachusetts] were ancillary to the allegedly negligent non-forum activities, and because those communications were the only relevant contacts with the forum for purposes of [plaintiffs' claims]," this court should conclude, as did the court in Sawtelle, "that the plaintiffs' showing of relatedness ... [is] tenuous at best. It hangs, as it were, by a thread." Id. at 1390-91.


However, assuming arguendo, that plaintiffs were to have established relatedness, plaintiffs have not established purposeful availment or reasonableness. They thus have failed to meet their burden in establishing that personal jurisdiction is proper.


### b.    Purposeful Availment.

Defendant's contacts with Massachusetts do not demonstrate "a purposeful availment of the privilege of conducting activities" in Massachusetts, "thereby invoking the benefits and protections of the state's laws and making the defendant's involuntary presence before the state's courts foreseeable." Sawtelle, 70 F.3d at 1389 (citations omitted). Jurisdiction should not be "premised solely upon a defendant's 'random, isolated or fortuitous' contacts with the forum state." Id. at 1391 (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774, 104 S.Ct. 1473, 1478 (1984)). Mr. Seigler's contacts with Massachusetts are exactly that – random, isolated and fortuitous. Mr. Seigler is licensed to practice law in South Carolina, where he has an office. He was approached in South Carolina about providing legal services to Buyers Source regarding the purchase of real estate in South Carolina. That the transaction happened to involve dealings between Buyers Source and a Massachusetts corporation was fortuitous. Mr. Seigler did not solicit plaintiffs in Massachusetts – the plaintiffs were not clients of Mr. Seigler.[7] In connection with his work on such matters, Mr. Seigler did not intend to exploit the local economy, nor did he derive, to the best of his knowledge, financial benefit from plaintiffs in Massachusetts. See Bond Leather Co. v. Q.T. Shoe Mfg. Co., 764 F.2d 928, 934-35 (1st Cir. 1985).

Even if Mr. Seigler was aware, at the time he agreed to issue the opinion letters, that plaintiff Land Financing Company had its principal place of business in Massachusetts and would rely on his opinion letters, those facts would be insufficient to establish that Mr. Seigler purposefully availed himself to the privilege of conducting activities in Massachusetts. See Sawtelle, 70 F.3d at 1391-94. Compare Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 305 F.3d 120, 127-129 (2nd Cir. 2002) (stating, in legal malpractice action involving

---

[7]     In any event, to make a showing of purposeful availment, it is not enough that a defendant agree to act as an attorney or accept an attorney-client relationship with Massachusetts clients. See, e.g., Sawtelle, supra.

an opinion letter, that had defendant's only contacts with the forum state been the issuance of the letter and communications via telephone, fax and mail with banks and counsel, "we might very well agree ... that no purposeful availment had been demonstrated," but holding that purposeful availment had in fact been demonstrated where the defendant kept an apartment in forum state, faxed newsletters to numerous persons in forum state and had performed work for numerous clients in the forum state). Mr. Seigler could certainly not foresee (or reasonably anticipate) "being haled into court" in Massachusetts. Simply put, Mr. Seigler neither conducted activities in Massachusetts, nor deliberately invoked the benefits or protections of Massachusetts' laws. See, e.g., Phillips Exeter Academy v. Howard Phillips Fund, Inc., 196 F.3d 284, 292 (1st Cir. 1999) (emphasis in original) (citation omitted) ("Without evidence that the defendant actually reached out to the plaintiff's state of residence to *create* a relationship -- say, by solicitation -- the mere fact that the defendant willingly entered into a tendered relationship does not carry the day.").

    In support of their argument to the contrary, plaintiffs again rely on the Murphy and JMTR decisions. As stated above, those cases are inapposite. The defendants therein had evidenced a purposeful availment of the privilege of conducting activities in Massachusetts by knowingly sending a *fraudulent* misrepresentation into a state with the intent that it be relied upon to the injury of a resident of that state. Murphy, 460 F.2d at 664 (stating that "[t]he element *of intent* also persuades us that there can be no constitutional objection to Massachusetts asserting jurisdiction over the out-of-state sender of a ***fraudulent misrepresentation***, for such a sender has thereby 'purposefully avail[ed] itself of the privilege of conducting activities within the forum State....'" (citations omitted) (emphasis added)); JMTR, 42 F.Supp.2d at 98 (stating

that "sending a fraudulent misrepresentation into Massachusetts fulfills the 'purposeful availment' requirement"). Plaintiffs are mistaken in their assertion that the determination of personal jurisdiction is based on whether a defendant "deliberately addressed and delivered" letters to Massachusetts – to the contrary, the question hinges on whether a defendant knowingly and intentionally committed a tortious act with the intent to cause injury in Massachusetts. See Murphy, supra, and JMTR, supra. That is not the case here, nor has it ever been alleged.

        c.     **Reasonableness**.

