# EXHIBIT A

GUARANTEE

GUARANTEE, made as of April 17th, 2001, by THOMAS H. BREWER, an individual residing at 1516 Sleepy Lake Parkway, Suffolk, Virginia 23434 (the "Guarantor") to LAND FINANCE COMPANY, a Delaware corporation having its principal office at 430 Main Street, Williamstown, Massachusetts 01267 (together with its transferees, successors and assigns, "LFC"). Capitalized terms used herein have the meanings given to such terms in the Purchase Agreement defined below.

WHEREAS, BUYERS SOURCE, SAVANNAH, L.L.C., a Virginia limited liability company ("Seller"), and LFC are parties to a Receivables Purchase Agreement, dated as of the date hereof (the Receivables Purchase Agreement, as amended, supplemented, modified or otherwise revised from time to time is referred to herein as the "Purchase Agreement"), pursuant to which LFC has agreed, subject to the terms and conditions contained in the Purchase Agreement, to purchase certain Receivables from the Seller from time to time;

WHEREAS, in order to induce LFC to purchase the Receivables, the Guarantor desires to guarantee the payment and performance of the Borrowers in respect of the Receivables and of the Seller in respect of the Purchase Agreement; and

WHEREAS, the Guarantor will derive substantial benefit from LFC purchasing the Receivables, and it is an express condition to the purchase of the Receivables by LFC that the Guarantor executes and delivers this Guarantee.

NOW, THEREFORE, in consideration of the foregoing, the benefits accruing to the Guarantor, and to satisfy an express condition to LFC's purchase of the Receivables pursuant to the Purchase Agreement, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Guarantor hereby agrees as follows:

1. <u>Statement of Guarantee</u>. The Guarantor hereby irrevocably, absolutely and unconditionally, guarantees to LFC the full and punctual payment and performance, when due, and in accordance with their terms (at maturity, upon acceleration following default, or otherwise) of all of the foregoing (collectively, the "Obligations"), whether now existing or subsequently arising, (i) payment by each Obligor of all principal and interest and other monetary obligations payable or arising under or in connection with the Receivables, (ii) performance by each Obligor of the terms, conditions, covenants and other obligations of the Obligors arising under or in connection with the Receivables, (iii) payment by the Seller of all monetary obligations payable or arising under or in connection with the Purchase Agreement, (iv) performance by the Seller of the terms, conditions, covenants and other obligations arising under or in connection with the Purchase Agreement, including, without limitation, the repurchase, recourse and indemnity obligations contained therein, and (v) payment of all attorneys' fees, damages, costs, charges, expenses and liabilities of every kind suffered or incurred by LFC arising out of or in any way connected with the foregoing. The liability of Guarantor hereunder shall be unlimited.

2. <u>Nature of Obligations; Interest.</u> (a) This Guarantee is a guarantee of payment and performance. The obligations of the Guarantor under this Guarantee are direct and primary obligations. The liability of the Guarantor hereunder is independent of the Obligations, and a separate action or actions may be brought and prosecuted against the Guarantor irrespective of whether action is brought against any Purchaser or other Obligor, the Seller, any Originator or any other guarantor of

the Obligations (each a "Debtor") or whether any Debtor is joined in any such action or actions. The Guarantor understands and agrees that LFC may, but is not required to, proceed against the Guarantor under this Guarantee without first or ever proceeding against any Debtor or any other person. Without limiting the generality of the foregoing, the obligations of the Guarantor shall remain in force irrespective of (i) any defect in, or invalidity, illegality or unenforceability of the Obligations, the Receivables or the Purchase Agreement, (ii) the existence or absence of any legal action to enforce any Receivable, the Purchase Agreement or the Obligations or any security therefor, the issuance of any judgment therefor or the execution of any such judgment, (iii) any claim, defense or offset which the Guarantor or any Debtor may have against any other person, (iv) any other circumstance which might otherwise constitute a defense available to or discharge of a guarantor or surety of any type or (v) the bankruptcy, dissolution, liquidation, winding up or termination of the Guarantor, any Debtor or any other person. Each and every default in the payment or performance of the Obligations shall give rise to a separate cause of action under this Guarantee, and separate suits may be brought as each cause of action arises.

(b) The obligations of the Guarantor hereunder shall not be released, diminished, impaired, reduced, dependent upon or affected by any one or more of the following: (i) the genuineness, validity, regularity or enforceability of, or the existence of any default with respect to, any Receivable, the Purchase Agreement or the Obligations, any security therefor, or any related instrument, documents, obligation, transaction or matter; (ii) the nature, extent, condition, value or continued existence of any security given in connection with any Receivable, the Purchase Agreement or the Obligations; (iii) any action or failure to take action by any holder of the Obligations under or with respect to any Receivable, the Purchase Agreement, this Guarantee or the Obligations, any security therefor, or any related documents, transaction or matter; (iv) any other dealings between LFC and the Guarantor, any Debtor or any transferee of this Guarantee; (v) any exculpatory language or provisions in any Receivable or the Purchase Agreement limiting or restricting any person's rights or remedies; or (vi) any claim by or on behalf of the Guarantor or any Debtor of any credit, defense, counterclaim or right of setoff with respect to any of the Obligations. This Guarantee is irrevocable and the obligations of the Guarantor hereunder shall terminate and cease only at the time LFC receives payment in full of all of the Obligations or the Guarantor pays the Obligations to the full and maximum extent of its liability hereunder.

(c) The Guarantor agrees that this Guarantee shall continue to be effective or be reinstated, as the case may be, if at any time, payment of the Obligations or any part thereof is rescinded or must otherwise be restored by LFC upon or as a result of the bankruptcy or reorganization of the Guarantor or any Debtor or otherwise. If after receipt of any payment of, or the proceeds of any collateral for, all or any part of the Obligations, LFC is compelled to surrender or voluntarily surrenders such payment or proceeds to any person because such payment or application of proceeds is or may be avoided, invalidated, recaptured or set aside as a preference, fraudulent conveyance, impermissible setoff, or for any other reason, whether or not such surrender is the result of: (i) any judgment, decree or order of any court or administrative body having jurisdiction over LFC; or (ii) any settlement or compromise by LFC of any claims as to any of the foregoing with any person (including any Debtor or the Guarantor), then the Obligations or affected part thereof shall be reinstated and continue and this Guarantee shall be reinstated and continue in full force as to such Obligations or part thereof as if such payment or proceeds had not been received, notwithstanding any previous cancellation of any instrument delivered to evidence the satisfaction thereof. The provisions hereof shall survive the termination of this Guarantee and any satisfaction and discharge of any Debtor by virtue of any payment, court order, or any federal or state law.

