IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

| | |
|---|---|
| Litchfield Financial Corporation, *et al.*, ) | |
| ) | |
| ***Plaintiffs,*** ) | |
| v. ) | No. 04-CV-30076-KPN |
| ) | |
| Buyers Source Real Estate Group, *et al.*, ) | |
| ) | |
| ***Defendants.*** ) | |

### PLAINTIFFS' SURREPLY TO DEFENDANT
### WILLIAM GREGORY SEIGLER'S MOTION TO DISMISS

In assenting to Mr. Seigler's counsel's request to file an Amendment to Facts and Limited Reply (the "Reply"), Plaintiffs agreed to let Mr. Seigler correct the misstatement in his Motion to Dismiss that he had never sent correspondence to Massachusetts. Mr. Seigler takes a mere two paragraphs to correct this admitted error and devotes the balance of his 13 page Reply to attempting *"in a limited way"* (emphasis in original motion) to counter Plaintiffs' arguments that this Court has personal jurisdiction over Mr. Seigler.

Yet, Mr. Seigler's Reply cannot alter these fundamental facts: Mr. Seigler intentionally directed legal opinion letters to Plaintiffs in Massachusetts; he invited Plaintiffs to rely upon his representations in those letters; and Plaintiffs have alleged that they suffered injury in Massachusetts as a result of that reliance.

Even a cursory reading of the applicable case law demonstrates that Plaintiffs have established that this Court should exercise personal jurisdiction over Mr. Seigler pursuant to Sections 3(a) and 3(c) of the Massachusetts Long-Arm statute, and can exercise jurisdiction in a manner consistent with the constitutional due process requirements.

I.  **MR. SEIGLER MISUNDERSTANDS THE <u>MURPHY</u> DECISION IN ANALYZING JURISDICTION PURSUANT TO SECTION 3(c)**

Mr. Seigler's Reply focuses on his assertion that <u>Murphy v. Erwing-Wasey, Inc.</u>, 460 F.2d 661 (1st Cir. 1972), creates a distinction between the treatment of intentional and negligent torts in determining whether there is personal jurisdiction under Section 3(c).

Mr. Seigler misunderstands the concept of intent in <u>Murphy</u>. For purposes of the Section 3(c) analysis, <u>Murphy</u> turns not on whether the act in question was an intentional or negligent misrepresentation, but on whether the tort of misrepresentation (be it intentional or negligent) was an act *intentionally directed at and relied upon in Massachusetts*.

In <u>Murphy</u>, the First Circuit stated at the outset that "[t]he question we must decide is whether the delivery in Massachusetts by mail or telephone of a false statement originating outside the state, followed by reliance in Massachusetts, is an 'act ... within this commonwealth.'" <u>Id.</u> at 664 (quoting the language of section 3(c)). The Court answered that question in the affirmative, with a holding that has been reaffirmed repeatedly since that time, "[w]here a defendant *knowingly sends* into a state a false statement, intending that it should there be relied upon to the injury of a resident of that state, he has, for jurisdictional purposes, acted within that state." <u>Id.</u> (emphasis added); <u>Ealing Corp. v. Harrods, Ltd.</u>, 790 F.2d 978, 982 (1st Cir. 1986); <u>JMTR Enters., L.L.C. v. Duchin</u>, 42 F. Supp. 2d 87, 97 (D. Mass. 1999). <u>Murphy</u> clearly focuses on any act intentionally directed at Massachusetts, not an intentional fraud.

<u>Murphy</u>'s interpretation of the scope of jurisdiction under Section 3(c) has been repeatedly recognized and affirmed in subsequent opinions by the First Circuit and Massachusetts courts. Indeed, the concept of an intent to cause an act in Massachusetts is clear in reading <u>Ticketmaster-New York, Inc. v. Alioto</u>, 26 F.3d 201 (1st Cir. 1994), in its full context. There, the First Circuit described that in <u>Murphy</u>, "we ruled that an allegedly tortious act

2

committed outside the borders of Massachusetts, purposefully directed at the state and intended to cause injury there, could constitute an in-forum act within the meaning of section 3(c)." Id. at 205. Alioto does not limit Murphy to a distinction between negligent and intentional torts; rather, it refers to a tortious act intentionally directed at Massachusetts.

