UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LITCHFIELD FINANCIAL<br>CORPORATION, et al., )<br>Plaintiffs )<br>)<br>v. )<br>)<br>)<br>BUYERS SOURCE REAL ESTATE )<br>GROUP, et al., )<br>Defendants ) | Civil Action No. 04-30076-MAP |

REPORT AND RECOMMENDATION WITH REGARD TO
DEFENDANT SEIGLER'S MOTION TO DISMISS (Document No. 25)
April 13, 2005

NEIMAN, U.S.M.J.

South Carolina attorney William Gregory Seigler ("Seigler"), one of a host of defendants in this complex land financing dispute, has moved to dismiss the claims against him for lack of personal jurisdiction among other grounds. Seigler's motion to dismiss has been referred to this court for a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B). For the reasons described below, the court believes that personal jurisdiction over Seigler is lacking and, therefore, will recommend that his motion be allowed.

I. BACKGROUND

The following facts come mainly from the complaint. However, since personal jurisdiction is at issue, the court has also looked at other documents supplied by the parties. *See Boit v. Gar-Tec Prods., Inc.*, 967 F.2d 671, 675, 681-82 (1st Cir. 1992)

(when faced with motion to dismiss based on lack of personal jurisdiction, a plaintiff must go beyond the pleadings and affirmatively prove that sufficient contacts exist between the defendant and the foreign state) (citations omitted); *Callahan v. Harvest Bd. Int'l, Inc.*, 138 F. Supp. 2d 147, 152-53 (D. Mass. 2001) ("The consideration of materials outside the complaint is appropriate in ruling on a motion to dismiss for lack of personal jurisdiction.") (citing cases).

The lead plaintiff and "principal victim" in this action is Litchfield Financial Corporation ("Litchfield"), a Massachusetts company which "provides financing to creditworthy borrowers for assets not typically financed by banks." (Complaint ¶¶ 3, 35.) The suit is also brought by Litchfield's parent, Textron Financial Corporation ("Textron"), and its subsidiary, Land Finance Company ("Land Finance"). (*Id.* ¶¶ 4, 5.) While both Textron and Land Finance are incorporated in Delaware, Land Finance maintained the same principal place of business as Litchfield in Williamstown, Massachusetts, during the time periods at issue here. (Declaration of Paul F. Green ("Green Decl."), attached to Plaintiffs' Brief (Document No. 32).) Litchfield, Textron and Land Finance will hereinafter be referred to collectively as "Plaintiffs."

Between 1999 and 2001, Plaintiffs entered into a series of complex financial transactions through which they provided financing to a number of entities and individuals from Virginia, hereinafter referred to collectively as the "Buyers Source Defendants." (Complaint ¶¶ 7-18, 33-34.)[1] According to the complaint, the Buyers

---

[1] The Buyers Source Defendants consist of the following entities and individuals: Buyers Source Real Estate Group; Buyers Source Valley Group, LLC; Buyers Source Sugarmill, LLC; Buyers Source Savannah Lakes, LLC; Thomas and

Source Defendants conspired and fraudulently induced Litchfield to enter into purchases or acquisitions of loans for properties sold in Florida, South Carolina and Ohio.  (*Id.* ¶ 35.)

Also named as defendants are three attorneys, Stephen Hudgins and John Lumpkin of Newport News, Virginia, as well as Seigler, a solo practitioner in McCormick, South Carolina.  (*Id.* ¶¶ 19-21.)[2]  The attorneys and their firms are alleged to have inaccurately represented to Plaintiffs that certain Buyers Source Defendants were in "full compliance with all applicable federal, state and local laws and regulations" (*id.*), allegations each attorney denies in his answer, (Document Nos. 24, 27, 28).  Only Seigler, however, has filed a motion to dismiss.  (Document No. 25.)

