IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

| | |
|---|---|
| Litchfield Financial Corporation, *et al.*, ) | |
| ) | |
| ***Plaintiffs,*** ) | |
| v. ) | No. 04-CV-30076-MAP |
| ) | |
| Buyers Source Real Estate Group, *et al.*, ) | |
| ) | |
| ***Defendants.*** ) | |
| ) | |

**PLAINTIFFS' OBJECTIONS TO REPORT AND RECOMMENDATION
CONCERNING DEFENDANT WILLIAM GREGORY SEIGLER'S
MOTION TO DISMISS**

In his April 13, 2005 "Report and Recommendation With Regard To Defendant Seigler's Motion To Dismiss" ("Recommendation"), the Magistrate Judge agrees with Plaintiffs that the Massachusetts long-arm statute permits this Court to exercise personal jurisdiction over Mr. Seigler. The Magistrate Judge concludes, however, that the exercise of personal jurisdiction over Mr. Seigler, though authorized by Massachusetts law, is inconsistent with the federal constitutional due process standards. Specifically, the Magistrate Judge concludes that Mr. Seigler did not "purposefully avail himself of the privilege of conducting activities in Massachusetts," Recommendation at 14, and that the exercise of personal jurisdiction does not comport with the "reasonableness" factor of the constitutional test. Recommendation at 19.

The Plaintiffs respectfully object to the Magistrate Judge's determination on these points. Mr. Seigler deliberately and voluntarily directed his written misrepresentations to Plaintiffs in Massachusetts regarding financial transactions that Mr. Seigler knew and acknowledged were to be completed within the Commonwealth. These facts permit this Court to exercise personal jurisdiction over him consistent with constitutional limits.

In addition, Plaintiffs object to the Magistrate Judge's determination that jurisdiction does not lie pursuant to Section 3(c) of the Massachusetts long-arm statute. Recommendation at 9. In particular, the Magistrate Judge's interpretation of the long-standing First Circuit precedent of Murphy v. Erwin-Wasey, Inc., 460 F.2d 661 (1st Cir. 1972), is inconsistent with the language of that case and subsequent First Circuit precedent interpreting that decision.

Accordingly, for the reasons stated herein, Plaintiffs object to the Recommendation and request that this Court find that it can exercise personal jurisdiction over Mr. Seigler.

I. **FACTS**

The relevant facts relating to the assertion of personal jurisdiction over Mr. Seigler are summarized in brief here. Plaintiffs entered into a series of complex financial transactions, by which they provided financing to the Buyers Source Defendants[1] and to their customers relating to the sales of lots in Florida, South Carolina, and Ohio. Compl. ¶¶ 33-34. An integral step necessary to complete certain transactions was the provision of legal opinions by Mr. Seigler to Plaintiffs in Massachusetts. Compl. ¶ 37; Declaration of Paul F. Green ¶ 8 (attached as Exhibit A) (hereinafter "Green Decl.").[2]

Mr. Seigler prepared three separate legal opinion letters in May 2001 relating to loan transactions between Plaintiff Land Finance Company ("Land FC") and Defendants Buyers Source Savannah, LLC, Thomas Brewer, Betty Brewer, and Frederick Blake. Compl. ¶¶ 36, 40-

---

[1] As discussed more fully in Plaintiffs' Complaint, the Buyers Source Defendants are the following defendants to this action: Buyers Source Real Estate Group, Buyers Source Valley Group, LLC, Buyers Source Sugarmill, LLC, Buyers Source, Savannah Lakes, LLC, Thomas H. Brewer, Betty M. Brewer, Susan Gard, Henry Montgomery, Lannie Campbell, and Ronald Ferguson.

[2] The Green Decl. was previously an attachment to Plaintiffs' Opposition to Defendant William Gregory Seigler's Motion to Dismiss (hereinafter "Pls.' Opp'n").

2

41; Green Decl. ¶ 6. Mr. Seigler "knew that the legal opinions were to be incorporated into the Revolving Credit agreements, and would be relied upon by Litchfield." Compl. ¶ 37.

Mr. Seigler addressed all three letters to Land FC at its business address: 430 Main Street, Williamstown, MA 02167. After initially attempting to deny to this Court that he had sent *any* correspondence to Massachusetts,[3] Mr. Seigler was forced to concede that he had in fact sent the three opinion letters at issue to Plaintiffs in Massachusetts. Seigler Affidavit.[4] In the letters, Mr. Seigler stated that Buyers Source land sales activities at Savannah Lakes were in compliance with **all** applicable federal and state laws. Compl. ¶¶ 36, 40-41; Green Decl., Attachments (emphasis added). Of key import for this Court's determination of the personal jurisdiction question is the fact that in two of the letters he sent to Plaintiffs, Mr. Seigler expressly invited Plaintiffs to rely on his representations in completing the transactions in Massachusetts:

> This opinion is for the benefit of and may be relied upon by Land Finance Company and its successors and assigns.

