UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

Litchfield Financial Corporation, Textron
Financial Corporation, Land Finance
Company,
          Plaintiffs,

04-CV-30076-MAP

v.

Buyers Source Real Estate Group, Buyers
Source Valley Group, LLC, Buyers Source
Sugarmill, LLC, Buyers Source, Savannah
Lakes, LLC, Thomas H. Brewer, Frederick D.
Blake, Betty M. Brewer, Susan Gard, Henry
Montgomery, Lannie Campbell, Ronald P.
Ferguson, Stephen A. Hudgins, Esquire,
Stephen A. Hudgins, PC, Hudgins &
Stallings, PC, J. Vance Stallings, Esquire,
John C. Lumpkin, Esquire, John C. Lumpkin,
PC, William Gregory Seigler, Esquire
          Defendants.

## DEFENDANT WILLIAM GREGORY SEIGLER'S REPLY TO THE PLAINTIFFS' OBJECTIONS TO THE REPORT AND RECOMMENDATION

The Defendant William Gregory Seigler ("Seigler") respectfully submits this Reply Memorandum in response to the Plaintiffs' Objections to Magistrate Judge Neiman's Report and Recommendation granting Seigler's Motion to Dismiss for lack of personal jurisdiction.

I.    **Procedural History**

The Plaintiffs instituted the above captioned litigation by filing a Complaint on April 16, 2004 and serving the same upon Seigler on July 14, 2004. Seigler filed an Answer and Amended Answer to the Plaintiff's Complaint on August 2, 2004 and August 12, 2004 respectively, as well

as a Motion to Dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b) on August 17, 2004.

United States Magistrate Judge Neiman heard oral arguments on November 8, 2004 and issued a Report and Recommendation on April 13, 2005 recommending that this Court grant Seigler's Motion to Dismiss ("Report"). The Plaintiffs filed objections to the Report on May 2, 2005.

## II. Standard of Review

A party objecting to a recommended disposition must make specific objections to the magistrate's recommendation. See Fed. R. Civ. P. 72(b). The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate with instructions. See Paterson-Leitch Co., Inc. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 990 (1st Cir., 1988).

While objections to the magistrate's recommendations may enable the district judge to focus attention on the facts and issues which are at the heart of the parties' dispute, see U.S. v. One Parcel of Real Prop., 73 F.3d 1057, 1059 (10th Cir. 1996), *de novo* review of the record may be dispensed with "when objections to strictly legal issues are raised and no factual issues are challenged." See Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982), citing Braxton v. Estelle, 641 F.2d 392 (5th Cir. 1981).

## III. Law/Analysis

In the Report, Judge Neiman determined that although the exercise of personal jurisdiction over Seigler by the Massachusetts court was authorized by statute, that exercise

would not comport with due process in that Seigler did not purposefully avail himself of the privilege of conducting activities in Massachusetts. See Report at Pages 13 – 17. The magistrate judge further determined that the exercise of personal jurisdiction over Seigler was not reasonable, in that it would offend traditional notions of fair play and substantial justice. See Report at Pages 17 – 19.

Plaintiffs have made objections to the Report, insisting that the three opinion letters sent by Seigler are sufficient to satisfy the constitutional test, thereby authorizing the exercise of personal jurisdiction. Plaintiffs also aver that it would be fair and reasonable to compel Seigler to defend himself in this Court. Plaintiffs do not offer any evidence or cite to any relevant case law in support of these arguments. Plaintiffs' objections are, in essence, a critique of the Report and a mere a repetition of arguments offered in their Memorandum in Opposition to Defendant William Gregory Seigler's Motion to Dismiss ("Plaintiffs' Opposition") and their subsequent Surreply to Defendant William Gregory Seigler's Motion to Dismiss ("Plaintiffs' Surreply"). Those arguments were thoroughly briefed, argued before the court, and rejected by the magistrate judge.

Plaintiffs' showing and arguments as to purposeful availment and/or reasonableness fall woefully short. The Due Process Clause bars a court from asserting personal jurisdiction over a defendant if doing so would not be fair to that individual. Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 210 (1st Cir. 1994). "The inquiry into minimum contacts is [] highly idiosyncratic, involving an individualized assessment and factual analysis of the precise mix of contacts that characterize each case." Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir. 1994). Plaintiffs have not established that the exercise of personal jurisdiction over Seigler would comport with the Due Process Clause of the Fourteenth Amendment. Defendant's Motion to Dismiss for Lack

of Personal Jurisdiction should therefore be granted, as has been recommended by the Magistrate Judge.[1]