As stated in Defendant's Motion to Dismiss, there is no need for this Court to reach the issue of reasonableness, as the gestalt factors come into play only if plaintiffs have established relatedness and purposeful availment, Donatelli v. National Hockey League, 893 F.2d 459, 465 (1st Cir. 1990), which they have not. With that said, defendant will briefly address plaintiffs' argument that having Mr. Seigler defend this action in Massachusetts would "not offend traditional notions of fair play and substantial justice."

Contrary to plaintiffs' assertions, it would be highly burdensome for Mr. Seigler to appear in Massachusetts. See, e.g., Ticketmaster-New York, 26 F.3d at 210 (holding that the "burden associated with forcing a California resident to appear in a Massachusetts court is onerous in terms of distance, and there are no mitigating factors to cushion that burdensomeness here."); BHC, 2003 WL 21467544 at *7-8 (holding that the exercise of jurisdiction will impose a burden on the Texas law firm defendant, which had not been shown to have purposely availed itself of the privilege of conducting business in New York, the forum state). Plaintiffs downplay the geographic distance between South Carolina and Massachusetts, which defendant acknowledges

does not place the same burden today as it would have 30 years ago. Notwithstanding the convenience of air travel, the burden is real. Defendant would still have to take a significant amount of time out of his schedule for any trips to Massachusetts. As a sole practioner, any time spent out of state would certainly place a considerable strain on his practice in South Carolina. The cost would also be sizeable. With respect to Massachusetts' interest in adjudicating this cause of action and plaintiffs' interest in obtaining convenient relief, neither outweigh the fact that virtually all of the events leading up to plaintiffs' claims against Mr. Seigler occurred in South Carolina. It would also appear that the plaintiff, Litchfield Financial Corporation, is the only Massachusetts party to the suit. Moreover, upon information and belief, the witnesses – aside from those at Land Finance Company and Litchfield Financial Corporation – likely are located in South Carolina or Virginia.

The exercise of personal jurisdiction in such circumstances would be grossly unfair and improper. As stated by the <u>Sawtelle</u> court, "we must heed the warning that 'it is a mistake to assume that [technological advances] heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. To permit the exercise of personal jurisdiction over the defendant[] in this case would require this Court to disregard that sage advice." <u>Sawtelle</u>, 70 F.3d at 1395-96 (citations omitted).

## III.    Conclusion.

Notwithstanding that defendant William Gregory Seigler appears to have sent what plaintiffs consider to be relevant correspondence in Massachusetts, plaintiffs have failed to establish personal jurisdiction over William Gregory Seigler under any section of the

Massachusetts Long-Arm Statute. That being the case, defendant's Motion to Dismiss should be allowed.

Defendant,
William Gregory Seigler,
By his attorneys,

Peter M. Durney, BBO #139260
David W. McGough, BBO #553069
CORNELL & GOLLUB
75 Federal Street
Boston, MA 02110
Telephone: (617) 482-8100

Samuel W. Outten (SC Bar # 4295) *Pro Hac Vice*
WOMBLE CARLYLE SANDRIDGE & RICE
*A Professional Limited Liability Company*
Post Office Box 10208
Greenville, SC 29603-0208
Telephone: (864) 255-5421
Fax: (864) 239-5852

## CERTIFICATE OF SERVICE

I, David W. McGough, attorney for the defendant, William Gregory Seigler, hereby certify that on this 27th day of September, 2004, a true copy of the foregoing Amendment to Facts and Limited Reply to Plaintiffs' Opposition to Defendant William Gregory Seigler's Motion to Dismiss, was served:

via hand delivery, directed to:

Jeffrey L. McCormick, Esq.
Robinson Donovan, P.C.
1500 Main Street, Suite 1600
Springfield, MA 01115

and via first class mail, directed to :

George R. Moore, Esq.
Devine, Millimet & Branch, PA
300 Brickstone Square, 9th Floor

Lannie L. Campbell
One Harbor Court, #3D
Portsmouth, VA 23704

13

P.O. Box 39
Andover, MA  01810

Ronald P. Ferguson
6395 Lake View Drive
Falls Church, VA  22041

Henry Montgomery
396 Baldwin Drive
Howard, OH  43028-8044

Thomas H. Brewer
113 Northgate Lane
Suffolk, VA  23434

Betty M. Brewer
113 Northgate Lane
Suffolk, VA  23434

Frederick D. Blake
705 Mobjack Place
Newport News, VA  23606

James Edward Anklam, Esq.
Paul, Hastings, Janofsky & Walker, LLP
1299 Pennsylvania Avenue, NW
10th Floor
Washington, DC  20004

Christopher F. Dugan, Esq.
Paul, Hastings, Janofsky & Walker, LLP
1299 Pennsylvania Avenue, NW
10th Floor
Washington, DC  20004


David W. McGough