2



(d) If the Guarantor fails to make when due any payment required to be made by it under this Guarantee (a "Payment"), then, to the extent permitted by law, such Payment shall bear interest from the due date thereof until paid at a rate equal to the prime rate in effect from time to time (as reported in the Wall Street Journal) plus five percent (5%), compounded monthly. The Guarantor agrees to pay interest accrued hereunder on demand. All calculations of interest hereunder will be made on the actual number of days elapsed on the basis of a 360-day year, but in no event shall calculations result in LFC contracting for, charging or receiving interest in excess of the maximum amount permitted by applicable law.

3. <u>Additional Agreements and Waivers of the Guarantor</u>.

WITHOUT LIMITING PARAGRAPHS 1 AND 2 HEREOF, THE GUARANTOR HEREBY ACKNOWLEDGES RECEIPT OF COPIES OF THE RECEIVABLES AND THE PURCHASE AGREEMENT AS GUARANTOR OF THE OBLIGORS' AND THE SELLER'S OBLIGATIONS THEREUNDER, HEREBY CONFIRMS AND MAKES ALL OF THE STATEMENTS, ACKNOWLEDGMENTS, WAIVERS AND AGREEMENTS SET FORTH THEREIN (WHICH ARE HEREBY INCORPORATED BY REFERENCE AS IF SET FORTH HEREIN IN THEIR ENTIRETY) BOTH WITH RESPECT TO THE OBLIGORS' AND THE SELLER'S OBLIGATIONS AND ACKNOWLEDGES THAT IT MAKES ALL OF THE WAIVERS AND SPECIAL AGREEMENTS ("WAIVERS") SET FORTH IN THIS GUARANTEE, AND THAT EACH AND ALL SUCH WAIVERS ARE BEING MADE KNOWINGLY, INTENTIONALLY, VOLUNTARILY, WITHOUT DURESS, AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF SUCH WAIVERS BY THE GUARANTOR IN CONSULTATION WITH ITS LEGAL COUNSEL; THE GUARANTOR FURTHER ACKNOWLEDGES THAT THE GUARANTOR'S GUARANTEE AND SUCH WAIVERS ARE A MATERIAL INDUCEMENT TO LFC TO ENTER INTO THE PURCHASE AGREEMENT, AND THAT LFC WOULD NOT PURCHASE THE RECEIVABLES WITHOUT SUCH GUARANTEE AND WAIVERS. THE GUARANTOR ACKNOWLEDGES AND AGREES THAT NEITHER LFC NOR ANY BORROWER NOR THE SELLER NOR ANY OF THEIR RESPECTIVE AFFILIATES, AGENTS OR REPRESENTATIVES HAS MADE AND NO SUCH PERSON IS MAKING OR SHALL BE DEEMED TO HAVE MADE ANY REPRESENTATIONS OR WARRANTIES WITH RESPECT TO THIS GUARANTEE.

(a) The Guarantor understands and agrees that LFC may (and hereby authorizes LFC to) take the following actions, at any time or from time to time, without the consent of or notice to the Guarantor, without incurring any responsibility to the Guarantor, and without impairing, reducing, modifying, amending, releasing, discharging or in any way affecting the obligations of the Guarantor or giving the Guarantor any recourse or defense against LFC:

(i) Accept or create new, modify, amend, accelerate, increase, extend or renew any of the Receivables, the Purchase Agreement, the Obligations, the terms thereof or any security therefor, and this Guarantee will apply to the Receivables, the Purchase Agreement, and the Obligations as so accepted, created, modified, amended, accelerated, increased, extended or renewed;

(ii) Change the manner, place or terms of payment of the Receivables, the Purchase Agreement or the Obligations, release, surrender, substitute, settle or compromise, or otherwise alter or modify all or any of the Receivables, the Purchase Agreement or the Obligations or any security therefor, any person liable thereon, including any endorsers, accommodation parties or guarantors, or any liability incurred directly or indirectly in respect thereof or in connection with this Guarantee;

3



(iii) Subordinate the payment of all or any part of the Obligations or any security therefor to the payment of or security for any other liability (whether due or not) of any Debtor to its creditors, including LFC;

(iv) Exercise or refrain from exercising any rights or remedies against any Debtor or otherwise act or refrain from acting or take or fail to take any action of any type whatsoever, and generally deal with each Debtor, any endorser, accommodator, or other person, any indebtedness of any Debtor to LFC, or any security for any such indebtedness or obligation, as LFC sees fit;

(v) Consent to or waive any breach of any act, omission or default, or reinstate following a default, under any Receivable or the Purchase Agreement in accordance with the terms thereof;

(vi) Release from liability any Debtor or any other person or grant any other indulgence, concession or compromise with respect to all or any part of any of the Obligations;

(vii) Apply any sums by whomsoever paid or howsoever realized to any Obligations or other liabilities of any Debtor to LFC regardless of what Obligations, liability or liabilities remain unpaid, provided that payments by the Guarantor pursuant to this Guarantee shall be applied to the Obligations or its obligations or liabilities hereunder, but in such order as LFC may determine; or

(viii) Fail to record or file against or possess any collateral or property or person whatsoever, or to perfect or protect any lien or encumbrance, or sell, exchange, release, surrender, purchase, foreclose, realize upon, refuse to realize upon or otherwise deal with in any manner or order any property or person at any time securing or guaranteeing the Obligations or liabilities incurred directly or indirectly in respect thereof or in connection with this Guarantee or the Obligations.

(b) The Guarantor understands and agrees that its obligations under this Guarantee, and LFC's rights to enforce this Guarantee, shall not in any way be affected, diminished or impaired by the following actions:

(i) Any voluntary or involuntary insolvency, bankruptcy, liquidation, reorganization, readjustment, composition, death, dissolution, winding up, assignment for the benefit of creditors, receivership or trusteeship involving Seller or any of its assets, the Guarantor, any of their respective affiliates or any other person liable in respect of the Obligations as an obligor, endorser, guarantor, pledgor or otherwise;

(ii) Any merger, consolidation, or sale of all or substantially all of the assets, or of a controlling interest in, Seller, the Guarantor, any of their respective affiliates or any other person liable in respect of the Obligations as an obligor, endorser, guarantor, pledgor or otherwise;

(iii) The settlement by LFC with any Debtor, or the release or compromise by LFC of any claims against Seller or the Guarantor; or

(iv) The existence of any other circumstances which might constitute a legal or equitable discharge of a surety or guarantor under applicable law.