Mr. Seigler's most recent Affidavit affirms that he intentionally addressed "a number of letters on my professional letterhead [ ] to Land Finance Company in Williamstown, MA." Seigler Affidavit ¶2. Mr. Seigler expressly invited Plaintiffs to rely on his representations in two of the letters he sent to Plaintiffs when he wrote the following language:

> This opinion is for the benefit of and may be relied upon by Land Finance
> Company and its successors and assigns.

Seigler Letters, Exhibits to Green Declaration, Exhibit A to Plaintiffs' Memorandum in Opposition ("Plaintiffs' Opposition"). Furthermore, as Plaintiffs have pled, Mr. Seigler "knew that the legal opinions were to be incorporated into the Revolving Credit agreements, and would be relied upon by Litchfield." Complaint ¶ 37. Plaintiffs relied upon these communications and suffered injury as a result. See generally Plaintiffs' Opposition at 2-4 (citing to various paragraphs of the Complaint and the Declaration of Paul Green).

Indeed, to follow Mr. Seigler's line of reasoning would be to insert language into Section 3(c) which does not exist. The specific language of Section 3(c) refers to "causing tortious injury by an act or omission in this commonwealth." There is no modifier in the statute to the word "tortious" indicating that it applies only to intentional tortious acts. This restrictive reading of Section 3(c) would be inconsistent with the statutory language, and with case law holding that, as this Court has repeatedly pointed out, "the literal requirements of subsection 3(c) are easily satisfied." See The Giving Back Fund, Inc. v. Steverson, Civ. Action No. 02-10446-

3

RWZ, 2002 U.S. Dist. LEXIS 13092 (D. Mass. July 12, 2002) (quoting Landmark Bank v. Machera, 736 F. Supp. 375, 383 (D. Mass. 1990)).[1]

Furthermore, to read Murphy as creating this artificial distinction between negligent and intentional misrepresentations would force a court to order discovery whenever a party raises a personal jurisdiction defense in response to the pleading of a negligent tort. It is possible that, upon a review of all available evidence, Mr. Seigler's false statements in the opinion letters may constitute intentional misrepresentations. Plaintiffs did not have sufficient evidence to conclude so at the time of the filing of the Complaint and accordingly did not plead a cause of intentional misrepresentation. However, if the Court were to accept Mr. Seigler's interpretation of Section 3(c), then, at the very least, it would appear the Court would have to permit discovery to determine if Mr. Seigler's actions constitute intentional misrepresentations. There is no indication from the Massachusetts statute or the case law that this type of investigation is necessary or even contemplated in considering a personal jurisdiction motion.

Instead of adopting this approach, the critical question for the Court is whether Mr. Seigler's conduct in sending a misrepresentation to a Massachusetts resident that causes injury in Massachusetts to that resident constitutes an act in the Commonwealth. Murphy and controlling First Circuit and Massachusetts case law cited to in Plaintiffs' Opposition establish that it does. Mr. Seigler misreads the analytical framework of Murphy and its progeny. His efforts to bolster his interpretation of that decision based on non-controlling precedent from outside the First Circuit and Massachusetts fails.

---

[1] Mr. Seigler again cites to Fern v. Immergut, 55 Mass. App. Ct. 577, 773 N.E.2d 972 (2002), However, as pointed out in Plaintiffs' Opposition, the Fern court concluded that the legal opinion letters, received in New York, had only a peripheral relationship to the jurisdictional contacts. Id. at 582, 773 N.E.2d at 976. Here, by contrast, the opinion letters received in Massachusetts are directly related to the jurisdictional contacts.

4

## II. PLAINTIFFS HAVE ESTABLISHED THAT MR. SEIGLER TRANSACTED BUSINESS UNDER SECTION 3(a)

In addition, Plaintiffs can establish personal jurisdiction in Massachusetts over Mr. Seigler pursuant to Section 3(a) because the claims alleged against Mr. Seigler "arise from" his "transacting any business" in Massachusetts.[2] Mr. Seigler opens his argument on the "arising from" prong by claiming that Plaintiffs' "claims do not arise from the sending of letters to Massachusetts" but rather from Mr. Seigler's actions in South Carolina.