It is undisputed that Seigler prepared three separate opinion letters dated May 21, 2001.  (Complaint ¶¶ 36, 40, 41; Green Decl. ¶ 6.)  All three are addressed to Land Finance at 430 Main Street, Williamstown, Massachusetts, and each concerns the Buyers Source "Savannah" project in South Carolina.  (Green Decl. ¶ 6 and attachments thereto.)  Each letter begins with a declaration that Seigler represents the Buyers Source Defendants associated with the Savannah project and that he has been asked to render an opinion in connection with the transactions that Land Finance proposes to enter into with his clients.  (See attachments to Green Decl.)  Each letter

---

Betty Brewer; Frederick Blake; Susan Gard; Henry Montgomery; Lannie Campbell; and Ronald Ferguson.

[2]  On September 27, 2004, Plaintiffs voluntarily dismissed a fourth attorney, J. Vance Stallings (Hudgins' partner), pursuant to Fed. R. Civ. P. 41(a)(1)(i).  (See Document No. 40.)

then indicates that Seigler is "licensed to practice in South Carolina" and that he expresses "no opinion as to the laws of any state or jurisdiction" other than South Carolina and the United States. (*Id.*) Nonetheless, two of the letters go on to represent, among other matters, that Buyers Source Savannah, LLC, and its operations and business "are in full compliance with all applicable federal, state and local laws and regulations." (*Id.*) All three letters represent that "[t]his opinion is for the benefit of and may be relied upon by Land Finance . . . and its successors and assigns." (*Id.*)

Like the other two defendant attorneys, Seigler is targeted in two of the complaint's six counts, negligent misrepresentation (Count III) and legal malpractice (Count VI).[3] And as indicated, Seigler's opinion that Buyers Source Savannah, LLC, was in compliance with "all applicable federal, state and local laws and regulations" forms the basis of Plaintiffs' claims against him. (Complaint ¶ 22.) In particular, Plaintiffs allege that, had Seigler "performed a proper legal analysis before delivering [his] objective opinions, [he] would have discovered the failure of the Buyers Source entities to comply with federal law and regulations, including the Land Sales Act and regulations thereunder." (*Id.* ¶ 36.)

## II. DISCUSSION

The court believes that Seigler is not subject to personal jurisdiction in this forum. Accordingly, after first discussing a procedural issue regarding Seigler's motion to dismiss, the court will recommend that the motion be allowed.

---

[3] In addition, the complaint alleges that the Buyers Source Defendants are liable for negligent misrepresentation as well as for breach of contract (Count I), fraud (Count II), fraud in the inducement (Count IV) and unjust enrichment (Count V).

4

A.  Posture of Defendant's Motion

The court notes that it was technically improper for Seigler to first answer the complaint and then move to dismiss pursuant to Fed. R. Civ. P. 12(b).[4]  Although Plaintiffs have not argued the point, the court notes that Rule 12(b) motions should be filed "before pleading."  Fed. R. Civ. P. 12(b) (second sentence).  In other words, "[i]f the defendant decides to assert a Rule 12(b) defense by motion, then he must do so before filing the answer."  Charles Alan Wright & Arthur R. Miller, 5C *Federal Practice & Procedure* § 1361 (2005) (citing, *inter alia*, *Gerakaris v. Champagne*, 913 F. Supp. 646, 650 (D. Mass. 1996)).  Nevertheless, Seigler's error is immaterial given that his Rule 12(b) defenses were, at least, mentioned in his answer.  *See id.* (noting that while "[a] strict interpretation of the timing provision's language leads to the conclusion that the district judge must deny any Rule 12(b) motion made after a responsive pleading is interposed as being too late . . ., federal courts have allowed untimely motions if the defense has been previously included in the answer") (citing cases).  *Cf.* Fed. R. Civ. P. 12(c) (providing avenue for defendant to seek judgment on the pleadings "[a]fter the pleadings are closed").  Accordingly, the court turns to the merits of Seigler's personal jurisdiction argument.