Green Decl., Attachments. Plaintiffs did, in fact, rely upon Mr. Seigler's statements in Massachusetts. Green Decl. ¶ 7. But for his statements, they would not have entered into the transaction with Buyers Source Savannah, LLC. Green Decl. ¶ 8. Thereafter, Plaintiffs funded the transactions with the Buyers Source Defendants. Plaintiffs' reliance took place in Massachusetts. Id.

Mr. Seigler's statements that the Buyers Source Defendants were in compliance with all federal and state laws were false. Compl. ¶¶ 36, 40-41, 61-66, 78-80. Plaintiffs were severely injured by Mr. Seigler's false statements. For example, the Buyers Source Defendants failed to

---

[3] Defendant William Gregory Seigler's Motion to Dismiss, at 6.

comply with the minimal registration requirements of the federal Interstate Land Sales Act ("ILSA"). Because of the regulatory deficiencies and fraudulent activities that Mr. Seigler failed to uncover, Plaintiffs' assets have been severely impaired. Green Decl. ¶ 9. Plaintiffs were the principal victims of the Buyers Source Defendants' fraudulent activities, and have suffered millions of dollars in losses. Compl. ¶ 35. Plaintiffs have brought claims of negligent misrepresentation and legal malpractice against Mr. Seigler. Compl. ¶¶ 61-66, 78-80.[5]

## II. THIS COURT CAN AND SHOULD EXERCISE PERSONAL JURISDICTION OVER MR. SEIGLER PURSUANT TO THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT

### A. Due Process Clause Of The Fourteenth Amendment

The Magistrate Judge concluded that the Massachusetts long-arm Statute permits the exercise of jurisdiction over Mr. Seigler. Recommendation at 12. Accordingly, the Court must determine if Mr. Seigler's contacts with Massachusetts are sufficient to permit the exercise of personal jurisdiction over Mr. Seigler pursuant to the Due Process Clause of the Fourteenth Amendment. Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 144 (1st Cir. 1995); Fairview Mach. & Tool Co., Inc. v. Oakbrook Int'l, Inc. & Nuway Paper, L.L.C., 56 F. Supp. 2d 134, 138 (D. Mass. 1999) (Ponsor, J.). In the First Circuit, this inquiry involves a tripartite analysis, looking at: "relatedness, purposeful availment ... and reasonableness." Foster-Miller, Inc., 46 F.3d at 144; Fairview Mach., 56 F. Supp. 2d at 138. The Magistrate Judge agrees that the relatedness factor is met. Recommendation at 13. Accordingly, Plaintiffs focus their

---

(...continued)

[4] Attachment to Amendment To Facts And Limited Reply To Plaintiffs' Opposition To Defendant William Gregory Seigler's Motion To Dismiss.

[5] Plaintiffs currently have claims pending against 16 additional defendants in this comprehensive lawsuit that names all parties that played a role in the underlying financial transactions.

4

analysis and objections to the Recommendation's conclusions on the purposeful availment and reasonableness factors.

### B. Defendant Seigler Did "Purposefully Avail" Himself Of The Massachusetts Forum Sufficient To Permit The Exercise Of Personal Jurisdiction Over Him

#### 1. Standards

The function of the purposeful availment test "is to assure that personal jurisdiction is not premised solely upon a defendant's 'random, isolated, or fortuitous' contacts with the forum state." Sawtelle v. Foster, 70 F.3d 1381, 1391 (1st Cir. 1995) (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984); Fairview Mach., 56 F. Supp. 2d at 138. Massachusetts courts note that the focus is on the purpose of the contact and "[w]hat is significant ... is that the defendant's contacts with the forum were deliberate and not fortuitous." Good Hope Indus., Inc. v. Ryder Scott Co., 378 Mass. 1, 11, 389 N.E.2d 76, 82 (1979) (emphasis added). As this Court has stated, "the cornerstones of purposeful availment are foreseeability and voluntariness." Fairview Mach., 56 F. Supp. 2d at 138 (citing Ticketmaster-New York Inc. v. Alioto, 26 F.3d 201, 207 (1st Cir. 1994)).