### A.    Seigler's Contacts Do Not Establish Purposeful Availment

As the magistrate judge articulated in his Report, Seigler's minimal contacts with Massachusetts simply do not establish purposeful availment. Plaintiffs insist (without citing to any relevant authority) that Murphy v. Erwin-Wasey, Inc., 460 F.2d 661 (1st Cir. 1972) stands for the proposition that intentional and unintentional torts are treated the same under the due process analysis. This assertion is not supported by the case law. Murphy is inapposite and distinguishable – when an intentional tort is asserted, the due process hurdle is more easily met. See Murphy, 460 F.2d at 664. Plaintiffs do not offer this Court a case where personal jurisdiction was found to comport with Due Process with facts similar to the case at hand. In fact, the only case cited by Plaintiffs (N. Amer. Video Corp. v. Leon, 480 F.Supp. 213 (D.Mass. 1979)) in support of their argument involved intentional torts – the linchpin of purposeful availment in cases involving few contacts.[2] In this case, Plaintiffs' alleged injury and the fact

---

[1] Plaintiffs also object to Magistrate Judge Neiman's holding with respect to Section 3(c) of the Massachusetts long-arm statute. This issue has also been thoroughly briefed and Seigler will not burden the court with further argument, but instead respectfully refers the Court to his Amendment to Facts and Limited Reply to Plaintiffs' Opposition to Defendant William Gregory Seigler's Motion to Dismiss ("Limited Reply") at pages 3-5. Seigler would point out, however, that Margoles v. Johns, 483 F.2d 1212 (D.C. Cir. 1973) is not the only case cited in his Limited Reply or by Judge Neiman for the proposition that Murphy is limited to intentional torts. Besides which, plaintiffs' effort to distinguish Burtner v. Burnham, 430 N.E.2d 1233 (Mass.App.Ct. 1982) and Fern v. Immergut, 773 N.E.2d 972 (Mass.App.Ct. 2002) misses the Magistrate Judge's point and is nothing more than unwarranted criticism. Finally, to the extent that Plaintiff's are implying that the First Circuit in Ticketmaster-New York, 26 F.3d at 205, rejected Margoles' reading of Murphy, Plaintiffs are incorrect. Specifically, the Court, after expressing "profound reservations about extending the Murphy rationale," decided to "bypass the statutory phase of the jurisdictional inquiry." Ticketmaster, 26 F.3d at 205-06. For the reasons stated in Seigler's Limited Reply and the reasoning articulated by Judge Neiman, Seigler's contacts with Massachusetts do not satisfy Section 3(c) of the Long Arm Statute.

[2] Plaintiffs also rely on Fairview Machine & Tool Co., Inc. v. Oakbrook Int'l, Inc., 56 F.Supp.2d 134 (D.Mass. 1999) in support of their argument that it was foreseeable that Seigler would be subject to jurisdiction in Massachusetts. That case is easily distinguishable. The parties contracted with each other and the defendants had

4

that Seigler was "not compelled" to provide the opinion letters are simply not enough to support the jurisdictional arguments.

Despite the Plaintiffs' assertion otherwise, the absence of contacts with Massachusetts is relevant to this inquiry. See, e.g., Sawtelle v. Farrell, 70 F.3d 1381, 1391-92 (1st Cir. 1995). The Plaintiffs' claims that the absence of contacts with the forum state is not relevant and that tort and contract claims should be analyzed differently by the court are both disingenuous and flawed.[3] The analysis remains the same in the present circumstances: Seigler's contacts with Massachusetts must equate to "a purposeful availment of the privilege of conducting activities in [Massachusetts], thereby invoking the benefits and protections of [its] laws and making the defendant's involuntary presence before [the Massachusetts] courts foreseeable." Id. at 1389 (citation omitted); see also Mass. Sch. of Law at Andover, Inc. v. Amer. Bar Ass'n, 142 F.3d 26, 36 (1st Cir. 1998) (quoting Pritzker, 42 F.3d at 61). Thus, even in tort cases, "[c]entral to each step of the established analysis [] are the contacts which are attributable to each defendant ...." Sawtelle, 70 F.3d at 1389. This is true, even if the exercise of personal jurisdiction is specific. See generally id.

---

numerous contacts with plaintiff, sending more than $1,500,000 into Massachusetts. Seigler also notes that although Plaintiffs make much of the fact that Judge Neiman relied on Bond Leather Co. v. Q.T. Shoe Mfg. Co., 764 F.2d 928 (1st Cir. 1985) and Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284 (1st Cir. 1999) as they involved breach of contract issues, Fairview also involved a breach of contract claim.