(c) <u>Waiver of Claims and Set-Offs</u>. With respect to all Obligations and any other liabilities or obligations hereunder, the Guarantor hereby waives and agrees not to assert or take advantage of any of the following:

4



(i) Any right to require LFC to proceed against any Debtor or any other person or to resort to, proceed against or exhaust any security obtained from any Debtor or any other person at any time or to pursue any other remedy in its power before proceeding against any security obtained from the Guarantor;

(ii) The defense of the statute of limitations in any action hereunder or for the collection of any indebtedness or the performance of any Obligation;

(iii) Any defense that may arise by reason of the incapacity, lack of authority, death or disability of, insolvency or bankruptcy of any Debtor or any other person, or revocation, illegibility or unenforceability hereof or of any of the Obligations or any Receivable or the Purchase Agreement, or the failure of LFC to file or enforce a claim against the estate (either in administration, bankruptcy, or any other proceeding) of any Debtor or any other person;

(iv) Demand, diligence presentment, protest, notice of dishonor, nonpayment or default, suit or taking of any action and notice of any other kind to any person, including, without limiting the generality of the foregoing, notice of acceptance of this Guarantee and notice of liability to which may apply, notice under the Uniform Commercial Code of any jurisdiction, and notice of the existence, creation or incurring of any new or additional indebtedness or obligation or of any action or non-action on the part of any Debtor, LFC, any endorser or guarantor under any instrument, or creditor of any Debtor or any other person whomsoever, in connection with any Obligation or evidence of indebtedness or in connection with any Obligation or any security therefor;

(v) All rights and defenses arising out of an election of remedies by LFC, even though that election of remedies, such as but not limited to a non-judicial foreclosure under the Uniform Commercial Code with respect to security for any Obligations, has destroyed or otherwise impaired, the Guarantor's rights (including rights of subrogation and reimbursement against any Debtor or recourse against any Debtor or any other person or any property;

(vi) Any right to be informed by LFC or any other person of the financial condition of any Debtor of the Obligations or any change therein or any other circumstances bearing upon the risk of nonpayment or nonperformance of the Obligations, or any duty on the part of LFC to disclose to the Guarantor or any other person any facts LFC may now or hereafter know about any Debtor or any other person or the Obligations or any security therefor, regardless of whether LFC knows or has reason to believe that any such facts materially increase the risk beyond that which the Guarantor intends to assume or knows or has reason to believe that such facts are unknown to the Guarantor or has a reasonable opportunity to communicate such facts to the Guarantor, it being understood and agreed that the Guarantor represents, acknowledges and agrees that the Guarantor has the ability and assumes the responsibility for keeping informed of the financial condition of each Debtor and of other circumstances affecting such nonpayment and nonperformance risks and the Guarantor is fully responsible for being and keeping informed of the financial condition of the Debtors and of all circumstances bearing on the risk of nonpayment or nonperformance of any Obligations; and

(vii) Any and all surety defenses, including any defense based on lack of due diligence by LFC in collection, protection or realization upon any collateral.

(d) <u>Waiver of Deficiency; Appraisement, Etc</u>. The Guarantor hereby expressly waives: (i) any defense to the recovery of a deficiency against any Debtor after any non-judicial sale of collateral under any mortgage or security agreement, notwithstanding that such sale may result in a loss by a Guarantor of the right to recover the deficiency from any Debtor, (ii) any appraisement,

5

valuation, stay, extension, moratorium redemption or similar law or similar rights for marshalling; and (iii) the benefit of all principles or provisions of law, statutory or otherwise, which are or might be in conflict with the terms of this Guarantee, and agrees that the obligations of the Guarantor shall not be affected by any circumstances, whether or not referred to in this Guarantee, which might otherwise constitute a legal or equitable discharge of guarantors. Without limiting the generality of any of the foregoing, the Guarantor hereby waives any right to be reimbursed by any Debtor for any payment of the Obligations made directly or indirectly by the Guarantor or from any property of the Guarantor, whether arising by way of any statutory, contractual or other right of subrogation, contribution, indemnification or otherwise. Without limiting the foregoing, the Guarantor understands that in the absence of the waivers made in this paragraph 3, the Guarantor might have a defense against an action by LFC to recover a deficiency from the Guarantor following a non-judicial foreclosure sale of real property or other collateral securing the Obligations, and the Guarantor is specifically waiving those defenses and all other defenses. The Guarantor expressly agrees to remain liable for any deficiency remaining after foreclosure of any mortgage or security interest securing any of the Obligations, whether or not the liability of any Debtor with respect to any of the Obligations for such deficiency is discharged pursuant to statute or judicial decision.

4. <u>WAIVER OF JURY TRIAL; SUBMISSION TO JURISDICTION</u>. GUARANTOR HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY ACTION, SUIT, COUNTERCLAIM OR OTHER LITIGATION OR OTHER PROCEEDING RELATING TO OR ARISING DIRECTLY OR INDIRECTLY OUT OF, UNDER OR IN CONECTION WITH THIS GUARANTEE, THE PURCHASE AGREEMENT, ANY OTHER PURCHASE DOCUMENT OR ANY OF THE TRANSACTIONS CONTEMPLATED HEREUNDER OR THEREUNDER. THE GUARANTOR COVENANTS AND AGREES NOT TO SEEK TO CONSOLIDATE ANY SUCH ACTION, SUIT, COUNTERCLAIM OR OTHER LITIGATION OR PROCEEDING IN WHICH A JURY TRIAL HAS BEEN WAIVED WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT OR HAS NOT BEEN WAIVED. GUARANTOR HEREBY IRREVOCABLY AND UNCONDITIONALLY (i) SUBMITS FOR ITSELF AND ITS PROPERTY IN ANY LEGAL ACTION OR PROCEEDING RELATING TO OR ARISING OUT OF THIS GUARANTEE, THE PURCHASE AGREEMENT OR ANY OTHER PURCHASE DOCUMENT, OR THE CONDUCT OF ANY PARTY HERETO OR THERETO, TO THE NONEXCLUSIVE GENERAL JURISDICTION OF THE COURTS OF THE COMMONWEALTH OF MASSACHUSETTS, THE COURTS OF THE UNITED STATES OF AMERICA FOR THE WESTERN DISTRICT OF MASSACHUSETTS, AND ANY APPELLATE COURTS FROM ANY THEREOF, (ii) CONSENTS THAT ANY SUCH ACTION OR PROCEEDING MAY BE BROUGHT IN SUCH COURTS AND WAIVES TO THE FULLEST EXTENT PERMITTED BY LAW ANY OBJECTION THAT IT MAY NOW OR HEREAFTER HAVE TO THE VENUE OF ANY SUCH ACTION OR PROCEEDING IN ANY SUCH COURT OR THAT SUCH ACTION OR PROCEEDING WAS BROUGHT IN AN INCONVENIENT COURT AND AGREES NOT TO PLEAD THE SAME, (iii) AGREES THAT SERVICE OF PROCESS IN ANY SUCH ACTION OR PROCEEDING MAY BE EFFECTED BY MAILING A COPY THEREOF BY REGISTERED OR CERTIFIED MAIL, POSTAGE PREPAID, TO GUARANTOR AT ITS ADDRESS SET FORTH ABOVE AND (iv) AGREES NOTHING HEREIN SHALL AFFECT THE RIGHT TO EFFECT SERVICE OF PROCESS IN ANY OTHER MANNER PERMITTED BY LAW OR SHALL LIMIT THE RIGHT TO SUE IN ANY OTHER JURISDICTION.