Mr. Seigler's assertion ignores the facts of Plaintiffs' Complaint. Plaintiffs specifically pled that the legal opinion letters authored and sent by Mr. Seigler to Land FC in Massachusetts were integral parts of the financial transactions that were completed in Massachusetts. Complaint ¶¶ 36, 37, 39-41. It is Mr. Seigler's misrepresentations and legal malpractice contained in those letters and knowingly directed to Massachusetts that form the basis of Plaintiffs' Complaint against Mr. Seigler. Complaint ¶¶ 61-66, 78-80. Plaintiffs did not suffer the consequences of Mr. Seigler's actions until Plaintiffs relied upon Mr. Seigler's representations in Massachusetts to complete the transactions. Accordingly, Plaintiffs' claims would not have occurred "but for" the letters that Mr. Seigler sent to Massachusetts. Tatro v. Manor Care, Inc., 416 Mass. 763, 770, 625 N.E.2d 549, 553 (1994).

---

[2] Mr. Seigler claims in a footnote that all the cases discussed by Plaintiffs in their Opposition on the Section 3(a) point are distinguishable, inapposite, or support Mr. Seigler's position. Mr. Seigler offers no support for this bald assertion beyond a brief parenthetical behind each case which seldom provides the requisite support. For example, Mr. Seigler describes Hahn v. Vermont Law Sch., 698 F.2d 48 (1st Cir. 1983), as "holding that 'transacting any business' standard met where out of state law school sent application for admission and notice of acceptance to plaintiff in Massachusetts." It is difficult to see how this supports Mr. Seigler's argument. In fact, Hahn supports Plaintiffs' position because the business transacted in this case, the sending of the opinion letters that were an integral part of financial transactions, relates directly to the tortious conduct complained of. See id. at 51.

Mr. Seigler's argument on the "transacting business" prong again places great emphasis on the fact that the opinion letters concern property located in South Carolina. As Plaintiffs discussed in their Opposition, Mr. Seigler's assertions are irrelevant for purposes of the jurisdictional analysis.[3] The effect of the misrepresentations occurred not in South Carolina, but in Massachusetts where Plaintiffs received and relied upon the opinion letters. As noted, Mr. Seigler's letters were integral parts of financial transactions, and the transactions would not have been completed save for the delivery of the opinion letters representing that the Buyer's Source entities were in compliance with federal and state law. Complaint ¶¶ 36, 37, 39-41.

In his Reply, Mr. Seigler relies upon Lyle Richards Int'l v. Ashworth, Inc., 132 F.3d 111 (1st Cir. 1997). There, the Court appears to have considered determinative the fact that performance required under the contractual agreement in question was mostly to occur outside Massachusetts and the forum contacts were incidental to the Agreement. Id. at 113.[4] This is obviously distinguishable from the facts pled in this case, where Plaintiffs have alleged that the three opinion letters provided by Mr. Seigler in Massachusetts were necessary parts of the financial transactions at issue. Complaint ¶¶ 37, 39-41. The jurisdictional contacts relate to the letters that form the basis of the transacting business requirement.

---

[3] See Ealing Corp. v. Harrods Ltd., 790 F.2d 978, 982 (1st Cir. 1986). The First Circuit rejected an argument by the defendant in the context of a Section 3(c) claim that any misrepresentations if they occurred did so outside Massachusetts on the grounds that "[t]his argument overlooks the fact that we are dealing with a dismissal on the pleadings under Federal Rule of Civil Procedure 12(b)(2). [Defendants'] contentions go to the merits. [Plaintiff's] affidavits and exhibits are sufficiently specific to sustain jurisdiction ... and withstand a motion to dismiss on the pleadings." This point applies with equal force here. It is the pleadings and affidavits of the Plaintiffs that must be accepted as true at the Motion to Dismiss stage.