A.  Personal Jurisdiction

"When embarking upon the fact-sensitive inquiry of whether a forum may assert personal jurisdiction over a defendant, the court's task is not a rote, mechanical

---

[4]  Seigler filed his answer on August 3, 2004, and an amended answer on August 16, 2004.  He filed the instant motion to dismiss pursuant to subsections (2) and (3) of Rule 12(b) on August 18, 2004.

exercise." *Sawtelle v. Farrell*, 70 F.3d 1381, 1388 (1st Cir. 1995) (citations and internal

quotation marks omitted).  *See also id.* ("Divining personal jurisdiction is more an art

than a science.") (citations and internal quotation marks omitted); *Good Hope Indus.,*

*Inc. v. Ryder Scott Co.*, 389 N.E.2d 76, 78 (Mass. 1979) ("Generally speaking,

'inquiries into whether the exercise of personal jurisdiction is permissible in a particular

case are sensitive to the facts of each case.'") (quoting *Great W. United Corp. v.*

*Kidwell*, 577 F.2d 1256, 1266 (5th Cir. 1978)).  Rather, the court is bound to pursue a

two-part inquiry: (1) whether the plaintiff has demonstrated that the assertion of

jurisdiction is authorized by statute, and, if authorized, (2) whether such assertion

comports with the restraints imposed by the Due Process Clause of the United States

Constitution.  *See Sawtelle*, 70 F.3d at 1387; *Foster-Miller, Inc. v. Babcock & Wilcox*

*Canada*, 46 F.3d 138, 144 (1st Cir. 1995).

    1. Long-Arm Statute Analysis

    With regard to the first part of the inquiry, the law of the forum state applies.

*Sawtelle*, 70 F.3d at 1387.  In relevant part, Massachusetts' long-arm statute

(hereinafter "section 3") provides as follows:

> A court may exercise personal jurisdiction over a person,
> who acts directly or by an agent, as to a cause of action in
> law or equity arising from the person's
>
> > (a) transacting any business in this
> > commonwealth; [or]
> >    . . . .
> >
> > (c) causing tortious injury by an act or omission
> > in this commonwealth.

Mass. Gen. L. ch. 223A, § 3(a), (c).  Following the parties' lead, the court will first

discuss subsection (c) and then analyze subsection (a).[5]

      a.  *Section 3(c)*

Plaintiffs first argue that jurisdiction over Seigler is authorized by section 3(c)

since this is a case "arising from [Seigler]'s . . . causing tortious injury by an act or

omission in this commonwealth."  Mass. Gen. L. ch. 223A, § 3(c).  Unfortunately for

Plaintiffs' cause, the case law does not support this assertion.

As both parties point out, Plaintiffs' section 3(c) argument revolves around the

First Circuit's decision in *Murphy v. Erwin-Wasey, Inc.*, 460 F.2d 661 (1st Cir. 1972).

There, the plaintiff's tort claims were premised on the defendant's mailing a fraudulent

misrepresentation into Massachusetts.  *Id.* at 663, 664.  The First Circuit found

personal jurisdiction over the defendant based on section 3(c).  *Id.* at 663.  "Where a

defendant knowingly sends into a state a false statement, intending that it should there

be relied upon to the injury of a resident of that state," the court explained, "he has for

jurisdictional purposes, acted within that state."  *Id.* at 664.  Subsequent decisions have

followed *Murphy* in similar circumstances.  *See, e.g.*, *Ealing Corp. v. Harrods, Ltd.*, 790

F.2d 978, 982 (1st Cir. 1986); *Whittaker Corp. v. United Aircraft Corp.*, 482 F.2d 1079,

1084 (1st Cir. 1973); *JMTR Enters., LLC v. Duchin*, 42 F. Supp. 2d 87, 97 (D. Mass.

1999); *Burtner v. Burnham*, 430 N.E.2d 1233, 1236-37 (Mass. App. Ct. 1982).

At first blush, *Murphy* seems to support Plaintiffs' section 3(c) position as well.

---

[5]  Plaintiffs make no argument under other parts of section 3.  Accordingly, the court limits itself likewise.