#### 2. Mr. Seigler's Contacts With Massachusetts Permit The Court To Exercise Specific Jurisdiction Over Him

In beginning his analysis on the purposeful availment prong, the Magistrate Judge cites to the following facts as persuasive: that Mr. Seigler is licensed to practice law only in South Carolina, that he has never owned property in Massachusetts and that he has never entered into a contract to be performed within the Commonwealth. Recommendation at 14. While these points might have some relevance if the Plaintiffs had asserted that the Court had general jurisdiction over Mr. Seigler, Plaintiffs have never made that claim and do not do so now. Instead, Plaintiffs argue that this Court can exercise *specific* jurisdiction over Mr. Seigler to adjudicate Plaintiffs'

tort claims arising from Mr. Seigler's intentional drafting and sending of three opinion letters to Massachusetts, which Plaintiffs relied upon to their detriment within the Commonwealth.[6]

### 3. Mr. Seigler's Intentional Sending Of Opinion Letters To Massachusetts Demonstrate That He Purposefully Availed Himself Of The Forum

As an initial matter, Plaintiffs dispute the Magistrate Judge's interpretation that there is a significant difference in the purposeful availment analysis depending on whether a plaintiff labels a claim either as an "intentional" or "negligent" tort.[7] Rather, as Plaintiffs set out more fully in their Opposition and Surreply, the focus is on the voluntary and deliberate intent of the defendant toward the forum at the time of the sending of the communication. See Pls.' Opp'n at 12-13; Plaintiffs' Surreply to Defendant William Gregory Seigler's Motion to Dismiss, at 8-9 (hereinafter "Pls.' Surreply") (quoting Good Hope, 378 Mass. at 11, 389 N.E.2d at 82. The First Circuit has concluded that the sending into Massachusetts of a false statement to be relied upon by a Massachusetts resident constitutes a purposeful availment sufficient to bring the defendant within the constitutional standard. Murphy, 460 F.2d at 664 (citing Hanson v. Denckla, 357 U.S. 235, 253 (1958)). Mr. Seigler admits to voluntarily and deliberately sending the opinion letters at issue to Massachusetts, and accordingly he did purposefully avail himself of the forum. Pls.' Surreply at 8-9 (citing to Seigler's Affidavit).

---

[6] See Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999) (describing specific jurisdiction as allowing "a court [to] hear a particular case if that case relates sufficiently to, or arises from, a significant subset of contacts between the defendant and the forum."). Courts often have noted that there is no constitutional problem basing jurisdiction upon a single, isolated tort of the foreign defendant. See, e.g., JMTR Enters., L.L.C. v. Duchin, 42 F. Supp. 2d 87, 97 (D. Mass. 1999).

[7] Indeed, to adopt such a categorical distinction would run counter to the Magistrate Judge's earlier reference to First Circuit case law noting that determination of the personal jurisdiction question is a "fact sensitive inquiry." Recommendation at 5 (quoting Sawtelle v. Farrell, 70 F.3d at 1388).

### 4. Mr. Seigler's Deliberate And Voluntary Representations Demonstrate That It Was Foreseeable That He Be Subject To Jurisdiction In This Court

Mr. Seigler's purposeful availment of the Massachusetts forum is only reinforced when one undertakes a careful analysis pursuant to the foreseeability and voluntariness "cornerstones." Fairview Mach., 56 F. Supp. 2d at 138. The First Circuit has noted that in analyzing tort claims (such as the ones Plaintiffs have asserted against Mr. Seigler), the Court must conduct a particularized inquiry on the link between the defendant's forum contacts and the plaintiff's cause of action. Phillips Exeter Acad., 196 F.3d at 289 ("Because the elements differ in a tort case [as compared to a contract case], a court charged with determining the existence *vel non* of personal jurisdiction must probe the causal nexus between the defendant's contacts and the plaintiff's cause of action.").

This distinction between analyzing tort and contract claims in the First Circuit helps explain why the Magistrate Judge's reliance on Bond Leather Co. v. Q.T. Shoe Manufacturing Co, 764 F.2d 928, 932 (1st Cir. 1985), as a "particularly apt" case for comparison is misplaced. Recommendation at 14. In Bond Leather, the First Circuit explained that it conducted its purposeful availment analysis pursuant to a "contract plus" analysis. Id. at 933. Other courts have recognized that the Bond Leather case should be utilized in personal jurisdiction cases involving contract claims, rather than (as here) tort claims. See Home Owners Funding Corp. of Am. v. Century Bank, 695 F. Supp. 1343, 1346 n.2 (D. Mass. 1988). This same distinction applies to the Magistrate Judge's citation to Philips Exeter Academy, Recommendation at 14-15, as again, the purposeful availment language in the decision cited by the Magistrate Judge concerned only the contract claim and not the tort claim. Philips Exeter Academy, 196 F.3d at 291-92. In addition, the Magistrate Judge's only analysis with regard to Bond Leather is to state that "mailing four letters to and receiving at least one telephone call" was found to satisfy

7

jurisdiction pursuant to Section 3(a) of the Massachusetts long-arm statute, but not the constitutional purposeful availment test. To the extent that the Magistrate Judge's focus is on the number of forum contacts, this is contrary to the principles that for the purposeful availment analysis, "a court is to focus on the nature of the contact with the forum and avoid playing a 'numbers game' – a single meaningful contact with the forum, ... 'can fill the bill.'" Lawson v. Affirmative Equities Co., L.P., 341 F. Supp. 2d 51, 59 (D. Mass. 2004) (citing to Pritzker v. Yari, 42 F.3d 53, 63 (1st Cir. 1994)).