[3] Plaintiffs have inappropriately criticized Judge Neiman for citing to cases which "appear to be concerned" with the exercise of personal jurisdiction over attorneys. Seigler is an attorney and Plaintiffs have made claims of malpractice and negligent misrepresentation against him. It is only fitting to look at decisions involving similar situations. In engaging in the personal jurisdiction analysis, courts utilize routinely varied standards for different situations and often look to similar cases before reaching their conclusions. See, e.g., U.S. v. Swiss American Bank, 274 F.3d 610, 624 (1st Cir. 2001) (stating that the "effects test" is limited to the application of the purposeful availment element of specific jurisdiction in the context of defamation cases); Ticketmaster-New York, 26 F.3d 201 (looking at other defamation cases where plaintiff alleged defamation); N. Light Tech., Inc. v. N. Lights Club, 97 F.Supp.2d 96, 106-07 (D.Mass. 2000) (looking at cases in other jurisdictions dealing with whether the existence of a web site is sufficient to show purposeful availment).

This Court should hold, consistent with the holdings in Sawtelle and BHC Interim Funding, LP v. Bracewell & Patterson, LLP, 2003 WL 21467544 (S.D.N.Y. 2003), that Seigler did not purposefully avail himself of the privilege of conducting activities in Massachusetts. In Sawtelle, in the context of a malpractice suit, the First Circuit held that the defendant attorneys and law firms had not purposefully availed themselves of the privilege of conducting activities in New Hampshire even though they represented New Hampshire clients and had communicated via telephone and letter with plaintiffs in New Hampshire. In so holding, the Court looked to the extent of the defendants' contacts with New Hampshire, as well as the party responsible for initiating the contact and whether the defendants had solicited business in New Hampshire. Sawtelle, 70 F.3d at 1391-92.

Similarly, in BHC Interim Funding, the Court looked to the extent of the defendant law firm's contacts with New York in analyzing purposeful availment. In that case, a New York lender brought suit against a Texas law firm which had represented the borrower in a loan transaction. The law firm had issued an opinion letter, and after the borrower defaulted, the lender brought suit. The Court held that purposeful availment had not been established. BHC Interim Funding, LP, 2003 WL 21467544, *7. Compare Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 305 F.3d 120, 127-29 (2d Cir. 2002) (holding, in case involving the issuance of an opinion letter, that purposeful availment had been met where "[t]he engagement which gave rise to the dispute [] [was] not simply one of a string of fortunate coincidences for the firm. Rather, the picture [] is that of a law firm which seeks to be known in the New York legal market, makes efforts to promote and maintain a client base there, and profits substantially therefrom. Under such circumstances, [the court saw] nothing fundamentally unfair about requiring the firm to defend itself in the New York courts ....").

Plaintiffs' argument that Seigler was not "compelled" to send the opinion letters to Massachusetts, but that he should have instead declined the representation, also misses the mark. Similarly, the plaintiffs' reliance on North American Video is misplaced. Central to the Court's holding in North American Video was the fact that the defendant employees contracted with the employer for employment. N. Amer. Video, 480 F.Supp. at 219. Additionally, the defendants had attended meetings in Massachusetts and had made numerous phone calls to plaintiff's employees in Massachusetts. Id. at 218.[4]

Foreseeability and voluntariness demand more than knowledge of reliance and location. Mere foreseeability of causing an injury in another state is not a sufficient benchmark for exercising personal jurisdiction. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985). The "foreseeability that is critical to due process analysis ... is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." Id. There must be some act by which the defendant purposefully avails himself of the privilege of conducting activities within the forum state. Trierweiler v. Croxton and Trench Holding Corp., 90 F.3d 1523, 1534 (citing Burger King, 471 U.S. at 475); see also Sawtelle, 70 F.3d at 1391-94. Plaintiffs can point to no such act. Seigler could not foresee (or reasonably anticipate) "being haled into court" in Massachusetts. The engagement which gave rise to this dispute was an isolated, random and fortuitous contact.

**B.    The Exercise of Personal Jurisdiction Does Not Comport with the Reasonableness Component**

---

[4] It is also worth noting that the plaintiff in North American Video alleged intentional acts on the part of the defendants, that they had "engaged in schemes, in concert with others, to defraud plaintiff and misappropriate funds and equipment belonging to plaintiff." Id. at 215. Again, there has been no allegation here that Seigler engaged in anything other than negligent conduct.

7

"The hallmark of reasonableness in the context of personal jurisdiction is 'fair play and substantial justice.'" Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 144 (1st Cir. 1995) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 320 (1945)). The "gestalt factors" are called such, "because, in any given case, they may neither be amenable to mechanical application nor be capable of producing an open-and-shut result." Id. As correctly analyzed by Judge Nieman, it would not be reasonable for this Court to exercise personal jurisdiction over Seigler.