5: <u>Miscellaneous</u>.

(a) <u>Payment of Expenses</u>. The Guarantor hereby agrees to pay for all costs and expenses of LFC arising in connection with this Guarantee, including without limitation, the administration and



enforcement of, or preservation of rights under this Guarantee (including without limitation, all fees and expenses of counsel for LFC and all costs of collection, and all other costs and expenses associated with court and/or administrative proceedings through the appellate level, incurred by reason of any action, suit, proceeding, hearing, motion or application before any court or administrative body in which LFC may be or become a party by reason of this Guarantee, including, but not limited to, bankruptcy and administrative proceedings, as well as any other of the foregoing where a proof of claim is by law required to be filed, or in which it becomes necessary to defend or uphold the terms hereof (the "Costs"), in the event that (i) there shall occur any default under this Guarantee; (ii) LFC is made party to any litigation merely because of the existence of this Guarantee; (iii) it becomes necessary, by reason of acts of or omissions of the Guarantor for LFC to seek the advice of counsel with respect to this Guarantee; or (iv) it becomes necessary for LFC to seek the advice of or retain counsel by reason of any request of the Guarantor. Said Costs shall be paid in addition to the amounts guaranteed in accordance with the provisions hereof.

(b) <u>Waiver of Notice of Acceptance</u>. Notice of acceptance of this Guarantee is hereby waived.

(c) <u>Further Assurances</u>. The Guarantor agrees at any time and from time to time, at the Guarantor's sole cost and expense, to obtain, procure, execute and deliver, file and affix or cause to be obtained, procured, executed, delivered, filed and affixed such further agreements, instruments, documents, powers (including powers of attorney) and information, and to do or cause to be done all such further acts and things (including the execution, delivery and filing of financing statements, payment of filing fees and transfer, gains and recording taxes) and do and cause to be done all such other acts as LFC may reasonably request, from time to time, in its sole discretion.

(d) <u>Term; Survival</u>. Subject to paragraph 2(b) hereof, this Guarantee is in full force and effect on the date hereof and shall continue until the date on which all Obligations have been indefeasibly paid or satisfied in full. All representations, warranties, agreements and covenants contained in this Guarantee shall survive the execution and delivery of this Guarantee, and all of the waivers made and indemnification obligations undertaken by the Guarantor shall survive the termination, discharge or cancellation for any reason of this Guarantee.

(e) <u>Cumulative Rights</u>. All remedies afforded to LFC by reason of this Guarantee are separate and cumulative remedies and it is agreed that no one of such remedies shall be deemed to be in exclusion of any other remedies available to LFC and shall not in any manner limit or prejudice any other legal or equitable remedies which LFC may have. The rights, powers and remedies given to LFC by this Guarantee shall be in addition to all rights, powers and remedies given to LFC by virtue of any statue or rule of law and all such rights, powers and remedies are cumulative and not alternative, and may be exercised and enforced successively or concurrently. Any forbearance or failure or delay by LFC in exercising any right, power or remedy hereunder shall not be deemed to be a waiver of such right, power or remedy, and any single or partial exercise of any right, power or remedy hereunder shall not preclude the further exercise thereof, and every right, power and remedy of LFC hereunder shall continue in full force and effect until such right, power or remedy is specifically waived by an instrument in writing executed by LFC.

(f) <u>Parties Bound</u>. This Guarantee shall be binding upon the Guarantor and its successors or assigns and shall inure to the benefit of LFC and all future holders of the Receivables and their respective successors and assigns, provided that Guarantor may not assign, transfer or delegate any of its rights or duties hereunder.

7



(g) <u>Entire Agreement</u>. This Guarantee represents the entire understanding between the Guarantor and LFC with respect to the subject matter hereof.

(h) <u>Severability</u>. Any provision of this Guarantee which is prohibited, deemed invalid or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition, invalidity or unenforceability without invalidating the remaining provisions hereof, and any such prohibition, invalidity or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

(i) <u>No Oral Modification</u>. This Guarantee may not be extended, amended, waived, changed, modified or terminated orally, but only by an agreement in writing signed by the parties hereto.

(j) <u>Governing Law</u>. This Guarantee, and the rights and obligations of the parties hereunder, shall be governed by, and construed and interpreted in accordance with the laws of the Commonwealth of Massachusetts, without giving effect to any Massachusetts law provisions which might otherwise make the laws of different jurisdiction govern or apply.

(k) <u>Headings</u>. Section headings used herein are for convenience only and shall not affect the construction of this Guarantee.

IN WITNESS WHEREOF, the Guarantor has duly executed this Guarantee as of the date first above written.

_____
Thomas H. Brewer

STATE OF Virginia        )
                         )   :ss.
COUNTY OF Suffolk        )

I certify that on Nov 21, 2001, Thomas H. Brewer personally appeared before me and acknowledged under oath to my satisfaction he is the person who signed above.