[4] In addition, Mr. Seigler claims that Lyle supports an argument that solicitation of business is critical to the "transacting business" test. That claim is wrong: It is not necessary for a court to find that there was solicitation to conclude that business was transacted sufficient to allow the exercise of jurisdiction pursuant to Section 3(a). Hahn, 698 F.2d at 50-51.

Accordingly, as has been repeatedly held by the First Circuit, the fact that there were only a limited number of forum contacts still supports Plaintiffs' position that business was transacted. See, e.g., Bond Leather Co. v. Q.T. Shoe Mfg. Co, 764 F.2d 928, 932 (1st Cir. 1985) (out-of-state defendant's mailing four letters and receiving at least one telephone call from plaintiff in Massachusetts in the course of negotiating a guaranty satisfied the transacting business requirement); Ealing Corp., 790 F.2d at 983 (transacting business requirement of § 3(a) met by sending of one telex to plaintiff in Massachusetts).

### III. ASSERTION OF PERSONAL JURISDICTION OVER MR. SEIGLER IS CONSISTENT WITH THE CONSTITUTIONAL DUE PROCESS REQUIREMENTS

#### a. Plaintiffs' Claims "Relate" To Mr. Seigler's Contacts With Massachusetts

To determine whether a claim is "related" under the constitutional analysis, "the action must directly arise out of the specific contacts between the defendant and the forum state." Sawtelle v. Farrell, 70 F.3d 1381, 1389 (1st Cir. 1995). Mr. Seigler contends that the claim is not related based on language in Sawtelle. But Sawtelle simply does not prove his point. In that case, the First Circuit concluded, as quoted by Mr. Seigler, that, "the communications sent into [the forum state] were ancillary to the allegedly negligent non-forum activities ..." and that those communications were the only relevant forum contacts. Id. at 1390.

Here, Plaintiffs' claims of negligent misrepresentation, legal malpractice and subsequent injury, arise directly from the "communications," the three opinion letters, sent to the forum state, Massachusetts, by Mr. Seigler. Plaintiffs' claims are not ancillary to the forum contacts as was the case in Sawtelle; rather, they relate directly to Mr. Seigler's contacts with Massachusetts.

### b. Purposeful Availment

Mr. Seigler bases the argument that he has not purposefully availed himself of Massachusetts in his Reply on the claim that his contacts with Massachusetts are "random, isolated, and fortuitous." Reply, at 9. It is, of course, critical to the purposeful availment analysis "that the defendant's contacts with the forum were deliberate and not fortuitous." Good Hope Indus., Inc. v. Ryder Scott Co., 378 Mass. 1, 11, 389 N.E.2d 76, 82 (1979).

Yet again, the language of Mr. Seigler's legal brief does not comport with the factual assertions of his affidavit. Mr. Seigler admits in his affidavit that "I signed a number of letters on my professional letterhead addressed to Land Finance Company in Williamstown, MA." Affidavit ¶ 2. He admits that these "letters were physically deposited for mailing by my office personnel or picked up for delivery at my office." Affidavit ¶ 3. He admits to sending correspondence to Massachusetts: "[i]t would not therefore be correct to state that I never sent correspondence to the Commonwealth of Massachusetts in connection with the legal work [performed]." Affidavit ¶ 4. It is difficult to understand how Mr. Seigler can attempt to dismiss such admitted, deliberate conduct in preparing and directing letters to Massachusetts as merely "fortuitous" or "random" or "isolated." Mr. Seigler's affidavit establishes that his contacts with Massachusetts were deliberate and accordingly he did purposefully avail himself of the Massachusetts forum. Good Hope, 378 Mass. at 11; 389 N.E.2d at 82.[5]

Mr. Seigler also attempts to rely on his misinterpretation of Murphy that, for purposes of the constitutional analysis, only a reckless or intentional misrepresentation evidences sufficient

---

[5] These facts regarding Mr. Seigler's actions also distinguish the case from Phillips Exeter Academy v. Howard Phillips Fund, Inc., 196 F.3d 284 (1st Cir. 1999), cited by Mr. Seigler. There, the out-of-state defendant received a large bequest which required it to make annual payments to a New Hampshire resident. There were no other forum contacts. Here, by contrast, Mr. Seigler purposefully sent letters to Massachusetts and invited Plaintiffs to rely upon his representations contained therein.