In essence, Plaintiffs claim, Seigler's mailing of documents into Massachusetts constituted "an act or omission in this commonwealth" which caused them "tortious injury."  However, the tort claims in *Murphy* and its progeny were grounded in fraud, deceit, and/or fraudulent misrepresentation.  *See Murphy*, 460 F.2d at 663; *Ealing*, 790 F.2d at 979; *Whittaker Corp.*, 482 F.2d at 1084; *JMTR Enters.*, 42 F. Supp. 2d at 97; *Burtner*, 430 N.E.2d at 1236-37.  And as other courts have recognized, there is a critical distinction for section 3(c) purposes between such "intentional" tort claims and claims based in negligence, as is the situation here.  *See, e.g.*, *Bradley v. Cheleuitte*, 65 F.R.D. 57, 60 (D. Mass. 1974) (noting "crucial" difference between *Murphy* line of cases where defendant's acts "are intentional" and situation where acts "are at most negligent"); *Burtner*, 430 N.E.2d at 1237 (noting "the apparent distinction in the *Murphy* case between intentional acts outside Massachusetts causing a 'tortious injury' within the Commonwealth and negligent acts creating a condition from which damage might later arise"); *Fern v. Immergut*, 773 N.E.2d 972, 975 n.9 (Mass. App. Ct. 2002) (citing *Murphy* and noting that section 3(c) jurisdiction would not lie in legal malpractice cause of action).  *Cf. Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 205 (1st Cir. 1994) (noting that *Murphy* "was decided in the context of fraudulent misrepresentation" and questioning whether it should extend to defamation).  As one circuit court has explained: "The underlying premise of the *Murphy* opinion seems to be that negligent and intentional acts should be treated differently when interpreting statutory language. The *Murphy* court apparently agrees that jurisdiction would not lie had the act with which the court was concerned been negligent."  *Margoles v. Johns*, 483 F.2d 1212,

1219 (D.C. Cir. 1973).  *See also First Act, Inc. v. Brook Mays Music Co.*, 311 F. Supp.

2d 258, 261 n.4 (D. Mass. 2004) (noting that "the First Circuit has subsequently

expressed 'profound reservations' about extending . . . *Murphy* beyond claims for

fraudulent misrepresentation") (quoting *Ticketmaster-New York*, 26 F.3d at 205 n.5);

*Kolikof v. Samuelson*, 488 F. Supp. 881, 883 (D. Mass. 1980) (suggesting that *Murphy*

should be limited to situations where the words the defendant transmits over state lines

"are intended to bring about the injury").

    This distinction between intentional and negligent torts is paramount in the case

at bar as well.  As in *Murphy*, Seigler knowingly sent a statement into Massachusetts.

But, unlike the situation in *Murphy*, there is no evidence, let alone an allegation, that

Seigler *knew* that the statement he sent into Massachusetts was false or that he was

"intending that it should there be relied upon *to the injury of a resident of that state.*"

*Murphy*, 460 F.2d at 664 (emphasis added).  Indeed, Plaintiffs concede that they

lacked evidence of an intentional tort on Seigler's part.  (See Plaintiffs' Surreply at 4

("Plaintiffs did not have sufficient evidence . . .  [to] plead a cause of action of

intentional misrepresentation.").)  It is for that reason, it would appear, that Plaintiffs

pursue claims against Seigler only for malpractice and negligent misrepresentation.

Accordingly, the court believes that personal jurisdiction over Seigler is not authorized

by section 3(c) of the Massachusetts long-arm statute.

    b.  *Section 3(a)*

    Nonetheless, the court agrees with Plaintiffs' alternative argument that personal

jurisdiction over Seigler is authorized by section 3(a).  This is so because, in the court's

9

estimation, the claims against Seigler meet both prongs of section 3(a): they "arise

from" Seigler's "transacting any business in Massachusetts."  Mass. Gen. L. ch. 223A,

§ 3(a).

Section 3(a) is to be construed broadly.  *See Bond Leather Co. v. Q.T. Shoe*

*Mfg. Co.*, 764 F.2d 928, 931 (1st Cir. 1985); *JMTR Enters.*, 42 F. Supp. 2d at 94.  A

defendant need not be physically present in Massachusetts in order to be deemed to

have transacted business here under section 3(a).  *Workgroup Tech. Corp. v. MGM*

*Grand Hotel, LLC*, 246 F. Supp. 2d 102, 109-10 (D. Mass. 2003) (citation omitted).  As

the Supreme Judicial Court has stated, the language of section 3(a) "is general and

applies to any purposeful acts by an individual, whether personal, private or

commercial."  *Ross v. Ross*, 358 N.E.2d 437, 439 (Mass. 1976).  *See also Ealing Corp.*,