### a.     Voluntariness

Mr. Seigler's actions demonstrate that he meets the voluntariness prong of the purposeful availment test as his contacts with Massachusetts were not "random, isolated, or fortuitous." Sawtelle, 70 F.3d at 1391; Fairview Mach., 56 F. Supp. 2d at 138. Mr. Seigler chose to undertake the legal assignment and prepare opinion letters regarding whether the Buyers Source defendants were in compliance with federal and state laws. He knew and acknowledged in these letters that his opinions related to financial transactions in Massachusetts and were prepared on behalf of Plaintiff Land FC, a Massachusetts entity. If Mr. Seigler was not sufficiently versed in the applicable federal and state regulations and unable to opine upon them (as it turns out he apparently was not), he had only to decline the representation. The situation is analogous to that considered by the Court in North American Video Corp. v. Leon, 480 F. Supp. 213 (D. Mass. 1979). In that case, a Massachusetts corporation brought suit against two out-of-state employees. The employees challenged jurisdiction on the grounds that they had not purposefully availed themselves of the Massachusetts forum because their contacts with Massachusetts were "compelled" as a result of their employee status. Id. at 218-19. The Court dismissed the defendants' challenge stating, "[a] sufficient answer to this contention is that [defendants] were not compelled to be employees of plaintiff. Rather, they voluntarily chose to accept employment

with plaintiff, a corporation having its principal place of business in Massachusetts." Id. at 219. The same holds true in this case. Mr. Seigler was not compelled to accept the engagement to provide opinions, knowing, as he did, that his opinion related to financial transactions to be completed in Massachusetts. He elected to undertake the representation and, in doing so, purposefully availed himself of the Massachusetts forum.

### b. Foreseeability

With regard to the foreseeability factor, Mr. Seigler's own words in the opinion letters demonstrate that that he could foresee being subject to jurisdiction in Massachusetts. Mr. Seigler drafted and sent to Massachusetts three opinion letters that were integral to complex financial transactions to be completed in Massachusetts. Compl. ¶ 37. Mr. Seigler acknowledged this in the letters he prepared when he expressly invited Plaintiffs to rely on his representations in completing the transactions:

> This opinion is for the benefit of and may be relied upon by Land Finance Company and its successors and assigns.

Green Decl., Attachments. Mr. Seigler understood at the time he prepared and sent the letters that the transactions were to be completed in Massachusetts; the loan documents he states he reviewed in preparing his opinion identified Massachusetts as the location for the financial transactions. Id. Furthermore, the loan documents stated that the transactions were to be governed pursuant to Massachusetts law and any dispute was to be litigated in a court in Massachusetts. Compl. ¶¶ 26-27.

Mr. Seigler's voluntary and deliberate actions in preparing and sending the opinion letters to Massachusetts is particularly significant on the foreseeability point. In considering the foreseeability prong in a similar personal jurisdiction motion, this Court cited to language from Good Hope in support of finding personal jurisdiction appropriate because the foreign defendant

9

"reasonably could have foreseen that significant managerial decisions, based on the information it had provided, would be made in Massachusetts." Fairview Mach., 56 F. Supp. 2d at 139 (citing to Good Hope, 378 Mass. at 10-12 (quoting Hanson, 357 U.S. 235)). The "significant managerial decisions" language ties in directly with the situation here. Mr. Seigler acknowledged that his opinion letters, affirmatively directed to Land FC in Massachusetts, were to support financial transactions to be completed within the Commonwealth. Indeed, Plaintiff Land FC's decision to engage in the financial transactions with certain of the Buyers Source defendants was made in reliance upon the opinions Mr. Seigler expressed in his opinion letters. Green Decl. ¶ 8. The transactions would not have been made without Mr. Seigler's positive assessments about the compliance by the Buyers Source defendants with federal and state regulations. Compl. ¶¶ 37.[8]

Accordingly, it was foreseeable for Mr. Seigler that he might be haled into a court in Massachusetts as a result of his legal opinions that supported the financial transactions at issue in this litigation.

### 5. Cases and Principles Cited In The Recommendation Are Distinguishable From The Current Case

In his Recommendation, the Magistrate Judge cites a series of legal malpractice cases in which the courts declined to find personal jurisdiction. As a general principle, a lawyer can be held liable for negligent misrepresentations he or she makes to a non-client. See Restatement (Second) of Torts § 552 (1977); Restatement (Third) of the Law Governing Lawyers § 51

---

[8] The contacts by the out-of-state defendants with Massachusetts in both Good Hope and Fairview Mach. were more numerous than those of Mr. Seigler, but again the purposeful availment test is not a numbers game. See Lawson, 341 F. Supp. 2d at 59. The focus is on the significance of the forum contacts by the out-of-state defendant. See Phillips Exeter Acad., 196 F.3d at 288.