Plaintiffs have ignored clear precedent in arguing otherwise and rely exclusively on convenience and choice of forum arguments. Plaintiffs also inappropriately criticize Judge Nieman for conducting a "cursory review" of the Gestalt factors.

The inconvenience to Seigler of defending this litigation in Massachusetts must not be ignored. As stated in Ticketmaster-New York, "there is one [Gestalt] factor – the defendant's convenience – that stands out from the crowd. It is this factor that consistently has been declared deserving of the greatest weight in kindred cases." Ticketmaster-New York, 26 F.3d at 212. The same is true in the case at hand. Seigler is a solo practitioner, licensed to practice law only in South Carolina. He has no ties to Massachusetts and to require him to litigate here would be an enormous burden and inconvenience. This factor acquires additional prominence when observing Massachusetts' limited interest in adjudicating the claims against Seigler and the fact that the activities which gave rise to this litigation occurred in South Carolina.

Plaintiffs mistakenly argue that Judge Nieman failed to acknowledge that a plaintiff's choice of forum should be accorded an appropriate degree of deference, or that Massachusetts has a "manifest interest in providing its residents with a convenient forum." These arguments were raised at oral argument (see Transcript of November 8, 2004 Hearing, at 32-33, 46-47) and

addressed at pages 18-19 of the Report. Judge Nieman considered those factors, but found them either unconvincing or offset by others. Indeed, Litchfield – the only Massachusetts corporation – no longer has its principal place of business in Massachusetts. Despite the Plaintiffs' claim that they were originally harmed in Massachusetts, they no longer have a significant presence in the state. Their "convenience" lies in the fact that Plaintiffs have joined numerous Defendants (none of whom are from Massachusetts) in one cause of action. However, a "plaintiff's interest in obtaining convenient and effective relief" cannot mean that plaintiffs' choice overrides all other factors, especially where plaintiffs' ties to the forum state are themselves tenuous. See, e.g., Ticketmaster-New York, 26 F.3d at 211 (defendant's convenience outweighed plaintiff's convenience and the forum's interest where "plaintiff's *actual* convenience [was] at best a makeweight" and the forum "had a milder than usual interest" (emphasis in original)). Jurisdiction over other defendants does not make an otherwise improper exercise of personal jurisdiction proper, no matter how convenient it might be for the plaintiff.[5]

The exercise of personal jurisdiction in such circumstances would be grossly unfair and improper. As stated by the Sawtelle court, "we must heed the warning that 'it is a mistake to assume that [technological advances] herald[] the eventual demise of all restrictions on the personal jurisdiction of state courts. To permit the exercise of personal jurisdiction over the defendant[] in this case would require this Court to disregard that sage advice." Sawtelle, 70 F.3d at 1395-96 (citations omitted).

---

[5] Personal jurisdiction is not created over Seigler because other Defendants agreed to litigate claims in Massachusetts. Seigler did not agree, in writing or otherwise, as others did, that disputes with the Plaintiffs would be litigated in Massachusetts. See Complaint. It is utterly irrelevant that Seigler is only one of a number of Defendants, just as it is meaningless in this context that none of the other Defendants may have challenged jurisdiction. It is also utterly irrelevant that the loan documents were to be governed pursuant to Massachusetts law. Clearly, Seigler is not bound by the loan documents.

### C.     Plaintiffs Are Not Entitled to Conduct Jurisdictional Discovery

In a last attempt to salvage their claims against Seigler in Massachusetts, Plaintiffs argue that making a distinction between intentional and negligent torts would "create difficulty for Plaintiffs at the initial pleadings stage" and they therefore request jurisdictional discovery.[6] This request is untimely, as it was not raised before the magistrate judge and was not ruled upon in the Report.

In order to be entitled to jurisdictional discovery, a plaintiff must first "make[] out a colorable case for the existence of *in personam* jurisdiction ...." Sunview Condominium Ass'n v. Flexel Int'l, Ltd., 116 F.3d 962, 964 (1st Cir. 1997); see also Mass. Sch. of Law at Andover, 142 F.3d at 37. The "entitlement [to jurisdictional discovery] is not absolute ... it presupposes that the plaintiff is reasonably attentive to the preservation of its rights." Sunview, 116 F.3d at 964. Plaintiffs have failed to make a "timely and properly supported request for jurisdictional discovery." U.S. v. Swiss Amer. Bank, Ltd, 274 F.3d 610, 625 (1st Cir. 2001) (citation omitted). They have likewise failed to present a colorable claim that facts tending to show that jurisdiction would be found were discovery permitted. Id. at 626-27 (holding that because plaintiff did not present specifics to the district court as to what would be found if discovery were permitted that district court did not err in denying discovery).