[NOTARIAL SEAL REQUIRED]

Notary Public in and for said State

_____
Notary Public
My commission expires: 12/31/03

8

# EXHIBIT B

GUARANTEE

GUARANTEE, made as of April 17, 2001, by BETTY M. BREWER, an individual residing at 1516 Sleepy Lake Parkway, Suffolk, Virginia 23434 (the "Guarantor") to LAND FINANCE COMPANY, a Delaware corporation having its principal office at 430 Main Street, Williamstown, Massachusetts 01267 (together with its transferees, successors and assigns, "LFC"). Capitalized terms used herein have the meanings given to such terms in the Purchase Agreement defined below.

WHEREAS, BUYERS SOURCE, SAVANNAH, L.L.C., a Virginia limited liability company ("Seller"), and LFC are parties to a Receivables Purchase Agreement, dated as of the date hereof (the Receivables Purchase Agreement, as amended, supplemented, modified or otherwise revised from time to time is referred to herein as the "Purchase Agreement"), pursuant to which LFC has agreed, subject to the terms and conditions contained in the Purchase Agreement, to purchase certain Receivables from the Seller from time to time;

WHEREAS, the Guarantor is a Member of and owner of 50% of the interests of Seller;

WHEREAS, in order to induce LFC to purchase the Receivables, the Guarantor desires to guarantee the payment and performance of the Borrowers in respect of the Receivables and of the Seller in respect of the Purchase Agreement; and

WHEREAS, the Guarantor will derive substantial benefit from LFC purchasing the Receivables, and it is an express condition to the purchase of the Receivables by LFC that the Guarantor executes and delivers this Guarantee.

NOW, THEREFORE, in consideration of the foregoing, the benefits accruing to the Guarantor, and to satisfy an express condition to LFC's purchase of the Receivables pursuant to the Purchase Agreement, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Guarantor hereby agrees as follows:

1. <u>Statement of Guarantee</u>. The Guarantor hereby irrevocably, absolutely and unconditionally, guarantees to LFC the full and punctual payment and performance, when due, and in accordance with their terms (at maturity, upon acceleration following default, or otherwise) of all of the foregoing (collectively, the "Obligations"), whether now existing or subsequently arising, (i) payment by each Obligor of all principal and interest and other monetary obligations payable or arising under or in connection with the Receivables, (ii) performance by each Obligor of the terms, conditions, covenants and other obligations of the Obligors arising under or in connection with the Receivables, (iii) payment by the Seller of all monetary obligations payable or arising under or in connection with the Purchase Agreement, (iv) performance by the Seller of the terms, conditions, covenants and other obligations arising under or in connection with the Purchase Agreement, including, without limitation, the repurchase, recourse and indemnity obligations contained therein, and (v) payment of all attorneys' fees, damages, costs, charges, expenses and liabilities of every kind suffered or incurred by LFC arising out of or in any way connected with the foregoing. The liability of Guarantor hereunder shall be unlimited.

2. <u>Nature of Obligations; Interest.</u> (a) This Guarantee is a guarantee of payment and performance. The obligations of the Guarantor under this Guarantee are direct and primary obligations. The liability of the Guarantor hereunder is independent of the Obligations, and a separate



action or actions may be brought and prosecuted against the Guarantor irrespective of whether action is brought against any Purchaser or other Obligor, the Seller, any Originator or any other guarantor of the Obligations (each a "Debtor") or whether any Debtor is joined in any such action or actions. The Guarantor understands and agrees that LFC may, but is not required to, proceed against the Guarantor under this Guarantee without first or ever proceeding against any Debtor or any other person. Without limiting the generality of the foregoing, the obligations of the Guarantor shall remain in force irrespective of (i) any defect in, or invalidity, illegality or unenforceability of the Obligations, the Receivables or the Purchase Agreement, (ii) the existence or absence of any legal action to enforce any Receivable, the Purchase Agreement or the Obligations or any security therefor, the issuance of any judgment therefor or the execution of any such judgment, (iii) any claim, defense or offset which the Guarantor or any Debtor may have against any other person, (iv) any other circumstance which might otherwise constitute a defense available to or discharge of a guarantor or surety of any type or (v) the bankruptcy, dissolution, liquidation, winding up or termination of the Guarantor, any Debtor or any other person. Each and every default in the payment or performance of the Obligations shall give rise to a separate cause of action under this Guarantee, and separate suits may be brought as each cause of action arises.

(b) The obligations of the Guarantor hereunder shall not be released, diminished, impaired, reduced, dependent upon or affected by any one or more of the following: (i) the genuineness, validity, regularity or enforceability of, or the existence of any default with respect to, any Receivable, the Purchase Agreement or the Obligations, any security therefor, or any related instrument, documents, obligation, transaction or matter; (ii) the nature, extent, condition, value or continued existence of any security given in connection with any Receivable, the Purchase Agreement or the Obligations; (iii) any action or failure to take action by any holder of the Obligations under or with respect to any Receivable, the Purchase Agreement, this Guarantee or the Obligations, any security therefor, or any related documents, transaction or matter; (iv) any other dealings between LFC and the Guarantor, any Debtor or any transferee of this Guarantee; (v) any exculpatory language or provisions in any Receivable or the Purchase Agreement limiting or restricting any person's rights or remedies; or (vi) any claim by or on behalf of the Guarantor or any Debtor of any credit, defense, counterclaim or right of setoff with respect to any of the Obligations. This Guarantee is irrevocable and the obligations of the Guarantor hereunder shall terminate and cease only at the time LFC receives payment in full of all of the Obligations or the Guarantor pays the Obligations to the full and maximum extent of its liability hereunder.

(c) The Guarantor agrees that this Guarantee shall continue to be effective or be reinstated, as the case may be, if at any time, payment of the Obligations or any part thereof is rescinded or must otherwise be restored by LFC upon or as a result of the bankruptcy or reorganization of the Guarantor or any Debtor or otherwise. If after receipt of any payment of, or the proceeds of any collateral for, all or any part of the Obligations, LFC is compelled to surrender or voluntarily surrenders such payment or proceeds to any person because such payment or application of proceeds is or may be avoided, invalidated, recaptured or set aside as a preference, fraudulent conveyance, impermissible setoff, or for any other reason, whether or not such surrender is the result of: (i) any judgment, decree or order of any court or administrative body having jurisdiction over LFC; or (ii) any settlement or compromise by LFC of any claims as to any of the foregoing with any person (including any Debtor or the Guarantor), then the Obligations or affected part thereof shall be reinstated and continue and this Guarantee shall be reinstated and continue in full force as to such Obligations or part thereof as if such payment or proceeds had not been received, notwithstanding any previous cancellation of any instrument delivered to evidence the satisfaction thereof. The provisions hereof shall survive the termination of this Guarantee and any satisfaction and discharge of any Debtor by virtue of any payment, court order, or any federal or state law.