8

intent to constitute a purposeful availment of the forum state. As outlined previously, it is the intent to establish contact with the forum state that is significant, not the categorization of the misrepresentation as negligent, reckless, or intentional. Mr. Seigler's deliberate sending of letters to Massachusetts and his invitation to Plaintiffs to rely on the letters establishes that he has purposefully availed himself of the Massachusetts forum.

### c. Reasonableness

Finally, Mr. Seigler fails to answer the test that Plaintiffs cited in their Opposition as to why it is reasonable to assert personal jurisdiction over him.[6] Instead, Mr. Seigler seeks to rely on a plea of penury with regard to the potential time and expense of defending this action. But any time and expense Mr. Seigler may expend is minimal compared with the expense and time suffered by Plaintiffs as a result of participating in financial transactions in which they relied upon letters by Mr. Seigler that turned out to be false. Complaint ¶¶ 35, 37, 39-41.

Mr. Seigler does not address the remaining "gestalt" factors that necessarily must inform this Court's reasonableness analysis. Sawtelle, 70 F.3d at 1394 As discussed in greater detail in Plaintiffs' Opposition, these weigh in Plaintiffs' favor. Plaintiffs' Opposition, at 13-15. This is a case in which Plaintiffs have pled that they suffered injury within the Commonwealth as a result of Mr. Seigler's false statements directed to and received in the Commonwealth. A Massachusetts court has a "manifest interest" in providing a forum for its citizens to litigate this case. Burger King v. Rudewicz, 471 U.S. 462, 473 (1985). Plaintiffs have brought a comprehensive action against all parties. They have an interest in obtaining convenient and

---

[6] "[I]s it reasonable for an attorney to appear before a court in a forum where he (1) delivered false statements in three separate legal opinion letters to Plaintiffs in that forum, (2) acknowledged in those letters that the opinions relate to transactions involving Plaintiffs in that forum, (3) acknowledged in the letters that Plaintiffs would rely upon them, and (4) Plaintiffs have been damaged by the false statements in the forum?" Plaintiffs' Opposition, pp. 12-13.

9

effective relief, and their choice of forum should be afforded a degree of deference. <u>Foster-Miller, Inc. v. Babcock & Wilcox Can.</u>, 46 F.3d 138, 151 (1st Cir. 1995) (internal citations omitted). The comprehensive nature of the action in this Court also suggests that it would provide the most effective resolution of this controversy. Finally, as a matter of public policy, it would be unreasonable for a defendant such as Mr. Seigler to escape the jurisdiction of Massachusetts where he has directed legal advice to the Commonwealth, invited Plaintiffs to rely on that advice, and where Plaintiffs suffered injury as a result of that reliance. Mr. Seigler's own opinion letters and his most recent affidavit affirm that he has sufficient contacts with Massachusetts to defend an action in this court.

IV. **CONCLUSION**

For the foregoing reasons, Plaintiffs request that this Court deny Defendant William Gregory Seigler's Motion to Dismiss him from the lawsuit and deny any other relief sought in that motion.

Dated: October __, 2004

Respectfully submitted,
Counsel for Plaintiffs

LITCHFIELD FINANCIAL COMPANY
TEXTRON FINANCIAL CORPORATION
AND LAND FINANCE COMPANY

By: _____

Jeffrey L. McCormick, Esq. of
Robinson Donovan, P.C.
1500 Main Street, Suite 1600
Springfield, Massachusetts 01115
Phone (413) 732-2301   Fax (413) 785-4658
BBO No. 329740

Counsel for Plaintiffs

Of Counsel:
Christopher F. Dugan
James E. Anklam
Jeremy P. Evans
Paul, Hastings, Janofsky & Walker, LLP
1299 Pennsylvania Avenue, NW, 10th Floor
Washington, DC 20004-2400
202/508-9500
202/508-9700 (fax)

**CERTIFICATE OF SERVICE**

I hereby certify that on this day a true copy of the above document was served upon the attorney of record for each party by mail/by hand.

Date: 10/12/04    _____

WDC/287574.3

11