790 F.2d at 982.

For its part, the First Circuit has repeatedly concluded that the "transacting any

business" requirement of section 3(a) may be satisfied even when the defendant's

forum contacts are quite sparse, for example, the sending of a single telex to

Massachusetts.  *See Ealing Corp.*, 790 F.2d at 983.  *See also Bond Leather*, 764 F.2d

at 932 (mailing four letters to and receiving at least one telephone call from plaintiff in

Massachusetts in course of negotiations satisfied "transacting any business"

requirement); *Hahn v. Vermont Law Sch.*, 698 F.2d 48, 50 (1st Cir. 1983) (mailing

application information and acceptance letter to plaintiff in Massachusetts constituted

transacting business in the commonwealth for purposes of section 3(a)); *Nova*

*Biomedical Corp. v. Moller*, 629 F.2d 190, 193-95 (1st Cir. 1980) (mailing two letters

10

charging patent infringement and threatening litigation satisfied the statutory prerequisite). Accordingly, Seigler's argument that his "only" forum contact was sending the three letters at issue falls short.[6]

Similarly misplaced, in the court's view, is Seigler's assertion that Plaintiffs' claims against him do not "arise from" the letters themselves, but rather from his actions in South Carolina. As Seigler is no doubt aware, the courts employ a "but for" causation test, which asks whether a defendant's contacts with Massachusetts constituted "the first step in a train of events" that caused the injury. *Lyle Richards Int'l v. Ashworth, Inc.*, 132 F.3d 111, 113 (1st Cir. 1997) (citing *Tatro*, 625 N.E.2d at 553). Here, as described, Plaintiffs' complaint places Seigler's letters -- in which he represented that "all applicable federal, state and local laws and regulations" were fully complied with -- squarely at the center of the negligent misrepresentation and legal malpractice causes of action. (See Complaint ¶¶ 21, 29, 36, 40, 41, 61-66, 78-80.) Moreover, an undisputed affidavit submitted by Paul F. Green of Land Finance confirms the centrality of these letters and the injury they allegedly caused Plaintiffs to suffer in Massachusetts:

---

[6] Seigler also mistakenly asserts that decisions construing section 3(a) "overwhelmingly involve contractual or potential contractual relationships between the parties." (Defendant's Reply at 7 n.6.) *Ealing*, for example, was a "combination contract/tort claim . . . premised upon [the defendant's] false and misleading representations." *Id.*, 790 F.2d at 978. There are many other non-contract examples. *See, e.g., Nowak v. Tak How Invs., Ltd.*, 94 F.3d 708 (1st Cir. 1996) (construing section 3(a) in wrongful death action); *Tatro v. Manor Care, Inc.*, 625 N.E.2d 549, 553 (Mass. 1994) (discussing section 3(a) in personal injury action); *Bond Leather*, 764 F.2d at 928 (seeking money for goods purchased on credit and recovery on a claim of misrepresentation); *Nova Biomedical*, 629 F.2d at 190 (applying section 3(a) to patent infringement claim).

11

6.  Land Finance Company received three letters from Defendant William Gregory Seigler, Esq. at its offices in Williamstown, MA in May 2001.  The three letters were dated May 22, 2001. . . .

7.  On information and belief, Plaintiffs relied upon the statements contained in Mr. Seigler's letter in Williamstown, MA.

8.  Because of Mr. Seigler's statements, Land Finance Company made the decision to purchase consumer loans from, and lend money to, Buyers Source Savannah LLC.  This decision was made at the Land Finance Company offices in Williamstown, MA.  Thereafter[,] Land Finance Company issued instructions to fund the loans from its offices in Williamstown, MA.

9.  Litchfield Financial Corporation is a Massachusetts corporation that has incurred losses in Massachusetts because the value of its assets related to Buyers Source have been impaired.