(2000). There is no reason why a lawyer should be treated differently from any other individual or professional who provides false advice or representations on which another party relies.

In reviewing the cases cited by the Magistrate Judge, it is apparent that all appear to be concerned with the application of this general principle in the case of a lawyer.[9] This concern is reflected most prevalently in the language quoted by the Recommendation from Nash Finch Co. v. Preston, 867 F. Supp. 866 (D. Minn. 1994), where Judge Rosenbaum expressed concern that a lawyer could be subject to jurisdiction in another state simply for sending a letter across state lines. Recommendation at 15-16.

Let us be clear. This case involves a situation in which Mr. Seigler, a legal practitioner, voluntarily agreed to provide opinions, voluntarily prepared opinion letters making representations regarding legal compliance issues, and voluntarily sent these opinion letters to the Commonwealth where he knew they would be relied upon by Plaintiffs. This is a far different situation than a legal practitioner simply sending a general mailing announcing, for example, a recent case victory to clients and potential clients in states around the nation. In the latter case, there might be an argument that jurisdiction is not constitutionally permissible. But this is not the case here -- further reinforcing the fact that a court should undertake a specific analysis of the facts at issue, Phillips Exeter Acad., 196 F.3d at 289, rather than relying on a blanket assertion that legal malpractice cases do not satisfy the constitutional purposeful availment standard.

The final authority which the Magistrate Judge discusses in reference to his purposeful availment analysis is Judge Freedman's opinion in Bradley v. Cheleuitte, 65 F.R.D. 57 (D. Mass.

---

[9] Indeed the Magistrate Judge anticipates his later holding on the constitutional issue when he cites, with concern, to a recent Massachusetts Law Weekly article (written several months after
(continued...)

1974). The Magistrate Judge also cites to this case in his Section 3(c) analysis. The facts of the case are worth setting out in full here. In <u>Bradley</u>, a Massachusetts resident, Marilyn Bradley, suffered injury in Puerto Rico and was admitted to a hospital there. A local doctor performed surgery on Ms. Bradley, and she was released after some minimal therapy. There were no other contacts between Ms. Bradley and the hospital or doctor. Following her return to Massachusetts, Ms. Bradley required additional surgery as a result of apparent negligence arising from the surgery in Puerto Rico. Ms. Bradley brought a malpractice claim in Massachusetts against both the hospital and doctor. Judge Freedman concluded that the fact the medical treatment occurred in Puerto Rico did not permit a Massachusetts court to exercise personal jurisdiction over the defendants consistent with the state's long-arm statute. <u>Id.</u> at 60-61.[10]

The factual circumstances of the <u>Bradley</u> case are obviously far different from the actions at issue here. In treating Ms. Bradley in Puerto Rico, the doctor and hospital did not take the voluntary steps with regard to Massachusetts in the same manner that Mr. Seigler did in directing letters from South Carolina to Massachusetts for a transaction to be completed in the Commonwealth. Furthermore, the medical treatment did not relate to a future Massachusetts event, in the way that Mr. Seigler's opinion letters related to financial transactions to be completed in Massachusetts. Accordingly the case is readily distinguishable and does not support the conclusion in the Recommendation.[11]

---

(...continued)
briefing and oral argument on the motion) noting an increase in litigation against attorneys based on negligently prepared opinion letters. Recommendation at 12, n.7.
[10] It must be pointed out that although Judge Freedman cited to the constitutional standard, in a single sentence, his decision concluding that personal jurisdiction did not exist was basely *solely* on the fact that it was not authorized by the Massachusetts long-arm statute. <u>Id.</u> Accordingly his single sentence with regard to the constitutional standard is *dicta* at best.
[11] A further distinction that may have influenced Judge Freedman in reaching his decision is the fact that a hospital and doctor do not "select" patients, such as Ms. Bradley, coming through the
(continued...)