---

[6] Plaintiffs claim that they requested the opportunity to conduct jurisdictional discovery in their Surreply. See Plaintiffs' Objection, p. 13. A close reading of the Surreply, however, does not support Plaintiffs' assertion. Specifically, plaintiffs stated therein that "if the Court were to accept Seigler's interpretation of Section 3(c), then, at the very least, it would appear the Court would have to permit discovery to determine if Seigler's actions constitute intentional misrepresentations. *There is no indication from the Massachusetts statute or the case law that this type of investigation is necessary or even contemplated in considering a personal jurisdiction motion. Instead of adopting this approach, the critical question* for the Court is whether ...." Plaintiffs' Surreply, at 4 (emphasis added). This language can hardly be considered a properly supported request for discovery, and was not considered as such by Seigler (and presumably by the Court) at the time it was made.

10

Plaintiffs had the burden of asserting what they believed were supportable claims at the outset, not as an excuse for discovery in the hopes that the dismissal would be delayed or averted. "[I]t has been said by innumerable federal courts that the requirement in Rule 9(b) is necessary to safeguard potential defendants from lightly made claims charging the commission of acts that involve some degree of moral turpitude. The notion is that a heightened pleading requirement imparts a note of seriousness and encourages a greater degree of pre-institution investigation by the plaintiff." 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1296 at 31 (3d ed. 2004). The "rule thus guards against the institution of a fraud-based action in order to discover whether unknown wrongs actually have occurred – the classic fear of 'fishing expeditions.'" Id. at 38. Likewise, Plaintiffs should not be permitted to first assert negligence so as to cast a net over Seigler only to later go fishing in an attempt to establish an intentional tort, now that Plaintiffs have realized that their net is not wide enough.

## IV.   Conclusion

For the reasons stated above, Seigler respectfully requests that this Court adopt the reasoning of the magistrate judge and adopt the Report and Recommendation in its entirety.

Respectfully Submitted,
Defendant,
William Gregory Seigler,
By his attorneys,

Peter M. Durney, BBO #139260
CORNELL & GOLLUB
75 Federal Street
Boston, MA  02110
Telephone: (617) 482-8100

11

Samuel W. Outten (SC Bar # 4295) *Pro Hac Vice*
WOMBLE CARLYLE SANDRIDGE & RICE
*A Professional Limited Liability Company*
Post Office Box 10208
Greenville, SC 29603-0208
Telephone: (864) 255-5421
Fax: (864) 239-5852

## CERTIFICATE OF SERVICE

I, Peter M. Durney, attorney for the defendant, William Gregory Seigler, hereby certify that on this 18th day of May, 2005, a true copy of the foregoing Defendant William Gregory Seigler's Reply to the Plaintiffs' Objections to the Report and Recommendation, was served:

via overnight courier, directed to:

Jeffrey L. McCormick, Esq.
Robinson Donovan, P.C.
1500 Main Street, Suite 1600
Springfield, MA 01115

and via first class mail, directed to :

George R. Moore, Esq.
Devine, Millimet & Branch, PA
300 Brickstone Square, 9th Floor
P.O. Box 39
Andover, MA 01810

Lannie L. Campbell
One Harbor Court, #3D
Portsmouth, VA 23704

Ronald P. Ferguson
6395 Lake View Drive
Falls Church, VA 22041

Betty M. Brewer
113 Northgate Lane
Suffolk, VA 23434

Henry Montgomery
396 Baldwin Drive
Howard, OH 43028-8044

Frederick D. Blake
705 Mobjack Place
Newport News, VA 23606

Thomas H. Brewer
113 Northgate Lane
Suffolk, VA 23434

James Edward Anklam, Esq.
Paul, Hastings, Janofsky & Walker, LLP
1299 Pennsylvania Avenue, NW
10th Floor
Washington, DC 20004

| | |
|---|---|
| Christopher F. Dugan, Esq. | Charles M. Lollar, Esq. |
| Paul, Hastings, Janofsky & Walker, LLP | Tanner, Mulkey, Gordon & Lollar, P.C. |
| 1299 Pennsylvania Avenue, NW | 5700 Lake Wright Drive, Suite 102 |
| 10th Floor | Norfolk, VA 23502 |
| Washington, DC 20004 | |

_____
Peter M. Durney