(d) If the Guarantor fails to make when due any payment required to be made by it under this Guarantee (a "Payment"), then, to the extent permitted by law, such Payment shall bear interest from the due date thereof until paid at a rate equal to the prime rate in effect from time to time (as reported in the Wall Street Journal) plus five percent (5%), compounded monthly. The Guarantor agrees to pay interest accrued hereunder on demand. All calculations of interest hereunder will be made on the actual number of days elapsed on the basis of a 360-day year, but in no event shall calculations result in LFC contracting for, charging or receiving interest in excess of the maximum amount permitted by applicable law.

3. <u>Additional Agreements and Waivers of the Guarantor.</u>

WITHOUT LIMITING PARAGRAPHS 1 AND 2 HEREOF, THE GUARANTOR HEREBY ACKNOWLEDGES RECEIPT OF COPIES OF THE RECEIVABLES AND THE PURCHASE AGREEMENT AS GUARANTOR OF THE OBLIGORS' AND THE SELLER'S OBLIGATIONS THEREUNDER, HEREBY CONFIRMS AND MAKES ALL OF THE STATEMENTS, ACKNOWLEDGMENTS, WAIVERS AND AGREEMENTS SET FORTH THEREIN (WHICH ARE HEREBY INCORPORATED BY REFERENCE AS IF SET FORTH HEREIN IN THEIR ENTIRETY) BOTH WITH RESPECT TO THE OBLIGORS' AND THE SELLER'S OBLIGATIONS AND ACKNOWLEDGES THAT IT MAKES ALL OF THE WAIVERS AND SPECIAL AGREEMENTS ("WAIVERS") SET FORTH IN THIS GUARANTEE, AND THAT EACH AND ALL SUCH WAIVERS ARE BEING MADE KNOWINGLY, INTENTIONALLY, VOLUNTARILY, WITHOUT DURESS, AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF SUCH WAIVERS BY THE GUARANTOR IN CONSULTATION WITH ITS LEGAL COUNSEL; THE GUARANTOR FURTHER ACKNOWLEDGES THAT THE GUARANTOR'S GUARANTEE AND SUCH WAIVERS ARE A MATERIAL INDUCEMENT TO LFC TO ENTER INTO THE PURCHASE AGREEMENT, AND THAT LFC WOULD NOT PURCHASE THE RECEIVABLES WITHOUT SUCH GUARANTEE AND WAIVERS. THE GUARANTOR ACKNOWLEDGES AND AGREES THAT NEITHER LFC NOR ANY BORROWER NOR THE SELLER NOR ANY OF THEIR RESPECTIVE AFFILIATES, AGENTS OR REPRESENTATIVES HAS MADE AND NO SUCH PERSON IS MAKING OR SHALL BE DEEMED TO HAVE MADE ANY REPRESENTATIONS OR WARRANTIES WITH RESPECT TO THIS GUARANTEE.

(a) The Guarantor understands and agrees that LFC may (and hereby authorizes LFC to) take the following actions, at any time or from time to time, without the consent of or notice to the Guarantor, without incurring any responsibility to the Guarantor, and without impairing, reducing, modifying, amending, releasing, discharging or in any way affecting the obligations of the Guarantor or giving the Guarantor any recourse or defense against LFC:

(i) Accept or create new, modify, amend, accelerate, increase, extend or renew any of the Receivables, the Purchase Agreement, the Obligations, the terms thereof or any security therefor, and this Guarantee will apply to the Receivables, the Purchase Agreement, and the Obligations as so accepted, created, modified, amended, accelerated, increased, extended or renewed;

(ii) Change the manner, place or terms of payment of the Receivables, the Purchase Agreement or the Obligations, release, surrender, substitute, settle or compromise, or otherwise alter or modify all or any of the Receivables, the Purchase Agreement or the Obligations or any security therefor, any person liable thereon, including any endorsers, accommodation parties or guarantors, or any liability incurred directly or indirectly in respect thereof or in connection with this Guarantee;

3



(iii) Subordinate the payment of all or any part of the Obligations or any security therefor to the payment of or security for any other liability (whether due or not) of any Debtor to its creditors, including LFC;

(iv) Exercise or refrain from exercising any rights or remedies against any Debtor or otherwise act or refrain from acting or take or fail to take any action of any type whatsoever, and generally deal with each Debtor, any endorser, accommodator, or other person, any indebtedness of any Debtor to LFC, or any security for any such indebtedness or obligation, as LFC sees fit;

(v) Consent to or waive any breach of any act, omission or default, or reinstate following a default, under any Receivable or the Purchase Agreement in accordance with the terms thereof;

(vi) Release from liability any Debtor or any other person or grant any other indulgence, concession or compromise with respect to all or any part of any of the Obligations;

(vii) Apply any sums by whomsoever paid or howsoever realized to any Obligations or other liabilities of any Debtor to LFC regardless of what Obligations, liability or liabilities remain unpaid, provided that payments by the Guarantor pursuant to this Guarantee shall be applied to the Obligations or its obligations or liabilities hereunder, but in such order as LFC may determine; or

(viii) Fail to record or file against or possess any collateral or property or person whatsoever, or to perfect or protect any lien or encumbrance, or sell, exchange, release, surrender, purchase, foreclose, realize upon, refuse to realize upon or otherwise deal with in any manner or order any property or person at any time securing or guaranteeing the Obligations or liabilities incurred directly or indirectly in respect thereof or in connection with this Guarantee or the Obligations.

(b) The Guarantor understands and agrees that its obligations under this Guarantee, and LFC's rights to enforce this Guarantee, shall not in any way be affected, diminished or impaired by the following actions:

(i) Any voluntary or involuntary insolvency, bankruptcy, liquidation, reorganization, readjustment, composition, death, dissolution, winding up, assignment for the benefit of creditors, receivership or trusteeship involving Seller or any of its assets, the Guarantor, any of their respective affiliates or any other person liable in respect of the Obligations as an obligor, endorser, guarantor, pledgor or otherwise;

(ii) Any merger, consolidation, or sale of all or substantially all of the assets, or of a controlling interest in, Seller, the Guarantor, any of their respective affiliates or any other person liable in respect of the Obligations as an obligor, endorser, guarantor, pledgor or otherwise;

(iii) The settlement by LFC with any Debtor, or the release or compromise by LFC of any claims against Seller or the Guarantor; or

(iv) The existence of any other circumstances which might constitute a legal or equitable discharge of a surety or guarantor under applicable law.