(Green Decl. ¶¶ 6-9.)[7]

In sum, the court believes that Plaintiffs have sufficiently demonstrated that their claims against Seigler would not have occurred "but for" the letters he sent them in Massachusetts.  *See Tatro*, 625 N.E.2d at 551 (section 3(a) jurisdiction proper where defendant directed activities at plaintiffs in Massachusetts).  *Compare Comer v. Comer*, 295 F. Supp. 2d 201, 207-08 (D. Mass. 2003) (no section 3(a) jurisdiction over out-of-state attorneys where action did not arise from service of prior complaint on plaintiff in Massachusetts); *Fern*, 773 N.E.2d at 976-77 (no section 3(a) jurisdiction arising from New York lawyers' opinion letters which had only a peripheral relationship to forum contacts).  As a result, the court concludes that Plaintiffs' assertion of jurisdiction over

───────────────

[7]  As the parties may be aware, litigation against attorneys based on negligent opinion letters is becoming all too frequent. *See, e.g.*, Lisa K. Bruno, *Opinion Letter Pitfalls: Don't Get Bitten, Recent Rulings Underscore the Liability Risks for Lawyers*, 33 Mass. Lawyers Wkly 1680, 1688 (Mar. 28, 2005) (summarizing recent Massachusetts Superior Court decisions regarding legal opinion letter liability).

Seigler is authorized by section 3(a) of the Massachusetts long-arm statute. That, however, does not end the court's analysis.

2. Due Process

The second part of the court's inquiry asks whether the exercise of personal jurisdiction would comport with due process. The First Circuit has designated "three distinct components" to this inquiry: "relatedness, purposeful availment (sometimes called 'minimum contacts'), and reasonableness." *Foster-Miller*, 46 F.3d at 144. Since all three components must be satisfied, *see Ticketmaster-New York*, 26 F.3d at 206, the court will address each in turn.

a. *Relatedness*

The relatedness component -- "that a suit arise out of, or be related to" the defendant's forum activities -- "ensures that the element of causation remains in the forefront." *Ticketmaster-New York*, 26 F.3d at 206, 207. Insofar as the court believes that Plaintiffs' claims against Seigler are ones "arising from" his "transacting any business in Massachusetts," as described above, it assumes that this first component has been met. Indeed, Seigler has not challenged this component with much force.

b. *Purposeful Availment*

The purposeful availment component, however, is hotly contested. This requirement is designed to assure that personal jurisdiction is not premised solely upon the defendant's "random, isolated, or fortuitous" contacts with a forum. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984). In other words, the plaintiff must demonstrate that the defendant's contacts "represent a purposeful availment of the

13

privilege of conducting activities in [Massachusetts], thereby invoking the benefits and protections of its laws and making the defendant's involuntary presence before [a Massachusetts] court foreseeable." *Pritzker v. Yari*, 42 F.3d 53, 61 (1st Cir. 1994) (citation and internal quotation marks omitted).

In the court's estimation, Plaintiffs have not demonstrated that Seigler purposefully availed himself of the privilege of conducting activities in Massachusetts. For one thing, Seigler is licensed to practice law in South Carolina and has never been to Massachusetts.  He also owns no property here and has never entered into a contract to be performed within the commonwealth.  Further, and perhaps most importantly, he did not initiate the contact with Plaintiffs.  Rather, his clients from Virginia contacted *him* in connection with *their* purchase of the Savannah Lakes property in South Carolina and it was they, as the letters themselves reflect, who requested that he offer a legal opinion for their benefit as well as the benefit of Land Finance.  Thus, while Seigler "has plainly taken action with commercial consequences in the commonwealth," he is hardly "akin to a seller who solicits revenue from a resident of the forum state."  *Bond Leather*, 764 F.2d at 933.

*Bond Leather* is particularly apt for purposes here.  The First Circuit held that, although the defendant's mailing four letters to and receiving at least one telephone call from the plaintiff in Massachusetts satisfied the "transacting any business" requirement of section 3(a), such contacts were insufficient to demonstrate purposeful availment.  *See id.* at 933-35 (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220 (1957)). In yet another case containing parallels to the case at bar, the First Circuit stated that

14

"[w]ithout evidence that the defendant actually reached out to the plaintiff's state of residence to *create* a relationship -- say, by solicitation -- the mere fact that the defendant willingly entered into a tendered relationship does not carry the day." *Phillips Exeter Acad. v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 292 (1st Cir. 1999) (emphasis in original) (citation omitted).  Similarly, in a recent legal malpractice action in the Second Circuit, the court stated that had the defendant's only contacts with the forum been the issuance of the subject opinion letter and ancillary communications, "we might very well agree . . . that no purposeful availment had been demonstrated."  *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127-29 (2nd Cir. 2002) (holding that due process was not violated given that defendant kept an apartment in the forum state, faxed newsletters to numerous persons there, and had performed work for many clients in the forum).