12

6. **This Court Should Permit Discovery On Jurisdictional Contacts To Determine If Mr. Seigler Acted With Actual Or Reckless Intent To Misrepresent In Preparing The Opinion Letters**

If the Court were to accept the Magistrate Judge's Recommendation that there exists a federal constitutional distinction between negligent and intentional torts for the purposeful availment analysis, then it should permit Plaintiffs to take discovery on the jurisdictional point prior to any final disposition of the claims against Mr. Seigler.[12]

This point is reinforced when one considers three potential scenarios regarding the false statement Mr. Seigler wrote in the opinion letters.[13] In the first instance, Mr. Seigler may have determined that the Buyers Source Defendants were not in compliance with federal laws but intentionally misrepresented these facts in order to induce funding by Plaintiff Land FC so as to benefit his clients, the Buyers Source Defendants. In the second scenario, Mr. Seigler may have acted recklessly and simply rendered his opinion without conducting the full due diligence he knew to be necessary. Finally, Mr. Seigler may have been negligent in failing to uncover information regarding compliance by the Buyers Source defendants with the applicable federal law and regulations. To follow the logic of the Recommendation, it is clear that in the first two scenarios Mr. Seigler would be subject to personal jurisdiction in Massachusetts, because his

---

(...continued)

doors for emergency surgery. Accordingly there may be some constitutional argument that a physician in Puerto Rico should not be subject to personal jurisdiction in Massachusetts, Alaska, or any state an emergency patient might hale from. It is surely a far different case for a legal practitioner, such as Mr. Seigler, who can, and did, make the voluntary and deliberate choice to provide and send to Massachusetts an opinion that he understood from the outset was a necessary component to a Massachusetts financial transaction.

[12] Plaintiffs previously requested the opportunity for discovery relating to the jurisdictional issues. Surreply at 4. The Recommendation fails to address this issue.

[13] There is no question that Mr. Seigler's representations that the Buyers Source Defendants "are in compliance with all federal regulations" were false. See Compl. ¶ 2 (noting lawsuit filed by the U.S. Department of Housing and Urban Development ("HUD") against various of the Buyers

(continued...)

13

actions would constitute an "intentional" tort. In contrast, in the third scenario, he would not be subject to personal jurisdiction.

A rule as proposed in the Recommendation would create a difficulty for Plaintiffs at the initial pleadings stage. In this case, Mr. Seigler has in his control all the evidence that would confirm the due diligence or work, if any, he performed prior to rendering the opinion – for example, memos to file or paperwork of communications with representatives of HUD.[14] Plaintiffs have had no opportunity to take discovery on these issues. It would be highly prejudicial to Plaintiffs – and a boon to Mr. Seigler – if he were allowed to escape jurisdiction by being permitted to withhold the very evidence that could subject him to jurisdiction. Accordingly, if the Court determines that Mr. Seigler is not subject to jurisdiction under the current facts as pled, then it should permit discovery on the jurisdictional question.[15]

### C. Reasonableness

Having concluded that the purposeful availment factor is not met, the Magistrate Judge undertakes only a cursory review of the "reasonableness" factor of the due process test. The purpose of this final factor is to ensure that the exercise of personal jurisdiction not "offend traditional notions of fair play and substantial justice." Fairview Mach., 56 F. Supp. 2d at 140 (citing Pritzker, 42 F.3d at 63 (1st Cir. 1994) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985))). In the First Circuit, the reasonableness analysis involves looking to the

---

(...continued)
Source Defendants, including those on which Mr. Seigler opined in his letters, for violations of the Interstate Land Sales Act and regulations thereunder).

[14] For example, Mr. Seigler sought confirmation from the South Carolina Secretary of State that Buyers Source was a foreign entity licensed to do business in the state, so too should he have sought similar confirmation from HUD that the proper registration had occurred.

[15] Obviously, if the Plaintiffs were to learn independently that Mr. Seigler had acted with a reckless or deliberate attempt to mislead, then they should be permitted to amend their complaint to state such a cause of action against Mr. Seigler.

"gestalt factors": "(1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies." Pritkzer, 42 F.3d at 63-64; Fairview Mach., 56 F. Supp. 2d at 140.

On the first factor, the Magistrate Judge concludes that it would be "burdensome" for Mr. Seigler to litigate in Massachusetts. Undoubtedly appearing in a foreign jurisdiction will "burden the defendant[] somewhat," but Mr. Seigler has demonstrated no special burden and this Court has already determined that for a defendant to travel between either Illinois or Michigan and Massachusetts is not especially "onerous." Fairview Mach., 56 F. Supp. 2d at 140. Similarly, there will be only a minor burden for Mr. Seigler, a South Carolina resident, to defend himself in this litigation.

On the second factor, the Magistrate Judge states that Massachusetts has only a limited interest in the dispute. As an initial matter, this ignores the fact that Massachusetts has a "'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." Burger King, 471 U.S. at 473. Plaintiffs suffered injury within the Commonwealth arising from Mr. Seigler's, an out-of-state defendant, tortious conduct with regard to the letters Mr. Seigler sent to Plaintiff Land FC at its offices in Massachusetts. Compl. ¶¶ 61-66, 78-80. As discussed in the Complaint, Land FC is an affiliate of Plaintiff Textron Financial Corporation and a subsidiary of Plaintiff Litchfield Financial Corporation. At the time of the transactions, Litchfield was, and remains to this day, a properly incorporated Massachusetts entity. Compl. ¶¶ 3, 5. Accordingly, a Massachusetts court has an interest in providing a forum to litigate this dispute. Moreover, the Commonwealth has an interest in

15

policing frauds committed within the forum by persons sending misrepresentations into Massachusetts.