(c) <u>Waiver of Claims and Set-Offs</u>. With respect to all Obligations and any other liabilities or obligations hereunder, the Guarantor hereby waives and agrees not to assert or take advantage of any of the following:

4



(i) Any right to require LFC to proceed against any Debtor or any other person or to resort to, proceed against or exhaust any security obtained from any Debtor or any other person at any time or to pursue any other remedy in its power before proceeding against any security obtained from the Guarantor;

(ii) The defense of the statute of limitations in any action hereunder or for the collection of any indebtedness or the performance of any Obligation;

(iii) Any defense that may arise by reason of the incapacity, lack of authority, death or disability of, insolvency or bankruptcy of any Debtor or any other person, or revocation, illegibility or unenforceability hereof or of any of the Obligations or any Receivable or the Purchase Agreement, or the failure of LFC to file or enforce a claim against the estate (either in administration, bankruptcy, or any other proceeding) of any Debtor or any other person;

(iv) Demand, diligence presentment, protest, notice of dishonor, nonpayment or default, suit or taking of any action and notice of any other kind to any person, including, without limiting the generality of the foregoing, notice of acceptance of this Guarantee and notice of liability to which may apply, notice under the Uniform Commercial Code of any jurisdiction, and notice of the existence, creation or incurring of any new or additional indebtedness or obligation or of any action or non-action on the part of any Debtor, LFC, any endorser or guarantor under any instrument, or creditor of any Debtor or any other person whomsoever, in connection with any Obligation or evidence of indebtedness or in connection with any Obligation or any security therefor;

(v) All rights and defenses arising out of an election of remedies by LFC, even though that election of remedies, such as but not limited to a non-judicial foreclosure under the Uniform Commercial Code with respect to security for any Obligations, has destroyed or otherwise impaired, the Guarantor's rights (including rights of subrogation and reimbursement against any Debtor or recourse against any Debtor or any other person or any property;

(vi) Any right to be informed by LFC or any other person of the financial condition of any Debtor of the Obligations or any change therein or any other circumstances bearing upon the risk of nonpayment or nonperformance of the Obligations, or any duty on the part of LFC to disclose to the Guarantor or any other person any facts LFC may now or hereafter know about any Debtor or any other person or the Obligations or any security therefor, regardless of whether LFC knows or has reason to believe that any such facts materially increase the risk beyond that which the Guarantor intends to assume or knows or has reason to believe that such facts are unknown to the Guarantor or has a reasonable opportunity to communicate such facts to the Guarantor, it being understood and agreed that the Guarantor represents, acknowledges and agrees that the Guarantor has the ability and assumes the responsibility for keeping informed of the financial condition of each Debtor and of other circumstances affecting such nonpayment and nonperformance risks and the Guarantor is fully responsible for being and keeping informed of the financial condition of the Debtors and of all circumstances bearing on the risk of nonpayment or nonperformance of any Obligations; and

(vii) Any and all surety defenses, including any defense based on lack of due diligence by LFC in collection, protection or realization upon any collateral.

(d) <u>Waiver of Deficiency: Appraisement, Etc</u>. The Guarantor hereby expressly waives: (i) any defense to the recovery of a deficiency against any Debtor after any non-judicial sale of collateral under any mortgage or security agreement, notwithstanding that such sale may result in a loss by a Guarantor of the right to recover the deficiency from any Debtor, (ii) any appraisement,

5



valuation, stay, extension, moratorium redemption or similar law or similar rights for marshalling; and (iii) the benefit of all principles or provisions of law, statutory or otherwise, which are or might be in conflict with the terms of this Guarantee, and agrees that the obligations of the Guarantor shall not be affected by any circumstances, whether or not referred to in this Guarantee, which might otherwise constitute a legal or equitable discharge of guarantors. Without limiting the generality of any of the foregoing, the Guarantor hereby waives any right to be reimbursed by any Debtor for any payment of the Obligations made directly or indirectly by the Guarantor or from any property of the Guarantor, whether arising by way of any statutory, contractual or other right of subrogation, contribution, indemnification or otherwise. Without limiting the foregoing, the Guarantor understands that in the absence of the waivers made in this paragraph 3, the Guarantor might have a defense against an action by LFC to recover a deficiency from the Guarantor following a non-judicial foreclosure sale of real property or other collateral securing the Obligations, and the Guarantor is specifically waiving those defenses and all other defenses. The Guarantor expressly agrees to remain liable for any deficiency remaining after foreclosure of any mortgage or security interest securing any of the Obligations, whether or not the liability of any Debtor with respect to any of the Obligations for such deficiency is discharged pursuant to statute or judicial decision.

4. <u>WAIVER OF JURY TRIAL; SUBMISSION TO JURISDICTION</u>. GUARANTOR HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY ACTION, SUIT, COUNTERCLAIM OR OTHER LITIGATION OR OTHER PROCEEDING RELATING TO OR ARISING DIRECTLY OR INDIRECTLY OUT OF, UNDER OR IN CONECTION WITH THIS GUARANTEE, THE PURCHASE AGREEMENT, ANY OTHER PURCHASE DOCUMENT OR ANY OF THE TRANSACTIONS CONTEMPLATED HEREUNDER OR THEREUNDER. THE GUARANTOR COVENANTS AND AGREES NOT TO SEEK TO CONSOLIDATE ANY SUCH ACTION, SUIT, COUNTERCLAIM OR OTHER LITIGATION OR PROCEEDING IN WHICH A JURY TRIAL HAS BEEN WAIVED WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT OR HAS NOT BEEN WAIVED. GUARANTOR HEREBY IRREVOCABLY AND UNCONDITIONALLY (i) SUBMITS FOR ITSELF AND ITS PROPERTY IN ANY LEGAL ACTION OR PROCEEDING RELATING TO OR ARISING OUT OF THIS GUARANTEE, THE PURCHASE AGREEMENT OR ANY OTHER PURCHASE DOCUMENT, OR THE CONDUCT OF ANY PARTY HERETO OR THERETO, TO THE NONEXCLUSIVE GENERAL JURISDICTION OF THE COURTS OF THE COMMONWEALTH OF MASSACHUSETTS, THE COURTS OF THE UNITED STATES OF AMERICA FOR THE WESTERN DISTRICT OF MASSACHUSETTS, AND ANY APPELLATE COURTS FROM ANY THEREOF, (ii) CONSENTS THAT ANY SUCH ACTION OR PROCEEDING MAY BE BROUGHT IN SUCH COURTS AND WAIVES TO THE FULLEST EXTENT PERMITTED BY LAW ANY OBJECTION THAT IT MAY NOW OR HEREAFTER HAVE TO THE VENUE OF ANY SUCH ACTION OR PROCEEDING IN ANY SUCH COURT OR THAT SUCH ACTION OR PROCEEDING WAS BROUGHT IN AN INCONVENIENT COURT AND AGREES NOT TO PLEAD THE SAME, (iii) AGREES THAT SERVICE OF PROCESS IN ANY SUCH ACTION OR PROCEEDING MAY BE EFFECTED BY MAILING A COPY THEREOF BY REGISTERED OR CERTIFIED MAIL, POSTAGE PREPAID, TO GUARANTOR AT ITS ADDRESS SET FORTH ABOVE AND (iv) AGREES NOTHING HEREIN SHALL AFFECT THE RIGHT TO EFFECT SERVICE OF PROCESS IN ANY OTHER MANNER PERMITTED BY LAW OR SHALL LIMIT THE RIGHT TO SUE IN ANY OTHER JURISDICTION.