Still other case law from outside this jurisdiction supports the view that Seigler has not purposefully availed himself of this forum.  For example, the Ninth Circuit, citing with approval the First Circuit's decision in *Kowalski v. Doherty, Wallace, Pillsbury & Murphy*, 787 F.2d 7 (1st Cir. 1986), ruled that "[o]ut-of-state legal representation does not establish purposeful availment of the privilege of conducting activities in the forum state, where the law firm is solicited in its home state and takes no affirmative action to promote business within the forum state."  *Sher v. Johnson*, 911 F.2d 1357, 1363 (9th Cir. 1990).  "A contrary rule," a district judge in Minnesota later stated, "would mean that anytime a lawyer sent a letter beyond his or her own state's borders, that lawyer would be subject to the jurisdiction of the state of the addressee."  *Nash Finch Co. v.*

15

*Preston*, 867 F. Supp. 866, 868-69 (D. Minn. 1994).  "Such a rule," the court continued,

"would make interstate law practice all but impossible" because a lawyer "could well be

susceptible to the jurisdiction of every state in the union."  *Id.* at 869.  "Such a

possibility would be absurd."  *Id.  See also Trierweiler v. Croxton & Trench Holding

Corp.*, 90 F.3d 1523, 1534 (10th Cir. 1996) (holding that "purposeful availment"

component was not met where "the only connection between [the attorney] and [the

plaintiff] was the opinion letter [the plaintiff] requested"); *Austad Co. v. Pennie &

Edmonds*, 823 F.2d 223, 226-27 (8th Cir. 1987) (where law firm's only substantial

connection with the forum state was its work on a legal matter for a forum resident

taking place outside the forum, law firm did not purposefully avail itself of the benefits

and protections of the forum state).

        In support of their argument to the contrary, Plaintiffs maintain almost exclusive

reliance on the *Murphy* line of cases.  As described, however, those cases all

concerned intentional torts.  *See also First Act, Inc.,* 311 F. Supp. 2d at 261 n.4

("*Murphy* dealt primarily with interpreting the Massachusetts long-arm statute, rather

than constitutional due process concerns.").  As the *Murphy* court itself explained:

> The element of intent . . . persuades us that there can be no constitutional
> objection to Massachusetts asserting jurisdiction over the out-of-state
> sender of a fraudulent misrepresentation, for such a sender has thereby
> "purposefully [availed] itself of the privilege of conducting activities within
> the forum State, thus invoking the benefits and protections of its laws."

*Id.*, 460 F.2d at 664 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

        Plaintiffs, however, do not assert a claim of international tort against Seigler.

Rather, as described, their claims against Seigler are grounded in negligence.  For

constitutional purposes, this distinction makes all the difference.  As the late District Judge Frank H. Freedman observed over three decades ago, *Murphy*'s "distinction" between intentional and negligent acts "'can have a distinct bearing on whether the exercise of jurisdiction thereover is constitutional, for it goes directly to fairness and the degree to which an individual has purposefully availed himself of the privilege of conducting activities within the forum state.'"  *Bradley*, 65 F.R.D. at 60 (quoting *Margoles*, 483 F.2d at 1220) (further citations omitted).  *See Home Owners Funding Corp. v. Century Bank*, 695 F. Supp. 1343, 1346 (D. Mass. 1988) (citing *Murphy* for proposition that "intent is necessary in the attenuated case of an actor outside the Commonwealth whose actions result in injury in the Commonwealth to insure that, consistent with due process, the actor 'should reasonably anticipate being haled into court here'") (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).  *Cf. Callahan*, 138 F. Supp. 2d at 164 (distinguishing *Murphy* on similar grounds).