On the third factor, the Magistrate Judge makes various assertions with regard to the Plaintiffs' location. The proper focus of the inquiry though is on "the plaintiff's interest in obtaining convenient and effective relief." Pritkzer, 42 F.3d at 63-64. It is important to note (and the Recommendation makes no acknowledgement of this) that Mr. Seigler is only one of a number of defendants to this comprehensive litigation. Plaintiffs have named all parties with which they interacted relating to the financial transactions with the Buyers Source Defendants. It is this action that provides Plaintiffs with the best opportunity to obtain "convenient and effective relief" for the disputes. Id. Indeed, the underlying documents supporting the financial transactions at issue specifically identify this Court as a location for litigation of any dispute. To grant Mr. Seigler's motion would force Plaintiffs into piecemeal litigation, with the remaining defendants in this Court and Mr. Seigler in a separate forum. Significantly, no other defendant has challenged on personal jurisdiction grounds, no doubt in large measure because the underlying financial transactions specifically name the state and federal courts in Massachusetts as the forum for litigation of any disputes. Compl. ¶¶ 26-27. This litigation will proceed in this Court, and the Plaintiffs have an interest in ensuring that all parties are before it. The Magistrate Judge's statements do not acknowledge the First Circuit's comment that "courts considering jurisdictional issues generally should 'accord plaintiff's choice of forum a degree of deference in respect to the issue of its own convenience ...'" See Foster-Miller, 46 F.3d at 151 (quoting Ticketmaster, 26 F.3d at 211 (ellipsis in original)).

The foregoing reasons also confirm that Plaintiffs meet the test's fourth factor. It is beneficial to the judicial system to ensure that the claims relating to this litigation are resolved in the single lawsuit brought by Plaintiffs.

Finally, with regard to the overall reasonableness of asserting jurisdiction over Mr. Seigler in Massachusetts, it is worth repeating the question that Plaintiffs have asked before and that neither Mr. Seigler nor the Magistrate Judge have addressed: Is it reasonable for an attorney to appear before a court in a forum where he (1) delivered false statements in three separate legal opinion letters to Plaintiffs in that forum state, (2) acknowledged in those letters that the opinions relate to transactions involving Plaintiffs in that forum state, (3) acknowledged in the letters that Plaintiffs would rely upon them, and (4) Plaintiffs have been damaged by the false statements in the forum state? Pls.' Opp'n at 13-14; Pls.' Surreply at 9, n.6. Plaintiffs submit that the facts of this case demonstrate that it is reasonable to hold Mr. Seigler accountable in Massachusetts for his actions.

## III. MR. SEIGLER'S CONTACTS WITH MASSACHUSETTS SATISFY JURISDICTION PURSUANT TO SECTION 3(C) OF THE COMMONWEALTH'S LONG-ARM STATUTE

### A. Jurisdiction Is Appropriate Pursuant to Section 3(c)[16]

The Massachusetts long-arm statute states that "[a] court may exercise personal jurisdiction over a person ... arising from the person's ... (c) causing tortious injury by an act or omission in this commonwealth, ...." Mass. Gen. L. ch. 223A, § 3(a) & (c) (2004).

The Magistrate Judge acknowledges that the seminal case in this area is the First Circuit's Murphy opinion in which it held that "[w]here a defendant knowingly sends into a state a false

---

[16] The Recommendation agrees that jurisdiction is authorized pursuant to Section 3(a) of the Massachusetts Long Arm statute. Recommendation at 12. Accordingly, this Court need not
(continued...)

statement, intending that it should there be relied upon to the injury of a resident of that state, he has, for jurisdictional purposes, acted within that state." Murphy, 460 F.2d at 664. As Plaintiffs discussed more fully in their Opposition and Surreply, Murphy establishes that for purposes of a Section 3(c) tort claim of misrepresentation, the tortious act occurs in the place where the plaintiff receives and relies upon the communication. Pls' Opp'n at 6-8; Pls.' Surreply at 2-4. The holding in Murphy has been repeatedly reaffirmed in the 33 years since the decision was first announced.[17] Plaintiffs' Complaint and documents accompanying the previous motion papers allege that Mr. Seigler committed the torts of negligent misrepresentation and malpractice when he delivered legal opinion letters to Land FC in Massachusetts falsely stating that Mr. Seigler committed that the Buyers Source Defendants were in compliance with all applicable state and federal regulations. Compl. ¶¶ 61-66. As discussed, Mr. Seigler acknowledged that these statements would be relied upon by Plaintiff Land FC in Massachusetts. These facts as pled suffice to enable this Court to conclude that it can exercise personal jurisdiction over Mr. Seigler pursuant to Section 3(c).