5. <u>Miscellaneous</u>.

(a) <u>Payment of Expenses</u>. The Guarantor hereby agrees to pay for all costs and expenses of LFC arising in connection with this Guarantee, including without limitation, the administration and



enforcement of, or preservation of rights under this Guarantee (including without limitation, all fees and expenses of counsel for LFC and all costs of collection, and all other costs and expenses associated with court and/or administrative proceedings through the appellate level, incurred by reason of any action, suit, proceeding, hearing, motion or application before any court or administrative body in which LFC may be or become a party by reason of this Guarantee, including, but not limited to, bankruptcy and administrative proceedings, as well as any other of the foregoing where a proof of claim is by law required to be filed, or in which it becomes necessary to defend or uphold the terms hereof (the "Costs"), in the event that (i) there shall occur any default under this Guarantee; (ii) LFC is made party to any litigation merely because of the existence of this Guarantee; (iii) it becomes necessary, by reason of acts of or omissions of the Guarantor for LFC to seek the advice of counsel with respect to this Guarantee; or (iv) it becomes necessary for LFC to seek the advice of or retain counsel by reason of any request of the Guarantor. Said Costs shall be paid in addition to the amounts guaranteed in accordance with the provisions hereof.

(b) <u>Waiver of Notice of Acceptance</u>. Notice of acceptance of this Guarantee is hereby waived.

(c) <u>Further Assurances</u>. The Guarantor agrees at any time and from time to time, at the Guarantor's sole cost and expense, to obtain, procure, execute and deliver, file and affix or cause to be obtained, procured, executed, delivered, filed and affixed such further agreements, instruments, documents, powers (including powers of attorney) and information, and to do or cause to be done all such further acts and things (including the execution, delivery and filing of financing statements, payment of filing fees and transfer, gains and recording taxes) and do and cause to be done all such other acts as LFC may reasonably request, from time to time, in its sole discretion.

(d) <u>Term; Survival</u>. Subject to paragraph 2(b) hereof, this Guarantee is in full force and effect on the date hereof and shall continue until the date on which all Obligations have been indefeasibly paid or satisfied in full. All representations, warranties, agreements and covenants contained in this Guarantee shall survive the execution and delivery of this Guarantee, and all of the waivers made and indemnification obligations undertaken by the Guarantor shall survive the termination, discharge or cancellation for any reason of this Guarantee.

(e) <u>Cumulative Rights</u>. All remedies afforded to LFC by reason of this Guarantee are separate and cumulative remedies and it is agreed that no one of such remedies shall be deemed to be in exclusion of any other remedies available to LFC and shall not in any manner limit or prejudice any other legal or equitable remedies which LFC may have. The rights, powers and remedies given to LFC by this Guarantee shall be in addition to all rights, powers and remedies given to LFC by virtue of any statue or rule of law and all such rights, powers and remedies are cumulative and not alternative, and may be exercised and enforced successively or concurrently. Any forbearance or failure or delay by LFC in exercising any right, power or remedy hereunder shall not be deemed to be a waiver of such right, power or remedy, and any single or partial exercise of any right, power or remedy hereunder shall not preclude the further exercise thereof, and every right, power and remedy of LFC hereunder shall continue in full force and effect until such right, power or remedy is specifically waived by an instrument in writing executed by LFC.

(f) <u>Parties Bound</u>. This Guarantee shall be binding upon the Guarantor and its successors or assigns and shall inure to the benefit of LFC and all future holders of the Receivables and their respective successors and assigns, provided that Guarantor may not assign, transfer or delegate any of its rights or duties hereunder.

7



(g) <u>Entire Agreement</u>. This Guarantee represents the entire understanding between the Guarantor and LFC with respect to the subject matter hereof.

(h) <u>Severability</u>. Any provision of this Guarantee which is prohibited, deemed invalid or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition, invalidity or unenforceability without invalidating the remaining provisions hereof, and any such prohibition, invalidity or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

(i) <u>No Oral Modification</u>. This Guarantee may not be extended, amended, waived, changed, modified or terminated orally, but only by an agreement in writing signed by the parties hereto.

(j) <u>Governing Law</u>. This Guarantee, and the rights and obligations of the parties hereunder, shall be governed by, and construed and interpreted in accordance with the laws of the Commonwealth of Massachusetts, without giving effect to any Massachusetts law provisions which might otherwise make the laws of different jurisdiction govern or apply.

(k) <u>Headings</u>. Section headings used herein are for convenience only and shall not affect the construction of this Guarantee.

IN WITNESS WHEREOF, the Guarantor has duly executed this Guarantee as of the date first above written.

_____
Betty M. Brewer

STATE OF Virginia )
                 )  :ss.
COUNTY OF Suffolk )

I certify that on May 21, 2001, Betty M. Brewer personally appeared before me and acknowledged under oath to my satisfaction she is the person who signed above.

[NOTARIAL SEAL REQUIRED]

Notary Public in and for said State

_____
Notary Public
My commission expires: 12/34/03

8