In sum, the court finds that the second component of the due process inquiry has not been satisfied and, therefore, will recommend that Seigler's motion to dismiss be allowed.  Nonetheless, the court will address the third component of the analysis, so as to provide a comprehensive report and recommendation.  *But see Nowak*, 94 F.3d at 717 (indicating that assessment of third component is important only "where the minimum contacts question is very close").

      c.  *Reasonableness*

The "reasonableness" component requires that the assertion of jurisdiction over

17

a defendant must "not offend 'traditional notions of fair play and substantial justice.'"

*International Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945) (quoting

*Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). *See Asahi Metal Indus. Co. v. Superior*

*Court*, 480 U.S. 102, 113 (1987). In analyzing this component, a court typically must

weigh five elements often referred to as "gestalt factors": "(1) the defendant's burden of

appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's

interest in obtaining convenient and effective relief, (4) the judicial system's interest in

obtaining the most effective resolution of the controversy, and (5) the common interests

of all sovereigns in promoting substantive social policies." *Foster-Miller*, 46 F.3d at

150. These factors can be addressed in short order.

As for the first factor, it doubtless would be burdensome for Seigler, a solo

practitioner with no connection to Massachusetts, to litigate this action here. And as for

the second factor, Massachusetts appears to have only a marginal interest in

adjudicating the dispute: none of the events underlying the causes of action against

Seigler occurred here, only witnesses from Litchfield or Land Finance might possibly

live here, and many relevant documents are likely located out of state.

The same holds true for the third factor. While it is true that Plaintiffs have

labeled Massachusetts their "home" state -- at least with respect to events which

allegedly occurred in 2001 -- their present connection to this forum is tenuous at best.

According to the complaint, Land Finance, the only plaintiff that allegedly received

Seigler's opinion letters, is currently "a Delaware corporation having its principal place

of business . . . [in] Connecticut." (Complaint ¶ 5.) In addition, Textron continues to be

18

"a Delaware corporation having its principal place of business . . . [in] Rhode Island"
and Litchfield no longer has its principal place of business in Massachusetts, but in
Connecticut.  (Complaint ¶¶ 3-4.)  In short, the court questions whether Plaintiffs have
an actual interest in obtaining relief from Seigler in Massachusetts.

Regarding the fourth factor, the court cannot conceive that the judicial system as
a whole would benefit from forcing Plaintiffs' claims against Seigler to be litigated in
Massachusetts given the facts presented.  *See Nowak*, 94 F.3d at 718 ("Usually this
factor is a wash.").  And with regard to the fifth and final factor, the case does not
appear to raise any "substantive social policies," let alone ones which should
necessarily be resolved in Massachusetts.  At bottom, therefore, the court believes that
the gestalt factors also favor dismissal of Seigler on personal jurisdiction grounds.[8]

### III. CONCLUSION

For the foregoing reasons, the court recommends that Seigler's motion to
dismiss be ALLOWED.[9]

---

[8]  Seigler makes two alternative arguments: (1) that venue is improper; and (2)
that abstention is warranted in light of a preexisting "parallel" action in South Carolina.
In the court's view, these arguments, while persuasive, need not be addressed since
personal jurisdiction over Seigler is lacking.

[9]  The parties are advised that under the provisions of Rule 3(b) of the Rules for
United States Magistrates in the United States District Court for the District of
Massachusetts, any party who objects to these findings and recommendations must file
a written objection with the Clerk of this Court **within ten (10) days** of the party's
receipt of this Report and Recommendation.  The written objection must specifically
identify the portion of the proposed findings or recommendations to which objection is
made and the basis for such objection.  The parties are further advised that failure to
comply with this rule shall preclude further appellate review by the Court of Appeals of
the District Court order entered pursuant to this Report and Recommendation.  *See
Keating v. Secretary of Health & Human Services*, 848 F.2d 271, 275 (1st Cir. 1988);

DATED: April 13, 2005

                                    __/s/ Kenneth P. Neiman___
                                      KENNETH P. NEIMAN
                                      U.S. Magistrate Judge

---

*United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980).  *See also Thomas v. Arn*, 474 U.S. 140, 154-55 (1985).  A party may respond to another party's objections within ten (10) days after being served with a copy thereof.