---

(...continued)
address this issue if it concludes that jurisdiction is constitutionally permissible as discussed in Part II, supra.

[17] See, e.g., Ealing Corp. v. Harrods Ltd., 790 F.2d 978, 982 (1st Cir. 1986) (sending of a single telex, which allegedly demonstrated tortious conduct, from outside Massachusetts by foreign defendant to plaintiff in Massachusetts established jurisdiction under Section 3(c)); JMTR Enters., L.L.C. v. Duchin, 42 F. Supp. 2d 87, 97 (D. Mass. 1999) ("A fraudulent misrepresentation made in the state by a foreign defendant or her agent via mail, telephone, or other means of communication constitutes an act that confers jurisdiction under section 3(c)."); Salvador v. Meese, 641 F. Supp. 1409, 1414 (D. Mass. 1986) (alleged tortious oral communication delivered by defendant at meeting in Boston sufficient for jurisdiction under Section 3(c)); Burtner v. Burnham, 13 Mass. App. Ct. 158, 163-64, 430 N.E.2d 1233, 1236-37 (1982) (defendant's alleged misrepresentations by mail and telephone from New Hampshire to plaintiff in Massachusetts regarding acreage of property established jurisdiction under Section 3(c)).

The Magistrate Judge concludes that Section 3(c) does not authorize jurisdiction on the ground that there is a critical distinction between intentional and negligent torts for purposes of the Section 3(c) analysis. Recommendation at 8. In reaching this explicit holding, the Magistrate Judge goes further than prior First Circuit cases have done in interpreting Section 3(c).

The main authority on which the Magistrate Judge relies is a 1973 D.C. Circuit opinion, Margoles v. Johns, 483 F.2d 1212, 1219 (D.C. Cir. 1973).[18] The D.C. Circuit's interpretation of a First Circuit opinion is, of course, not binding on a First Circuit court. Significantly, only one decision in Massachusetts has accepted this explicit reasoning as a basis for holding that Section 3(c) does not provide personal jurisdiction.[19] Notably, even in situations where the First Circuit has considered the reach of Murphy, it has never accepted the reasoning of Margoles. See Ticketmaster, 26 F.3d at 206.

Indeed, as Plaintiffs noted in their Surreply, to do so would be to insert language into Section 3(c) that does not exist given that the statutory language refers specifically to "causing tortious injury by an act or omission in this commonwealth." There is no modifier in the statute to the word "tortious" indicating that it applies only to intentional tortious acts. In basing his decision on this distinction, the Magistrate Judge's reasoning goes further than existing First Circuit and Massachusetts court precedents interpreting the state statutory language. Any

---

[18] The Recommendation cites two Massachusetts state court cases as support for the proposition that other courts have recognized this "critical distinction" between intentional and negligent torts. A careful reading of the two decisions demonstrates that neither reached a conclusion on the issue. See Burtner, 13 Mass. App. Ct. at 164 n.6 ("There is thus no occasion to decide whether non-intentional or negligent action outside Massachusetts causing consequences here will permit exercise of jurisdiction under [Section 3(c)]."); Fern v. Immergut, 155 Mass. App. Ct. 577, 580, 773 N.E.2d 972, 975 (stating that the plaintiff had not made any argument regarding jurisdiction pursuant to Section 3(c)); see also, Pls.' Opp'n at 11 n.2.

19

decision to rewrite the language of Section 3(c) in such a restrictive fashion should be made by the courts of the Commonwealth or the Massachusetts legislature.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs object to the Magistrate Judge's Report and request that this Court deny Defendant William Gregory Seigler's Motion to Dismiss him from the lawsuit and deny any other relief sought in that motion.

Dated: May 2, 2005

Respectfully submitted,
Counsel for Plaintiffs

LITCHFIELD FINANCIAL COMPANY
TEXTRON FINANCIAL CORPORATION
AND LAND FINANCE COMPANY

By: _____

Jeffrey L. McCormick, Esq.
Robinson Donovan, P.C.
1500 Main Street, Suite 1600
Springfield, Massachusetts 01115
Phone (413) 732-2301   Fax (413) 785-4658
BBO No. 329740

Counsel for Plaintiffs

Of Counsel:

**CERTIFICATE OF SERVICE**

I hereby certify that on this day a true copy of the above document was served upon the attorney of record for each party by mail/by hand.

Date: May 2, 2005  _____

---

(...continued)

[19] The 31 year old Bradley case decided shortly after the Margoles case, which as noted previously, is probably best explained by the factual circumstances of the case.